UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WEST MARINE PRODUCTS, INC. and UNITED STATES FIRE INSURANCE COMPANY,
PLAINTIFFS

v.

DOLPHINITE, INC., CLEAN SEAS COMPANY, and SUNTEC PAINT, INC.,
DEFENDANTS

CIVIL ACTION NO. 04-10251-PBS

**DEFENDANT SUNTEC PAINT, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON COUNTS XX, XXI, XXII, and XXIII**

Now comes Defendant Suntec Paint, Inc. ("Suntec") and hereby moves for dismissal with prejudice pursuant to Fed. R. Civ. P. 12 on the ground that the United States Constitution does not permit an exercise of personal jurisdiction over Suntec in this forum, or in the alternative, moves for partial summary judgment pursuant to Fed. R. Civ. P. 56 on the ground that Plaintiffs cannot prove an essential element of their claims of Breach of Express Warranty (Count XX), Breach of Implied Warranty of Merchantability (Count XXI), Breach of Implied Warranty of Fitness for a Particular Purpose (Count XXII), and Strict Products Liability (Count XXIII).

**INTRODUCTION**

This case arises out of alleged deficiencies in the performance of marine paint formulated and patented by co-Defendant Clean Seas Company ("Clean Seas"), mixed by Suntec in Florida for Clean Seas in strict accordance with Clean Seas's formula specifications using only ingredients supplied to it by Clean Seas, labeled with labels created and provided by Clean Seas, purchased from Clean Seas by co-defendant Dolphinite, Inc. ("Dolphinite") for resale to

Dolphinite's wholesale commercial customers, re-sold by Dolphinite to Plaintiff West Marine Products, Inc. ("West Marine") pursuant to a contract between West Marine and Dolphinite, and subsequently re-sold by West Marine to its retail and wholesale customers.

Plaintiffs seek to bring Suntec before this Court even though Suntec is a Florida corporation with no Massachusetts jurisdictional contacts relating to Plaintiffs' claims. Suntec's lack of Massachusetts contacts makes the exercise of personal jurisdiction over it in this forum improper under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. In addition, the plain language of the applicable venue statute, 28 U.S.C. § 1391, makes clear that venue here is not proper. Consequently, Suntec should be dismissed from this case.

Furthermore, Plaintiffs seek to recover damages from Suntec on theories of express and implied warranty (Counts XX through XXII), even though (a) Suntec's only involvement with the Paint was providing mixing services to Clean Seas, (b) there is no contract between West Marine and Suntec,[1] (c) Clean Seas tapped Suntec to mix paint for Clean Seas's contract with Dolphinite after that contract was formed and long before Dolphinite formed any contract with West Marine, and (d) West Marine's alleged losses are purely economic in nature. As explained below, under these circumstances, Plaintiffs cannot have recovery from Suntec under Massachusetts law on Counts XX through XXII.

Finally, Plaintiffs' claim for damages in strict products liability (Count XXIII) should be dismissed because there is no such separate cause of action under Massachusetts law and

---

[1] Plaintiff United States Fine Insurance Company is in this case solely as West Marine's subrogee and has no independent claim of its own against Suntec; therefore, in all respects its claims against Suntec fail to the extent West Marine's claims fail.

because, even if Count XXIII states a claim for breach of warranty distinct from those set out in Counts XX through XXII, it fails for the same reasons those counts fail.

For all of these reasons, Suntec is entitled to summary judgment in its favor on Counts XX through XXIII even if this Court determines that it can properly exercise its jurisdiction over Suntec and that venue here is proper.

## BACKGROUND

Suntec's business is the making of paint, and it primarily makes products used to mark athletic fields. *See Affidavit of Joseph H. Anderson* ("Affidavit"), filed herewith, ¶¶ 2-3. None of Suntec's products is a marine paint. *See* Affidavit ¶ 3. Suntec makes its own paint products by mixing ingredients purchased from others in proportions that vary from one type of product to the next. *See* Affidavit ¶ 2. Suntec also provides "toll manufacturing" services to other companies, in which Suntec uses its equipment to mix Paint according to formulas dictated by its customers. *See* Affidavit ¶ 4.

In February of 2002, Clean Seas approached Suntec regarding Suntec's ability to mix marine Paint according to formulas specified by Clean Seas ("Paint"). *See* Affidavit ¶ 6. After reviewing the formula specifications and other information provided to it by Clean Seas, Suntec agreed to mix Paint as specified by Clean Seas, and in fact did mix Paint under contract with Clean Seas. *See* Affidavit ¶¶ 6-7. Suntec was never involved in determining the formula for Paint; Clean Seas holds the patents, which were granted before February 2002. *See* Affidavit ¶ 7. Suntec mixed Paint exclusively using ingredients provided to it by Clean Seas. *See Id.* When Suntec agreed to mix Paint for Clean Seas in February of 2002, it did not know that Clean Seas ultimately would sell some Paint to Dolphinite or that Dolphinite would in turn re-sell that Paint to West Marine: Clean Seas approached Suntec with a proposal regarding the mixing of

Paint prior to and independently of any discussions or contract between Clean Seas and Dolphinite regarding the purchase and sale of Paint, and long before September 5, 2003, the date Plaintiffs allege West Marine and Dolphinite entered into a contract for the sale of Paint. *See* Affidavit ¶¶ 6, 8; *see also* Complaint ¶ 13.

Suntec is not a party to the contract between West Marine and Dolphinite or to the contract between Dolphinite and Clean Seas. *See* Affidavit ¶¶ 8, 13. Suntec did not sell Paint to Plaintiffs or to anyone else—Suntec sold mixing services, to Clean Seas. *See* Affidavit ¶¶ 6, 8-9. The sale and performance of those services occurred exclusively in Florida. *See* Affidavit ¶ 9. Suntec received payment for its mixing services exclusively from Clean Seas in Florida. *See Id.* Suntec was not involved, monetarily or otherwise, in the marketing or advertising of the Paint, nor did it determine any part of the content of the labels for the Paint: labels were provided to Suntec, which Suntec simply affixed to containers of Paint. *See* Affidavit ¶ 7. Suntec did not deliver Paint to West Marine or Dolphinite, did not arrange for delivery of Paint to West Marine or Dolphinite, did not pay for delivery of Paint to West Marine or Dolphinite, and had no relationship with the trucking firm that picked up Paint at Suntec's plant in Florida. *See* Affidavit ¶ 9.

Suntec is not a party to any contract with West Marine or Dolphinite. *See* Affidavit ¶ 10. Suntec did not solicit business from West Marine or Dolphinite or negotiate any contract with West Marine or Dolphinite. *Id.* Suntec had no contact with Dolphinite until sometime in early 2003, when Dolphinite called Suntec to ask about when it could expect shipments of Paint it had ordered from Clean Seas. *Id.* Suntec had no contact with West Marine, in connection with the Paint or any other paint, until it received service of process in this case. *Id.* Suntec provided no samples of any kind to West Marine or Dolphinite. *Id.*

Suntec is a Florida corporation and has its principal place of business in Florida. *See* Affidavit ¶ 11. Suntec's primary market is in the Southeast, both for Suntec's own products and for its toll manufacturing services. *See* Affidavit ¶¶ 3-4. Suntec does not own or lease property in Massachusetts, is not authorized to do business here, and has no employees here. *See* Affidavit ¶ 12. Suntec has no sales office in Massachusetts—indeed, it has no salesmen on its staff. *See* Affidavit ¶¶ 5, 11. Nor does Suntec otherwise have a sales representative assigned to market its products in Massachusetts: it uses telemarketers for whom Massachusetts is not a target market. *See Id.* Suntec has not been a party to any contract with any Massachusetts customer for at least three years, *see* Affidavit ¶ 5, nor has it attempted to negotiate any contracts with Massachusetts customers or otherwise solicit or do business in Massachusetts during that period. *See* Affidavit ¶¶ 10-11. Indeed, Suntec is aware of no instance of any Suntec-mixed product making its way into Massachusetts during the past three or four years other than the instance of Paint that reached Dolphinite here sometime in 2003, some of which was allegedly re-sold to West Marine. *See* Affidavit ¶ 5.

## ARGUMENT

### I. NO MASSACHUSETTS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER SUNTEC IN THIS CASE.

Suntec should be dismissed from this action on the ground of lack of personal jurisdiction because Plaintiffs cannot bear their burden of showing a basis for personal jurisdiction. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole,* 290 F.3d 42, 50 (1st Cir. 2002) ("The plaintiff bears the burden of proving the court's jurisdiction over the defendant." *Id.*).

Plaintiffs seek to exercise specific personal jurisdiction over Suntec through the Long Arm Statute, M.G.L. c. 223A, § 3; therefore, they have the burden of showing both that the statute applies and that subjecting Suntec to personal jurisdiction in Massachusetts comports with

the requirements of Due Process. *See Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir. 1997) (jurisdiction in diversity cases limited by both Massachusetts' long arm statute and the U.S. Constitution). Plaintiffs can make neither showing, and Suntec should be dismissed from this action.

**A. The Massachusetts Long-arm Statute Does Not Reach Suntec.**

Plaintiffs rely on the Massachusetts long-arm statute, M.G.L. c. 223A §3, to provide personal jurisdiction in this Court over Suntec. *See Complaint* ¶ 7. Plaintiffs do not specify which subsection(s) of § 3 allegedly apply to Suntec, but most of them are clearly inapplicable: the facts of this case do not involve Suntec transacting business in this Commonwealth, a contract under which Suntec was to supply services or things in this Commonwealth, tortious injury by an act of Suntec in this Commonwealth, real property in Massachusetts, a contract to insure to which Suntec is a party, or any matter of family law. See M.G.L. c. 223A § 3 (a-c), (e-h). Thus, the only portion of the Long Arm Statute even potentially remaining to Plaintiffs is § 3(d). That subsection permits jurisdiction only in cases "causing tortious injury in this commonwealth by an act or omission outside this commonwealth if [the defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . .." M.G.L. c. 223A, § 3(d).

The facts of this case do not support jurisdiction under § 3(d). Even if Suntec's mixing of Paint in Florida caused Plaintiffs' injury (which Suntec denies), the injury did not occur in Massachusetts. West Marine alleges that it incurred costs and lost business opportunities, goodwill and reputation as a result of Suntec's actions with respect to the Paint; United States Fire Insurance Company ("USFIC") alleges that it has incurred costs defending West Marine

against customer suits under a policy of general liability insurance. West Marine is a California corporation, and USFIC is based in New Jersey. Absent specific allegations to the contrary, the claimed losses occurred, if at all, in those states, not in Massachusetts.

More importantly, however, § 3(d) requires injury in Massachusetts plus additional contacts, which are absent here. The affidavit of Suntec's president clearly demonstrates that Suntec does not "regularly do business" in the Commonwealth and that Suntec has not "derived substantial revenues" from Massachusetts—indeed, it has not been involved in any Massachusetts business dealings for at least three years. Therefore, Plaintiffs cannot make the additional showing of persistent Massachusetts-based Suntec conduct required by § 3(d), and personal jurisdiction may not be had against Suntec thereunder.

**B. Due Process Considerations Preclude an Exercise of Jurisdiction over Suntec in Massachusetts.**

Plaintiffs cannot hale Suntec before this Court without violating Due Process principles. The Due Process Clause of the United States Constitution "limits the power of a state court to exert personal jurisdiction over a nonresident defendant" such as Suntec. *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 108 (1986). "Specific personal jurisdiction can be asserted over a defendant only if: (1) the claim directly relates to or arises from the defendant's contacts with the forum; and (2) the contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws." *Levin v. Harned*, No. 01-11354-PBS, slip op. at 12 (D. Mass. September 17, 2003) (citations and internal quotations omitted); *see Asahi,* 480 U.S. at 108 (1987), *quoting Hanson v. Denckla,* 357 U.S. 235, 253 (1958) *as quoted in Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) ("minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws.'"). If minimum contacts are not demonstrated, the court need not continue on to analyze the reasonableness of the proposed exercise of jurisdiction. *Levin* at 13, *citing United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp*, 960 F.2d 1080, 1088 (1st Cir. 1992).

"The governing principle [of the Due Process Analysis] is the fairness of subjecting a defendant to suit in a distant forum." *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 7 (1979), *quoting International Shoe Co. v. Washington*, 326 U.S. 310 (1945) (internal quotations omitted). The Due Process analysis determines "whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action." *Id.* (emphasis added).

Suntec's motion to dismiss for lack of personal jurisdiction should be granted because Suntec does not have minimum contacts with Massachusetts amounting to purposeful availment of the forum. Therefore, it would not be "fair and reasonable" to force Suntec to defend itself here, and to do so would be contrary to Due Process principles. The mere act of providing mixing services to Clean Seas in Florida is not enough to establish minimum contacts with Massachusetts, even though Clean Seas's subsequent placement of the Paint into the stream of commerce brought some of the Paint to Massachusetts. Even before the Supreme Court's decision in *Asahi* (and certainly thereafter), the First Circuit "declined to adopt the 'stream of commerce' theory of personal jurisdiction" by which a manufacturer would be subject to personal jurisdiction in any state in which its goods foreseeably could come to rest and cause injury regardless of whether the manufacturer voluntarily sought to serve the market in such state. *Sawtelle v. Farrell*, 70 F.3d 1381, 1393 (1st Cir. 1995) (declining to exercise jurisdiction

over defendant law firm, accused of malpractice by New Hampshire residents in connection with representation in Florida wrongful death case, where law firm became involved in representation only after being requested by Virginia firm to act as local counsel rather than as a result of any efforts of the law firm to solicit New Hampshire business); *see, e.g., Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 681-82 (1st Cir. 1992); *cf. United States v. Swiss American Bank, LTD.*, 274 F.3d 610, 623-24 (1st Cir. 2001) (only activities purposefully <u>and voluntarily</u> directed toward the forum can begin to satisfy the purposeful availment requirement of Due Process). Even if Suntec had "specific knowledge that the stream of commerce would move [Paint] into [Massachusetts] . . . this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts." *Rodriguez v. Fullerton Tires,* 115 F.3d 81, 85 (1st Cir. 1997), *citing Asahi*, 480 U.S. at 112.

Conspicuously absent from Plaintiffs' Complaint is any allegation of dealings between West Marine and Suntec in Massachusetts (or indeed elsewhere), or of dealings between Dolphinite and Suntec. And the affidavit of Suntec's president makes clear that Suntec simply mixed Paint for Clean Seas as ordered by it without any control over Clean Seas's disposition of that Paint. Clearly, therefore, Suntec placed no goods in the stream of commerce, and even if its mixing services could be categorized as "goods," Suntec did not engage in acts purposefully directed toward Massachusetts (such as soliciting Paint business here, making representations regarding Paint specifically aimed at Massachusetts residents, or marketing Paint through a distributor acting as a sales agent in Massachusetts). Thus, Suntec has not purposely availed itself of Massachusetts law or any other benefit of the forum in any way by which Suntec should reasonably have anticipated being haled into court here. Consequently, requiring Suntec to

defend itself here would be neither fair nor reasonable, and Due Process considerations mandate that Suntec's motion to dismiss be granted.

## II. VENUE IS NOT PROPER AS AGAINST SUNTEC BECAUSE TWO OF THREE DEFENDANTS, INCLUDING SUNTEC, RESIDE IN FLORIDA AND A SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS RELATING TO SUNTEC OF WHICH PLAINTIFF COMPLAINS OCCURRED, IF AT ALL, IN FLORIDA.

Plaintiffs allege that a Massachusetts venue is proper in this diversity case, but the plain language of 28 U.S.C. § 1391, upon which Plaintiffs rely, makes clear that venue is in fact not proper here.

Subsection (a) of 28 U.S.C. § 1391 provides for venue in diversity cases only in "(1) a judicial district where any defendant resides, *if all defendants reside in the same State*, (2) a judicial district *in which a substantial part of the events or omissions giving rise to the claim occurred* . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought*." 28 U.S.C. § 1391(a) (emphasis added). Subsection (c) of the statute further provides that, "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

As explained above in Section I, personal jurisdiction may not be had over Suntec in Massachusetts, and therefore Suntec cannot be deemed a resident of Massachusetts in the venue calculus pursuant to § 1391(c). As a consequence, § 1391(a)(1) cannot serve as a ground for venue here because, although co-defendant Dolphinite is a Massachusetts domiciliary, both Suntec and Clean Seas are Florida domiciliaries. Subsection (a)(3) also provides no basis for venue here, for two reasons. Firstly, there is another judicial district—Florida—in which, in

which this action could have been brought. Secondly, as explained above, an exercise of personal jurisdiction over Suntec in Massachusetts is simply not proper.

Finally, considering the allegations against Suntec and the facts relating thereto, it is clear that Massachusetts is not a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," and therefore § 1391(a)(2) does not provide for venue in Massachusetts. All of the alleged acts and omissions that Plaintiffs seek to attribute to Suntec took place, if at all, in Florida, not in Massachusetts. Suntec sold its mixing services for Paint to Clean Seas in Florida and performed those services in Florida. Plaintiffs make no claim that Suntec made any representation to West Marine at any time. The only representation Plaintiffs allege Suntec made, regarding how the Paint would perform as a boat paint, was made, if at all, to Clean Seas in Florida.[2] And Plaintiffs make no specific fact claims controverting affidavit testimony that Suntec did not provide Paint samples to West Marine or to Dolphinite, did not determine the content of the Paint labels (which were affixed by Suntec in Florida), and did not advertise the Paint (directly or indirectly) in any way. Clearly, therefore, 28 USC § 1391(a)(2) does not provide for venue here.

For these reasons, venue is improper in this Court and Suntec's motion to dismiss should be granted.

---

[2] *See* Complaint ¶ 140. Suntec denies that it made any representations to anyone regarding how the Paint would perform, as a boat paint or otherwise. *Cf.* Affidavit ¶¶ 6-7, 9-11.

## III. IF JURISDICTION AND VENUE ARE FOUND TO BE PROPER IN THIS COURT, SUMMARY JUDGMENT SHOULD ENTER IN SUNTEC'S FAVOR ON COUNTS XX—XXIII.

### A. Plaintiff Cannot Recover on its UCC-Based Warranty Claims (Counts XX through XXII) Because No Warranty Arose From Suntec's Paint-Related Transactions.

#### *1. Suntec's contract with Clean Seas for mixing services is not governed by UCC Article Two, which only governs sales of goods.*

No warranty arose from Suntec's involvement with the Paint because Article Two of the UCC does not apply to contracts for the sale of services, like Suntec's sale of mixing services to Clean Seas. *See ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1266 (1st Cir. 1991), *citing, inter alia,* M.G.L. c. 106, § 2-102 ("[T]his Article applies to transactions in goods . . .."). *See also* M.G.L. c. 106, § 2-105 ("'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ."). Furthermore, where a contract is for the sale of both goods and services, the UCC will not apply if the "predominant . . . purpose of the contract is the rendition of service, with goods incidentally involved." *Id.* Where the UCC does not apply, no warranty based in that statute arises. *See, e.g., Ramcharran v. Carraro Graphic Equipment, Inc.,* 823 F.Supp. 63, 67 (D. Mass. 1993) (motion to add claim for breach of warranty of merchantability denied where there was no evidence of a sale of goods).

Here, the only contract concerning Paint to which Suntec is a party is that between it and Clean Seas to mix Paint. This is not a case of a mixed contract for the sale of goods and services. Clean Seas provided to Suntec all of the ingredients necessary for Suntec to mix the Paint, and Suntec was a mere bailee of those ingredients, with no title to them.[3] However, even

---

[3] "'[A] bailment is [] the delivery of personal property by one person to another in trust for a specific purpose, with a contract . . . that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished . . ..'" *Little, Brown and Co. (Inc.) v. American Paper Recycling Corp.*, 824 F.Supp. 11, 15 (D. Mass. 1993),

if the Suntec/Clean Seas contract were such a mixed contract, Suntec would have purchased those ingredients subject to Clean Seas's strict formula specifications, and thus the "predominant . . . purpose of the contract [was] the rendition of [mixing] service, with goods incidentally involved." Clearly, therefore, the UCC does not apply to Suntec's sole involvement with the Paint—its contract with Clean Seas for their mixing—and Suntec is entitled to summary judgment on all of Plaintiffs' warranty claims.

**2. *Suntec mixed Paint strictly according to Clean Seas's specifications, and therefore Suntec made no implied warranty regarding the Paint.***

Even if Suntec's mixing contract with Clean Seas is deemed to be one for the sale of "goods" under the UCC, no implied warranties arose out of it because Suntec "was not free to exercise its own independent judgment but was bound to follow [Clean Seas's] specifications" in the mixing of Paint. *Rust Engineering Co. v. Lawrence Pumps, Inc.*, 401 F.Supp. 328, 333 (D. Mass. 1975). "When goods are provided according to plans and specifications furnished by the buyer, the seller does not impliedly warrant their fitness for a particular purpose, and no implied warranty of merchantability arises." *Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co.*, 25 Mass. App. Ct. 530, 535 (1988), *citing, inter alia, Rust Engineering*, *Id.*, and M.G.L. c. 106, § 2-316, comment 9 ("The situation in which the buyer gives precise and complete specifications to the seller . . . is a frequent circumstance by which the implied warranties may be excluded.").

Here, Suntec mixed Paint according to Clean Seas's strict formula specifications. Like the defendants in *Rust Engineering* and *Cumberland Farms*, therefore, Suntec's actions did not

*quotingOmni-Wave Electronics Corp. v. Marshall Industries*, 127 F.R.D. 644, 650 (D. Mass. 1989) (citations omitted in original).

give rise to any implied warranties, and Suntec is entitled to summary judgment on Counts XXI and XXII of Plaintiffs' Complaint.

**B. Plaintiffs' Claims For Damages Under Theories Of Warranty—Counts XX Through XXII—Are Barred Because West Marine, A Commercial Purchaser Of Goods, Is Asserting Losses Of A Wholly Economic Nature Against Suntec, With Which It Is Not In Privity Of Contract.**

Suntec is entitled to summary judgment on Plaintiffs' warranty claims (Counts XX through XXII) because Plaintiffs and Suntec are not in privity of contract, M.G.L. c. 106, § 2-318 of the Massachusetts General Laws does not relieve Plaintiffs of their burden to show privity of contract, and Plaintiffs' claimed damages are solely economic damages subject to the economic loss rule.

***1. Privity Of Contract—An Essential Element Of The Warranty Claims Set Out In Counts XX, XXI, And XXII—Is Lacking.***

Plaintiffs' claims for breach of express warranty, implied warranty of merchantability and implied warranty of fitness for a particular purpose must fail because all require, as a prerequisite to recovery, privity of contract between the claimant and the alleged manufacturer, and privity of contract is absent here.

Of the 179 paragraphs in Plaintiffs' Complaint, not one alleges the existence of a contract between either Plaintiff and Suntec. Indeed, although Plaintiffs make a breach of contract claim against co-defendant Dolphinite, they do not assert that claim against Suntec, reflecting Plaintiffs' own understanding that no such contract exists.

"Express warranties by the seller are [only] created [when] (a) any affirmation of fact or promise [is] made by the seller to a buyer which relates to the goods and becomes part of the basis of the bargain . . . (b) any description of the goods . . . is made part of the basis of the bargain . . . [or] (c) any sample or model . . . is made part of the basis of the bargain . . . ."

M.G.L. c. 106, § 2-313(1) (emphasis added). An implied warranty of merchantability of goods is only "implied in a contract for their sale." M.G.L. c. 106, § 2-314(1) (emphasis added). And an implied warranty of fitness for a particular purpose arises only "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . ." M.G.L. c. 106, § 2-315 *Id.* (emphasis added). Therefore, by the terms of the statutes that create these warranties, privity of contract is required. Since Plaintiffs and Suntec have no contractual relationship, Plaintiffs cannot prove all elements of their warranty counts, and Suntec is entitled to summary judgment on Counts XX through XXII.

***2. Because West Marine Is A Commercial Purchaser Of Goods, M.G.L. c. 106, § 2-318 Does Not Relieve Plaintiffs Of Their Burden To Prove The Privity-Of-Contract Element Of Their Warranty Claims.***

As an admitted commercial purchaser of goods, West Marine (and its subrogee, USFIC) cannot apply M.G.L. c. 106, § 2-318 to avoid summary judgment on the warranty counts of Plaintiffs' Complaint.[4] Section 2-318 lifts the privity requirement only for warranty claims made by remote purchasers of *consumer* goods. "Commercial plaintiffs must allege privity to maintain a breach of warranty action against a manufacturer." *Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 97-99 (D. Mass. 1998) (surveying Massachusetts law, with particular focus on *Jacobs v. Yamaha Motor Corp.*, 420 Mass. 323 (1995)). *See Jacobs v. Yamaha Motor Corp.*, 420 Mass. 323, 330-331 (1995) ("recognizing the right of a buyer of consumer goods to sue the

[4] The statute, which governs the privity requirement in cases involving the sale of goods, states that "Lack of privity between the plaintiff and the defendant shall be no defense in any action brought against the manufacturer . . . of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods." M.G.L. c. 106, § 2-318 (emphasis added).

manufacturer directly for a breach of implied warranty of merchantability" despite lack of privity. *Id.* (emphasis added)); *see also Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F.Supp. 2d 84, 86-87 (D. Mass. 2003) (dismissing commercial plaintiff's warranty claims based on *Sebago* and *Jacobs* where plaintiff purchased allegedly defective good from distributor rather than from defendant manufacturer). Consumer goods are those "used or bought for use primarily for personal, family or household purposes." *See* M.G.L. c. 106, 9-109. The Paint does not fall into this category: West Marine purchased the Paint for resale, not for its own use.[5] Clearly, therefore, because West Marine is a commercial purchaser of goods, privity of contract between West Marine and Suntec is required for Plaintiffs to prove their warranty-based claims. The absence of a contract between either Plaintiff and Suntec is fatal to Plaintiffs' warranty claims, and Suntec is entitled to summary judgment on Counts XX through XXII of Plaintiffs' Complaint.

### 3. *Because West Marine Claims Only Economic Damages, Plaintiffs Cannot Recover On Their Warranty Claims To The Extent Those Claims Sound In Tort.*

Plaintiffs' warranty claims fail on another basis: their claimed damages are not to persons or to property other than the Paint, but are purely economic losses, and as claims for such losses sound in contract, they are not recoverable on a tort-based warranty theory. *See Bay State Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103 (1980); *see also Aldrich v. ADD Inc.*, 437 Mass. 213 (2002) (in absence of personal injury or property damage, purely economic losses are unrecoverable in strict liability actions).

[5] This fact alone shows that Plaintiffs are not covered by § 2-318, as Plaintiffs are not within the class of persons § 2-318 was intended to protect: by its terms, the statute only covers persons who could reasonably be expected to "use, consume, or be affected by the goods." West Marine, as a reseller, simply would not reasonably be expected to use, consume, or be affected by the Paint.

Economic losses are "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." *Marcil v. John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 630 n. 3 (1980); *see also Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 89-90 (D. Mass. 1998), *quoting East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868 (1986)("the economic loss doctrine draws a distinction between the situation where the injury suffered is merely the 'failure of the product to perform properly' and the situation . . . where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property."). Plaintiffs claim precisely these type of economic losses: according to Plaintiffs' Complaint, the Paint allegedly failed to perform as expected; West Marine allegedly lost profits (directly and indirectly) and incurred costs of various types, and USFIC has incurred costs defending West Marine against customer suits under a policy of general liability insurance.[6] Therefore, the economic loss rule prevents Plaintiffs from recovering on a tort-based warranty theory, and Suntec is entitled to summary judgment on all of Plaintiffs' warranty counts.

### C. Plaintiffs' Strict Products Liability Claim—Count XXIII—Should Be Dismissed: No Such Cause Of Action Exists Under Massachusetts Law, And Even If It Appears to State a Claim for Breach of Warranty, It Should Be Dismissed On The Same Grounds As Counts XX Through XXII.

"The Court need not linger long over [Plaintiffs'] strict liability claim because . . . 'there is no recovery on the basis of strict liability in tort under Massachusetts law.'" *Sebago, Inc. v. Beazer East, Inc.*, 18 F.Supp.2d 70, 89-90 (D. Mass. 1998), *quoting Ramcharran v. Carraro*

---

[6] Plaintiffs allege no damage to "other property," but even if they did, the only property that might have been damaged was the boats to which the Paint was applied. Those boats are not owned by either Plaintiff and they cannot rely on damage to property of other persons to show "other property" damage that would take their alleged damages outside the economic loss rule. *See Superior Kitchen Designs, Inc. v. Valspar Industries, Inc.*, 263 F. Supp. 2d 140, 145 (D. Mass. 2003).

*Graphic Equipment, Inc.*, 825 F. Supp. 63, 67 (D. Mass. 1993). This has been the case since at least 1978, when the Supreme Judicial Court held that "there is no 'strict liability in tort' apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, ss. 2-314 2-318." *Swartz v. General Motors Corp.*, 375 Mass. 628, 629, 378 N.E.2d 61, 62 (1978).

Even if Count XXIII states a claim, under the foregoing authorities that claim must necessarily be based in the warranty provisions of Massachusetts's Uniform Commercial Code. As explained above in Section III, however, Plaintiffs cannot sustain a claim under Massachusetts warranty law on the facts of this case. Suntec's motion to dismiss should therefore be granted as to Count XXIII.

Respectfully submitted
Suntec Paint, Inc.
By its attorneys

Scott L. Machanic BBO # 311120
Holly B. Anderson, BBO # 649482
CUNNINGHAM, MACHANIC, CETLIN, JOHNSON & HARNEY, LLP
220 N. Main Street
Natick, MA 01760
T: (508) 651-7524
F: (508) 653-0119

Dated: September 27, 2004

228152

I hereby certify that a true copy of the above document was served upon ~~(each party appearing pro se~~ and) the attorney of record for each (other) party by mail ~~(by hand)~~ on 9/27/04.
Signed: