# GRIFFIN & GOULKA

### ATTORNEYS AT LAW
92 MONTVALE AVENUE, SUITE 2700
STONEHAM, MASSACHUSETTS 02180-3639
TELEPHONE (781) 279-9858

Facsimile (781) 279-9870
Website: www.griffinandgoulka.com

Direct Dial - (781) 279-4363
Email - jgoulka@griffinandgoulka.com

October 22, 2004

Clerk's Office
United States District Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

> **Re:   West Marine Products, Inc. and United States Fire Insurance Company v. Dolphinite, Inc., Clean Seas Company, and Suntec Paint, Inc.**
> **Civil Action No. 04-10251-PBS**

Dear Sir or Madam:

Enclosed are courtesy copies of the following documents which have been electronically filed in the above-captioned matter:

1.   Plaintiffs' Motion to Strike Portions of the Affidavit of Joseph H. Anderson;

2.   Certificate of Conference Concerning Plaintiffs' Motion to Strike Portions of the Affidavit of Joseph H. Anderson;

3.   Plaintiffs' Opposition to Defendant Suntec Paint's Motion to Dismiss or for Summary Judgment;

4.   Plaintiffs' Response to Defendant Suntec Paint, Inc.'s Statement of Material Facts; and

5.   Affidavit of Pam Fields.

Thank you for your assistance in this matter.

S:\Cases\2002-2003\03\203091\CourtUSDist102204.wpd

Clerk's Office
United States District Court
October 22, 2004
Page 2

**GRIFFIN & GOULKA**
(781) 279-9858

Very truly yours,

Joanne L. Goulka

JLG/rmc
Enclosures
cc:     By first-class mail:
        Scott L. Machanic, Esquire
        Gerald W. Motejunas, Esquire

S:\Cases\2002-2003\03\203091\CourtUSDist102204.wpd

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WEST MARINE PRODUCTS, INC.,<br>and UNITED STATES FIRE<br>INSURANCE COMPANY,<br>    Plaintiffs,<br><br>V.<br><br>DOLPHINITE, INC.,<br>CLEAN SEAS COMPANY, and<br>SUNTEC PAINT, INC.,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION<br>    NO. 04-10251-PBS |

## PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF JOSEPH H. ANDERSON

Plaintiffs move pursuant to F.R.C.P. 56(e) to strike paragraphs 6, 7 and 8 from the Affidavit of Joseph H. Anderson. As grounds therefore, plaintiffs state that F.R.C.P. 56(e) requires that Affidavits filed in support of a Motion for Summary Judgment shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated in the Affidavit. Paragraphs 6, 7 and 8 do not show that the affiant is speaking of his own personal knowledge or that he would be competent to testify to the matters contained in those paragraphs. His use of the words "us" and "we" imply that he was not personally involved in negotiating the contract with Clean Seas Company or in carrying it out. Instead of annexing written contracts, memoranda of agreements, purchase orders or invoices, and instead of recounting the oral conversation between the parties which formed the agreement between Suntec Paint, Inc. and Clean Seas

Company, the affiant makes conclusory statements as to what Suntec Paint, Inc.'s contractual obligations were.  Those conclusions are at issue in this case and the affiant would not be permitted to testify to them at trial.

Plaintiffs,
By their attorneys,
GRIFFIN & GOULKA

Joanne L. Goulka
92 Montvale Avenue, Suite 2700
Stoneham, Massachusetts 02180
(781) 279-9858
B.B.O. #205500

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a true copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on October 22 , 2004.

Joanne L. Goulka

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

WEST MARINE PRODUCTS, INC.,⠀⠀)
and UNITED STATES FIRE⠀⠀⠀⠀⠀)
INSURANCE COMPANY,⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
V.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀CIVIL ACTION
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀NO. 04-10251-PBS
DOLPHINITE, INC.,⠀⠀⠀⠀⠀⠀)
CLEAN SEAS COMPANY, and⠀⠀)
SUNTEC PAINT, INC.,⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants⠀⠀⠀⠀⠀⠀⠀)

## CERTIFICATE OF CONFERENCE CONCERNING
## PLAINTIFFS' MOTION TO STRIKE PORTIONS
## OF THE AFFIDAVIT OF JOSEPH H. ANDERSON

I hereby certify that I spoke by telephone with Attorney Scott Machanic, counsel

for defendant Suntec Paint, Inc., on September 5, 2004 and we were not able to

resolve our differences concerning the matters raised in this Motion.

⠀⠀⠀⠀⠀⠀⠀⠀Respectfully submitted,
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiffs,
⠀⠀⠀⠀⠀⠀⠀⠀By their attorneys,
⠀⠀⠀⠀⠀⠀⠀⠀GRIFFIN & GOULKA

⠀⠀⠀⠀⠀⠀⠀⠀Joanne L. Goulka
⠀⠀⠀⠀⠀⠀⠀⠀92 Montvale Avenue, Suite 2700
⠀⠀⠀⠀⠀⠀⠀⠀Stoneham, Massachusetts 02180
⠀⠀⠀⠀⠀⠀⠀⠀(781) 279-9858
⠀⠀⠀⠀⠀⠀⠀⠀B.B.O. #205500

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a true copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on October 22 , 2004.

Joanne L. Goulka

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **WEST MARINE PRODUCTS, INC.,**<br>**and UNITED STATES FIRE**<br>**INSURANCE COMPANY,**<br>　　**Plaintiffs,** | )<br>)<br>)<br>)<br>) |
| **V.** | )<br>) **CIVIL ACTION**<br>**NO. 04-10251-PBS** |
| **DOLPHINITE, INC.,**<br>**CLEAN SEAS COMPANY, and**<br>**SUNTEC PAINT, INC.**<br>　　**Defendants** | )<br>)<br>)<br>) |

### PLAINTIFFS' OPPOSITION TO DEFENDANT
### SUNTEC PAINT'S MOTION TO
### DISMISS OR FOR SUMMARY JUDGMENT

**I.　STATEMENT OF THE CASE**

　　This action arises out of claims that marine paint designed, manufactured and/or sold by the three defendants was defective, causing property damage to boats owned by customers of plaintiff West Marine Products, Inc. (hereinafter "West Marine"), which had sold the paint at retail to those customers. West Marine and its insurer, the plaintiff United States Fire Insurance Company, honored the implied warranty of merchantability which West Marine gave when it sold the paint, and they have paid over $496,000 to those customers to compensate them for their damages. West has also suffered its own damages for responding to its customers' claims and for unsold products.

　　There are counts against Suntec Paint, Inc. (hereinafter "Suntec Paint") for breach of express warranty (Count XX), breach of implied warranty of merchantability (Count XXI), breach of implied warranty of fitness for a particular purpose (Count XXII),

strict products liability (Count XXIII), negligence (Count XXIII) and common law indemnity for claims already paid out (Count XXV). There is also a Count for declaratory judgment seeking a declaration that Suntec Paint owes indemnity for claims submitted to West by its customers after the date of filing of the Complaint (Count XXVI). Suntec Paint has moved to dismiss all counts against it based on lack of jurisdiction and venue. It has moved in the alternative for summary judgment on the warranty based counts only. This Memorandum is submitted in opposition to Suntec Paint's motion.

II.    **Suntec Paint's Motion is Premature and Plaintiffs Should Be Permitted To Perform Discovery**

This action was filed on or about February 5, 2004 but did not proceed very far because the defendant Dolphinite, Inc. filed for bankruptcy protection before service was made. It took a substantial amount of time for plaintiffs to put this case in a posture where service could even be made. Dolphinite, Inc. did not list plaintiffs as creditors even though it included this action in its Bankruptcy Matrix. Plaintiffs had to move to intervene as creditors and then move for relief from the automatic stay so they could proceed against defendants Clean Seas Company and Suntec Paint. Relief from the automatic stay was only granted on July 12, 2004.

Accordingly, no formal discovery of any kind has been performed.[1] Plaintiffs have no way of knowing if the factual allegations Suntec Paint makes in support of its

---

[1]    During negotiations undertaken before service was made, plaintiffs sent out to Suntec Paint the documents they have in their possession which they would be producing in the course of complying with their automatic discovery obligations.

Motion are true, or of disproving them if they are not true. Plaintiffs ought to be given an opportunity to establish whether statements made by Suntec Paint's president, Joseph H. Anderson, relative to the extent of Suntec Paint's business dealings in Massachusetts and his lack of knowledge of whether the marine paint Suntec Paint was manufacturing would be sold to West Marine.[2] Likewise, plaintiffs should be given an opportunity to establish the specifics of Suntec Paint's activities so they can determine how mixing paint, putting it in cans, putting labels on the cans, and shipping those cans out to a purchaser differs from what a seller of goods does. Finally, plaintiffs should be given an opportunity to ascertain through discovery whether Suntec Paint actually did "mix" the paint in strict accordance with specifications provided by Clean Seas Company. In the various conversations which have taken place between the parties and counsel, the theories expressed by the defense parties as to why the paint failed include: 1) Dolphinite, Inc. left the paint in an area that was too cold; 2) the formula itself was inappropriate; and 3) the formula would have been appropriate but the paint was mixed wrong.

It is especially appropriate to allow plaintiffs to do discovery before considering Suntec Paint's Motion for Summary Judgment in light of the fact they have filed a Motion to Strike Portions of the Affidavit of Joseph H. Anderson, Suntec Paint's president. The paragraphs at issue, 6, 7 and 8, contain Mr. Anderson's conclusory statements about the meaning and effect of Suntec Paint's contract with Clean Seas.

---

[2] West Marine was (and is) one of the country's largest dealers in marine products with stores nationwide and a national catalog business.

Plaintiffs ought to be given an opportunity to see the contracts, purchase orders, invoices, correspondence and other documents detailing the defendants' relationships in order to determine for itself what those relationships were.

III.    **The Court has Jurisdiction Over Suntec Paint**

    A.    **This Action Is Authorized By Massachusetts Statutes**

"In reviewing personal jurisdiction in a diversity case, a federal court must consider whether jurisdiction is authorized by state statute and consistent with due process." *Keds Corp. v. Reene International Trading Corp.*, 888 F.2d 215, 218 (1989).

Jurisdiction in this civil action is authorized by Massachusetts General Laws c. 223A, § 3(d) which states:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's. . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

"In considering the defendant's motion, this Court employs the *prima facie* standard under which the Court considers whether the plaintiffs have proffered evidence that 'if credited, is enough to support findings of all facts essential to personal jurisdiction'". *Merced v. JLG Industries, Inc.*, 170 F.Supp. 2d 65, 69 (2001), citing *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st. Cir. 1992). "When determining whether a *prima facie* showing has been made, this Court does not act as a factfinder, but instead 'accepts properly supported proffers of evidence by plaintiff as true'." *Merced*, *Id.* at 69, quoting *Boit,* at 675.

The damages suffered by the plaintiffs include claims filed by 44 residents of the Commonwealth of Massachusetts and damages paid to claimants who reside in Massachusetts. (Affidavit of Pam Fields, par. 5). The damages incurred by the plaintiffs in Massachusetts as a direct result of the failure of the products manufactured by Suntec Paint satisfies the first provision of c. 223A (d) of "causing tortious injury in this commonwealth".

For the purpose of this Motion, plaintiffs acknowledge that the exact cause of the failure of the paints to perform as specified/warranted is not known at this time, but through discovery, plaintiffs expect to establish the cause or causes of the failure. A potential source of the failure of the paints is the manufacturing of the paints. Suntec Paint manufactured the subject paint at its manufacturing facility in Florida. (Affidavit of Joseph H. Anderson, pars. 7, 11). The claims of the plaintiffs against Suntec Paint are directly related to the manufacturing of the paint in Florida which is an act or omission outside the Commonwealth of Massachusetts, thereby satisfying the second portion of the statute.

G.L. 223A, § 3(d) provides for jurisdiction if a person: 1) regularly does or solicits business, or 2) engaged in any other persistent course of conduct, or 3) derives substantial revenue from goods used or consumed or services rendered in Massachusetts. "Because the second requirement of § 3(d) is disjunctive, the plaintiff need only satisfy one of its prongs." *Merced v. JLG Industries, Inc.*, *supra* at 71. See, *Noonan v. The Winston Company*, 135 F.3d, 85, 92 (1st Cir. 1998). Without the opportunity to perform discovery, plaintiffs do not have the means to determine if

Suntec Paint may satisfy either the first or second prongs of the test. Suntec Paint does maintain a website and a toll free number which is accessible from Massachusetts for the sale of their products. As argued below, plaintiffs contend that the third prong of the requirement is satisfied, but if the Court determines otherwise, the plaintiffs contend that they should be allowed to perform discovery to have the opportunity to fully explore any and all possible contacts Suntec Paint may have with the Commonwealth of Massachusetts.

Jurisdiction in Massachusetts is proper as the third prong of the test of deriving substantial revenue from goods used or consumed in Massachusetts is satisfied. The paint manufactured by Suntec Paint was sold by Clean Seas Company to Dolphinite, Inc., a Massachusetts corporation which sold 11,150 units of paint to West Marine for $683,069. In its Motion, Suntec Paint does not argue that it did not derive substantial revenue from the manufacture of the subject paint. Suntec Paint's argument that it has not derived substantial revenues from Massachusetts does not apply to the standards as established by the Courts.

In *Merced v. JLG Industries, Inc.*, 193 F. Supp. 2d, 290, 293, the Court held: "The statute requires only that the manufacturer derive substantial revenue from the use or consumption of its product line in Massachusetts not that the product at issue be sold in Massachusetts." Further, "It is well settled under Massachusetts law that 'substantial revenue' is not an absolute amount nor an absolute percentage of total sale." *Keds Corp. v. Renee International Trading Corp.*, *supra* at 219. Because discovery has not proceeded in this action, plaintiffs cannot state the revenues

generated by Suntec Paint as a result of its manufacture of the paint, but plaintiffs are of the belief that in accordance with the standards established by the Court, the "substantial revenue" prong of the test is satisfied. The goods were purchased by a Massachusetts corporation and the goods were used by residents of Massachusetts.

Plaintiffs have been caused tortious injury in Massachusetts as a result of claims filed by Massachusetts residents as a direct result of the failure of the paint manufactured by Suntec Paint outside of the Commonwealth. Plaintiffs state, upon information and belief, that Suntec Paint derived substantial revenue from the manufacture of the paint. The requirements of G.L. 223A, § 3(d) have been satisfied and Suntec Paint's Motion should be denied.

**B.     Due Process Considerations Do Not Preclude This Court From Exercising Jurisdiction**

**1.     Suntec Paint's Motion Is Premature**

In its Motion to Dismiss, Suntec Paint argues that this action should be dismissed because "Plaintiffs cannot have Suntec before this Court without violating due process principles." The arguments by Suntec Paint are made without the plaintiffs having the opportunity to perform any discovery. "The Court takes note of the general principle that a diligent plaintiff who is a 'total stranger' to a defendant corporation and faces a motion to dismiss for lack of personal jurisdiction normally should be allowed to conduct discovery to bolster its claim of jurisdiction." *LTX Corporation v. Daewood Corporation*, 979 F.Supp. 51, 59 (1997), citing *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966).

The Affidavit of Joseph H. Anderson attempts to establish that the "general

jurisdiction" form of minimum contacts is not satisfied. The Court has stated that "general jurisdiction" contact "is not directly founded on the defendant's forum-based contacts, but the defendant nevertheless engaged in a systematic activity, unrelated to the suit, in the forum state." *Merced v. JLG Industries, Inc.*, 170 F. Supp. 2d, at 73, quoting from *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992). Without having the opportunity to perform discovery, plaintiffs do not have the means to dispute any of Mr. Anderson's assertions or to determine if Suntec Paint has any other forum-based contacts which would satisfy a general jurisdiction analysis.

### 2.    Specific Jurisdiction Requirements Are Satisfied

The due process analysis requires certain minimum contracts, which the Courts have distinguished as either "general" and/or "specific" jurisdiction. The specific jurisdiction analysis "narrows a court's focus to a 'specific set of interactions as a basis for personal jurisdiction.' The existence of specific personal jurisdiction depends upon the plaintiff's ability to satisfy two cornerstone conditions: first, that the forum in which the federal district court sits has a long arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution. The second condition implicates three distinct components: relatedness, purposeful availment (sometimes called 'minimum contacts') and reasonableness." *Merced*, 170 F.Supp. 2d at 73, quoting *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d, 138, 144 (1st Cir. 1995). All three distinct components are satisfied and this Court has jurisdiction over Suntec Paint and its Motion should be denied.

S:\CASES\2002-2003\03\203091\PLEADINGS USDIST CT\OPPOSITIONSUNTECMOTSJ101304.DOC

### a.    Relatedness

In *Pritzker v. Yarig*, 42 F.3d, 53, 60-61 (1st Cir. 1994), the Court stated the issue of relatedness is a "flexible, relaxed standard". In *Nowak v. Tak How Inv., Ltd*, 94 F.3d 708, 715-716 (1st Cir. 1996), the Court, in applying this standard, held:

> [w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result. The corporation's own conduct increases the likelihood that a specific resident will respond favorably. If the resident is harmed while engaged in the activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

Suntec Paint entered into an agreement to manufacture the paint which is the subject this litigation. Suntec Paint either knew or should have known that the paint it was manufacturing was for resale to boating customers. Suntec Paint had an interest in the success of the product as it was deriving revenue from the manufacture of the paint. Residents of and businesses located within Massachusetts were harmed as a direct cause of the sale and application of the paint manufactured by Suntec Paint. Although Suntec Paint was supposedly not involved in the marketing and/or sale of the paint, its acts of manufacturing the paint were not performed in a vacuum. Suntec Paint's manufacturing of the paint was for the purpose of satisfying its contract requirements with Clean Seas Company and was performed with the knowledge that the paint was to be sold to boaters. Boaters in Massachusetts were clearly harmed by the manufacture of the paint by Suntec Paint, the integral activity which Suntec Paint

sought to establish through its contract to manufacture the subject paint. The nexus between Suntec Paint's act of manufacturing of the subject paint and the harm suffered by Massachusetts residents satisfies the relatedness analysis of the due process considerations.

### b.    Purposeful Availment

The Courts have ruled the cornerstones of the purposeful availment prong of the analysis requirement as voluntariness and foreseeability. *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d, 528 (1985). In *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed. 2d 490 (1980), the Court held that the foreseeability analysis requires "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there."

The Court, in *Merced v. JLG Industries, Inc.*, 170 F. Supp. 2d at 65, applied the standards and found the Court's purposeful availment analysis was satisfied against third party defendant L&L Fittings Manufacturing (hereinafter referred to as "L&L"). The case involved plaintiff (Merced) who was injured in Massachusetts while operating a manlift manufactured by JLG Industries, Inc. (hereinafter referred to as "JLG"), a Pennsylvania corporation. Plaintiff's injury allegedly occurred when an "elbow component of the manlift malfunctioned. The elbow component was manufactured by L&L, an Indiana company, and sold to Hydraulic Fittings Co., Inc. (hereinafter referred to as "Hydraulic"), a Pennsylvania corporation. Hydraulic packaged the elbow component and sold it to JLG who used the component in the manlift which was the

S:\CASES\2002-2003\03\203091\PLEADINGS USDIST CT\OPPOSITIONSUNTECMOTSJ101304.DOC

subject of the litigation.  Although the Court found that L&L maintained no office, employees, agents or sales force in Massachusetts, and that its sales in the Commonwealth were miniscule, the Court ruled that LL's contacts with the forum satisfied the purposeful availment of the due process test.

Suntec Paint's activities in this civil action are analogous to that of L&L.  In his Affidavit, Joseph H. Anderson states that Suntec Paint applied labels supplied by Clean Seas Company to the cans of paint.  The paint which was being manufactured pursuant to a Distribution Agreement between Clean Seas Company and Dolphinite, Inc. had a Dolphinite label applied to the paint cans.  Suntec Paint knew or should have known that Dolphinite, Inc., a Massachusetts corporation, was the customer for whom the paint was being produced.  It appears by inference from Anderson's Affidavit that Suntec Paint shipped the paint directly to Dolphinite, a Massachusetts business.  In *Merced*, L&L similarly did not sell the product to JLG but was the manufacturer of the product for Hydraulics who in turn sold it to JLG.

In *Merced*, the Court found that L&L's contacts with the Commonwealth were fragmented and sales were miniscule.  In his Affidavit, Joseph H. Anderson states that he has been employed by Suntec Paint for over 30 years, but only refers to the past three or four years when Suntec Paint had not been a party to any contract with any Massachusetts customers.  In his Affidavit, Joseph H. Anderson does not aver that Suntec Paint had no other contacts with Massachusetts other than the supplying of the subject paint, which contact alone is enough to satisfy the due process analysis.  Although not dispositive, as found by the Court in *Merced*, the Court did cite that L&L

maintained a website by which Massachusetts companies could avail themselves of L&L's products.  Suntec Paint not only maintains a website listing all of its products but also has a toll free number which is accessible from Massachusetts.  Suntec Paints' voluntary manufacturing of the paint for a Massachusetts corporation, together with other contacts satisfies the purposeful availment due process analysis and Suntec Paint's Motion should be denied.

### c.    Reasonableness

In *Merced*, 170 F. Sup. 2d at 75, the Court, in discussing the consideration of the reasonableness analysis, stated:  "The Supreme Court had identified five such considerations, termed by the first circuit, 'the gestalt factors':  i) the defendant's burden of appearing, ii) the forum state's interest in adjudicating the dispute, iii) the plaintiff's interest in obtaining convenient and effective relief, iv) the judicial system's interest in obtaining the most effective resolution of the controversy, and v) the common interests of all sovereigns in promoting substantive social policies", citing *United Elec. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, (1st Cir. 1992), citing *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174.

In *Nowak v. Tak How. Inv., Ltd*, 94 F.3d, 708, 718 (1st Cir. 1996), the Court, in its analysis of the burden, stated that it "recognized, however, that it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction".  The Court further stated that for this particular gestalt factor to have any significance, a defendant must show that the exercise of jurisdiction is "onerous in a special, unusual, or other constitutionally significant way." *Id.* At 718.  Suntec Paint has not asserted anything

which would satisfy the standard established by *Nowak* for appearing in this Court.

Massachusetts' adjudicatory interest is significant in this civil action. The plaintiff West Marine purchased the product from a Massachusetts corporation. The paint was shipped to and distributed from Massachusetts, and Massachusetts residents have suffered harm from the use of the product. The First Circuit in *Nowak v. Tak How Inv. Ltd*, 94 F.3d 708, 718, held: "Massachusetts has a strong interest in protecting its citizens from out-of-state solicitations for goods or services that prove to be unsafe, and it also has an interest in providing its citizens with a convenient forum in which to assert their claims." The defective product being shipped to Massachusetts, sold by a Massachusetts corporation and which provided harm to Massachusetts residents establishes significant adjudicatory interest for Massachusetts.

The Court, in *Nowak*, 94 F.3d at 718, noted that the Court must accord deference to plaintiff's choice of forum. Plaintiffs have an interest in pursuing this action in Massachusetts as defendant Dolphinite, Inc. is a Massachusetts corporation, has filed for bankruptcy in Massachusetts and claims made by customers harmed include Massachusetts residents.

In *Nowak*, 94 F.3d at 718, the Court noted in applying the administration of justice aspect that the Court's analysis "focuses on the judicial system's interest in obtaining the most effective resolution of the controversy". In this action, judicial economy would be best served by adjudication of this action in this Court as compared to Suntec Paint's argument that a new action could be brought in Florida. Judicial economy would not be served by litigating the same issues in two different forums.

The subject paint was shipped to a Massachusetts corporation (Dolphinite, inc.) pursuant to a Distribution Agreement. The product was sold by Dolphinite, Inc. and distributed from their Massachusetts facility. Although the product was sold by West Marine to boaters in a number of states, Massachusetts has an interest based on the residents of Massachusetts harmed by the defective product. Massachusetts' clear interest in maintaining jurisdiction over this matter satisfies the requirements of the analysis as one of the claims is against a Massachusetts corporation and Massachusetts residents were harmed by products sold and distributed from Massachusetts.

The due process considerations having been satisfied, the Court should deny Suntec Paint's Motion to Dismiss.

IV.    **Venue Is Appropriate**

Under 28 U.S.C. Section 1391(a), venue is proper in a diversity action whenever the judicial district is one "in which a substantial part of the events or omissions giving rise to the claim occurred...." Massachusetts is the location where a substantial part of the events or omissions giving rise to plaintiffs' claims occurred. Over 11,000 units of the marine paint at issue in this case were shipped to the defendant Dolphinite, who was located in Ipswich, Massachusetts. Dolphinite then shipped that paint from Massachusetts to plaintiff West Marine. Some of those shipments were to West Marine's stores in Massachusetts or to Massachusetts catalog or internet customers, and some of those customers were claimants to whom payments were made because of damages to those customers' boats.

Suntec Paint's suggestion that venue is improper because it provided its mixing services in Florida to a Florida corporation is misplaced. The statute does not require that the relevant "events or omissions giving rise to plaintiffs' claims" are limited to the particular defendant's acts or omissions.

Further, if the Court agrees that it has personal jurisdiction over Suntec Paint, venue is proper under 28 U.S.C. Section 1391(b). That section provides that for purposes of venue, a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

V.    **Plaintiffs' Motion to Strike Anderson's Affidavit Should Be Allowed**

F.R.C.P. 56(e) requires that an affidavit filed in support of a Motion for Summary Judgment must be made on the affiant's personal knowledge, must set forth facts as would be admissible in evidence, and must affirmatively show that the affiant would be competent to testify as to the matters stated in the Affidavit. Paragraphs 6, 7 and 8 of the Affidavit of Joseph H. Anderson do not show that any of those three prerequisites have been met. To the contrary, Anderson's use of the words "us" and "we" to represent what transpired during the negotiations of the contract between Suntec Paint and Clean Seas implies that he was not personally involved in negotiating that agreement or in completing Suntec Paint's obligations under that agreement.

These deficiencies are significant. One would have expected that the agreement between those two defendants would be in writing. There are no contracts, letters of understanding, purchase orders, invoices or other documents annexed to the Affidavit or identified by the affiant. Oral contracts are not proven by having a witness testify

that: "We agreed" to something. The rules of evidence usually require that the witness testify to what words were spoken by the contracting parties, so that the finder of fact may determine what the agreement was. Since Suntec Paint is trying to argue that, as a matter of law, it was only a provider of services and not the manufacturer or seller of marine paints, it would be patently unfair to allow Suntec Paint to base its Motion for Summary Judgment on statements that would not be admissible at trial and which should not be considered by the Court in ruling on the Motion.

VI.    **The Economic Loss Rule Does Not Apply**

The economic loss rule stands for the proposition that a plaintiff may not recover in tort if its losses consist only of economic damages. The applicability of the economic loss rule depends on what constitutes the 'relevant product" and the "other property." *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 90 (1998). Here, the relevant products are the marine paints, not boats with paint on them. See, *E.I. DuPont de Nemours & Co., v. Finks Farms, Inc.*, 656 So. 2d 171 (Fla. 2d DCA 1995) (if a product is purchased for use with an existing "finished" product, then damage to the existing product will be damage to "other property"). The damage consisted, among other things, of barnacles and other marine creatures growing on the bottoms of the boats to which the paint was applied. This growth exceeded what would normally occur, and damaged the boat hulls. The paint caused the bottom of inflatables to harden and crack, rendering them unusable. Further, the paint did not dry on inflatables, which meant it could not be removed and replaced with a bottom paint which would work. That also rendered the inflatables completely unusable. These damages are not like

the damages at issue in *Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.), Inc.*, U.S.D.C. (D.Mass.) C.A. No. 00-40084-CBS (April 20, 2003), where only the top coats, sealers and stains used on cabinets yellowed, peeled and flaked.  Here, the boats and inflatables themselves were damaged.

The fact that the "other property" which was damaged belonged to West's customers and not to West does not defeat plaintiffs' claims.  Plaintiffs paid West's customers because West was strictly liable under warranty law to them because the paints were defective.  Having made those payments, plaintiffs have become, in essence, subrogated to the rights of West's customers to collect from the parties who are actually responsible for those paints becoming defective.  As stated by the Supreme Judicial Court in *Jackson v. Boylston Mutual Insurance Co.*, 139 Mass. 508, 510 (1885): "Subrogation is the substitution of one person in place of another, whether as a creditor, or the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.  It does not necessarily depend upon contract, but grows out of the relation which two parties sustain to each other...."  Indeed, under the pleading requirements of F.R.C.P. 17(a), the warranty claims which could have originally been made by the ultimate users of the paint could not be raised in their individual names once their claims were satisfied by the plaintiffs herein.

## VII.    Lack of Privity Is No Defense

Suntec Paint claims that plaintiffs' breach of warranty claims are contract claims and that because they are not in privity with Suntec Paint, Suntec Paint is entitled to a

summary judgment.  It relies on G.L. c. 106, § 2-318 for that proposition.

G.L. c. 106, § 2-318 provides in relevant part:  "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer . . . of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods."  By its express terms, this statute is not limited to consumer transactions and this Court is not bound by the decisions in *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 97-98 (D.Mass. 1998) or *Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.), Inc.,* *supra.*  U.S.D.C. (D.Mass.) C.A. No. 00-40084-CBS (April 20, 2003).    West Marine may not have used or consumed the marine paint, but it was most definitely affected by the goods.

Second, as stated above, plaintiffs are seeking reimbursement for amounts paid to West Marine's customers because paints sold by the defendants were defective.  Almost all of those customers were consumers who did "use, consume or [were] affected by the goods."  Under G.L. c. 106, § 2-318, lack of privity is no defense.  See, *Jacobs v. Yamaha Motor Corp.*, 420 Mass. 323, 330-331 (1995).

## VIII.  Suntec Paint's Claim That It Was Not A Seller Has No Basis

Suntec Paint contends that the Uniform Commercial Code does not apply to it at all because it provided services and not goods.  It suggests that it provided what it calls toll manufacturing services, mixing other people's products according to formulas those

other supplied to them.[3]

It is accurate that the U.C.C. applies only to transactions in "goods." G.L. c. 106, § 2-102. "Goods" are "all things . . . which are movable at the time of identification to the contract for sale." G.L. c. 106, § 2-105. Marine paints poured into cans which are then labeled and shipped off to be sold at retail certainly qualify as "goods."

Suntec Paint seeks to suggests that it merely provided a service because it only mixed the product. This case is distinguishable from *Cumberland Farms v. Drehmann Paving & Flooring, Inc.,* 25 Mass.App.Ct. 530 (1988), where the defendant was a construction contractor. In *Cumberland Farms,* the defendant held itself out as an expert in manufacturing and installing brick flooring for food and dairy processing facilities. The Complaint revolved around allegations that the floor should have had expansions joints but that expansion joints were not installed. The allegations were not that the bricks were defective, just that they had been improperly installed. Here, the allegation is that the paint which Suntec manufactured was defective.

The "facts" that Suntec Paint mixed paints for other people using materials they supplied does not mean that Suntec Paint was not transacting in goods. Whether Suntec Paint got the ingredients and labels it used from its own customer or from some third party chemical or stationery supplier should not affect the outcome of this case. Similarly, the "fact" that Clean Seas came up with the formula does not detract from the conclusion that Suntec Paint was the manufacturer. Suntec Paint admits that it makes

---

3  If Suntec Paint did not manufacture and sell paint, one wonders why it called itself a paint company.

its own paint products by mixing ingredients purchased from others in proportions that vary from one type of paint to another. See Affidavit of Joseph H. Anderson, § 2. There is no reason to think that this process is fundamentally different from what Suntec Paint did when it created the marine paints using ingredients supplied by Clean Seas. Either way, it manufactured the paint. Unless it gave the marine paint it mixed back to Clean Seas for free, it was a seller of goods.[4] Suntec Paint is no different than any other contract manufacturer. It made and sold goods to Clean Seas.

IX.     **The Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose**

Plaintiffs agree that if the evidence turns out to show that Suntec Paint manufactured the marine paint according to plans and specifications furnished by Clean Seas, plaintiffs would have no claim for breach of the implied warranty of fitness for a particular purpose. They need to perform discovery in order to determine if that is what the evidence shows.

X.      **The Count for Strict Liability Should Not Be Dismissed**

Although it is accurate that Massachusetts has not specifically adopted Section 402 of the Restatement of Torts (3d), it has noted that the Massachusetts law of warranty is congruent in nearly all respects with the strict liability principles expressed in the Restatement. *Heins v. Wilhelm Loh Wetzlar Optical,* 26 Mass.App.Ct. 14, review denied 402 Mass. 1105 (1988); *Colter v. Barber-Greene Co.,* 403 Mass. 50, 61 (1988); *Hayes v. Ariens Company*, 391 Mass. 407, 412 (1984). F.R.C.P. 8(a) requires only a

---

4 It probably would not change the result in any event, but it should be noted that Suntec Paint does not suggest it billed Clean Seas for its services based on the time spent in mixing the paint.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WEST MARINE PRODUCTS, INC., )
and UNITED STATES FIRE )
INSURANCE COMPANY, )
    Plaintiffs, )
     )
V. )        CIVIL ACTION
     )        NO. 04-10251-PBS
DOLPHINITE, INC., )
CLEAN SEAS COMPANY, and )
SUNTEC PAINT, INC., )
    Defendants )

## RESPONSE TO DEFENDANT SUNTEC PAINT, INC.'S STATEMENT OF MATERIAL FACTS

1.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

2.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

3.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

4.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

5.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

6.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

7.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

8.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

9.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

10.    Admitted.

11.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

12.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

13.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

14.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

15.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

16.    Admitted.

17.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

18.    Plaintiffs have not had an opportunity to perform discovery and cannot state whether the facts asserted are true.

## Additional Facts

29.    West Marine Products, Inc. is one of the country's biggest retail sellers of boating supplies and equipment.  It has retail stores in 38 States.  Twelve of those stores operate in Massachusetts under the name of West Marine.  Three of those stores operate in Massachusetts under the name of Boat US.  They periodically send catalogs to customers in every State.  The overwhelming majority of its customers are boaters who use their boats for personal or family use.  (Affidavit of Pam Fields, ¶ 2).

30.    Dolphinite, Inc. sold approximately 11,150 units of the paint to West Marine at a cost of $683,069.  (Affidavit of Pam Fields, ¶ 3).

31.    Claims of 44 customers from Massachusetts have been paid by the plaintiffs.  (Affidavit of Pam Fields, ¶ 5).  Approximately 399 units of paint were sold in Massachusetts or through catalog or internet sales to customers of plaintiff West Marine with a Massachusetts address.  (Affidavit of Pam Fields, ¶ 5).

32.    Included amongst the claims which were submitted to West Marine were claims based on allegations that more barnacles and other marine life attached itself to the hulls of boats and inflatables on which the Dolphinite marine paint was applied than would have attached themselves had no paint been applied, causing property damage to the boats.  The growth reported was more than would normally be expected to occur.  Insofar as inflatables were concerned, there were allegations that the barnacles and other marine life which grew on the bottoms of the inflatables rendered the inflatables completely unusable and unrepairable as a result of the damage to those bottoms, that the marine paint could not be removed, which rendered them incapable of accepting

S:\CASES\2002-2003\03\203091\PLEADINGS USDIST CT\RESPONSESUNTECSTMTMATFACTS.DOC

any other bottom paint, and that the marine paint hardened and cracked the material used on the inflatables.  (Affidavit of Pam Fields, ¶ 6).

Plaintiffs,
By their attorneys,
GRIFFIN & GOULKA

Joanne L. Goulka
92 Montvale Avenue, Suite 2700
Stoneham, Massachusetts 02180
(781) 279-9858
B.B.O. #205500

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a true copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on October 22, 2004.

Joanne L. Goulka

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WEST MARINE PRODUCTS, INC., )
and UNITED STATES FIRE )
INSURANCE COMPANY, )
     Plaintiffs, )
)
V. )     **CIVIL ACTION**
)     **NO. 04-10251-PBS**
DOLPHINITE, INC., )
CLEAN SEAS COMPANY, and )
SUNTEC PAINT, INC., )
     Defendants )

## <u>AFFIDAVIT OF PAM FIELDS</u>

Pam Fields hereby deposes and states:

    1)    I am General Counsel for plaintiff West Marine Products, Inc. and have been personally involved in dealing with the defendants' counsel relative to the problems associated with the marine paints sold by the defendant Dolphinite, Inc. to West Marine Products, Inc. which are involved in this case.

    2)    West Marine Products, Inc. is one of the country's biggest retail sellers of boating supplies and equipment.  It has retail stores in 38 States.  Twelve of those stores operate in Massachusetts under the name of West Marine.  Three of those stores operate in Massachusetts under the name of Boat US.  They periodically send catalogs to customers in every State.  The overwhelming majority of its customers are boaters who use their boats for personal or family use.

    3)    According to the records kept by West Marine Products, Inc. in the ordinary course of its business, Dolphinite sold approximately 11,150 units of the paint to West Marine at a cost of $683,069.

GRIFFIN & GOULKA
(781) 279-9858

4)    In the course of responding to the complaints West Marine received about the Dolphinite marine paints, I spoke with counsel for Dolphinite and counsel for Clean Seas Company.  Counsel for both of those entities indicated that the fault with the marine paint lie with the other parties and perhaps that there was a problem when the paint was mixed by Suntec Paint in terms of the proper formulation not being followed.

5)    A review of our business records reflects that claims of 44 customers from Massachusetts have been paid, and that approximately 399 units of paint were sold in Massachusetts or through catalog or internet sales to customers with a Massachusetts address.

6)    Included amongst the claims which were submitted to West Marine were claims based on allegations that more barnacles and other marine life attached itself to the hulls of boats and inflatables on which the Dolphinite marine paint was applied than would have attached themselves had no paint been applied, causing property damage to the boats.  The growth reported was more than would normally be expected to occur. Insofar as inflatables were concerned, there were allegations that the barnacles and other marine life which grew on the bottoms of the inflatables rendered the inflatables completely unusable and unrepairable as a result of the damage to those bottoms, that the marine paint could not be removed, which rendered them incapable of accepting any other bottom paint, and that the marine paint hardened and cracked the material used on the inflatables.

Signed under the pains and penalties of perjury this 20th day of October, 2004.


_____
Pam Fields

GRIFFIN & GOULKA
(781) 279-9858

C:\DOCUME~1\PAMF\LOCALS~1\TEMP\GWVIEWER\AFFIDAVITFIELDS.WPD

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a true copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on October 22 , 2004.

Joanne L. Goulka