UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WEST MARINE PRODUCTS, INC. | ) | |
| and UNITED STATES FIRE | ) | |
| INSURANCE COMPANY, | ) | |
|     PLAINTIFFS | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04-10251-PBS |
| | ) | |
| DOLPHINITE, INC., | ) | |
| CLEAN SEAS COMPANY, and | ) | |
| SUNTEC PAINT, INC., | ) | |
|     DEFENDANTS | ) | |

SUNTEC PAINT'S REPLY TO
WEST MARINE'S OPPOSITION TO SUNTEC'S MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT

Suntec Paint, Inc. submits this Reply, as it maintains there is no jurisdiction under

the Massachusetts "Long Arm" Statute, nor does Suntec have sufficient contacts with

Massachusetts to permit this Court to exercise its jurisdiction in this case. Furthermore,

West Marine's contention that it is subrogated to the rights of individuals who used the

paint is incorrect.

Suntec's Revenue Did Not Derive from Goods Used, Consumed or Services Rendered in
the Commonwealth

West Marine has argued that the Massachusetts Long Arm Statute, M.G.L. c.

223A, § 3(d), permits personal jurisdiction over Suntec "may" satisfy one of the three

possible bases set forth in that statutory section. However, West Marine has in fact

argued only the third basis, concerning substantial revenue from goods "used or consumed or services rendered in Massachusetts."

Suntec earned **no** revenues from actions it took in Massachusetts. Any revenues involved in this case were earned by its sales to a Florida company, Clean Seas, of mixing services performed in Florida. West Marine's reliance on that subsection is misplaced.

Furthermore, even assuming that the shipment of paint <u>through</u> Massachusetts, with Dolphinite as a station along the way, could be considered in the statutory test for jurisdiction, West Marine has not shown that Suntec earned substantial revenues from goods <u>used,</u> or goods <u>consumed,</u> in Massachusetts. We know only that Dolphinite sold 11,150 units of paint to West Marine, a California corporation. According to the affidavit of Pam Fields submitted by West Marine, it sold 399 of those 11,150 units of paint (3.6%) in Massachusetts. There is no showing that Suntec derived "substantial revenue" from sales of paint used or consumed here.

<u>West Marine Has Failed to Demonstrate That Assertion of Jurisdiction Passes Due Process Scrutiny</u>

While there are two possible bases for jurisdiction, general and specific jurisdiction, West Marine has not presented any argument in support of any assertion of general jurisdiction, apparently recognizing that Suntec does not in fact generally do business in Massachusetts. West Marine has, however, attempted to argue in support of specific jurisdiction over Suntec.

> The First Circuit has condensed the principles underlying specific jurisdiction into three analytical components:
> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable. "Gestalt factors" (first delineated in _Burger King_, 471 U.S. at 476-477, 105 S.Ct. at 2184-2185, but not labeled as such in this Circuit until Judge Selya's opinion in _Donatelli v. National Hockey League_, 893 F.2d 459, 465 (1st Cir.1990)), are identified by the First Circuit as follows: "(1) the defendant's burden of appearing [in the forum], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." _United Elec. Workers_, 960 F.2d at 1088.

Noonan v. The Winston Co., 902 F.Supp. 298, 303    (D.Mass. 1995).

West Marine's arguments must fail on all counts.

Since Suntec has taken no actions with respect to Massachusetts, the litigation does not "arise out of, or relate to, the defendant's forum-state activities. Secondly, Suntec's in-state contacts do not qualify as "purposeful availment" of the privilege of conducting activities in Massachusetts. These are separate and distinct requirements.

> The First Circuit has expressly adopted the Asahi…[ Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987)] plurality's view as governing law…. The First Circuit has formulated a test of minimum contacts that has two aspects…. One aspect, dubbed "'relatedness," focuses on the relationship between the plaintiff's cause of action and the defendant's contacts with the forum state…. "Purposeful

3

availment" is the other aspect, and it "focuses on the
deliberateness of the defendant's contacts" with the forum state.

Turpin v. Mori Seiki Co., Ltd., 56 F.Supp.2d 121, 126  (D.Mass. 1999).

As noted above, there are no contacts directly between Suntec and Massachusetts.

Suntec is here only because Clean Seas, a completely separate entity, dealt with

Dolphinite, and then asked Suntec to help it, Clean Seas, fulfill Clean Seas' contract with

Dolphinite.

More importantly, Suntec did not purposefully deal with Massachusetts.[1]

The defendant's contacts with the forum state must be
voluntary – that is, not based on the unilateral actions of
another party or a third person.

Turpin, 56 F.Supp.2d at 126.

Here, Clean Seas dealt with Dolphinite, and had the dealings with Massachusetts.

It was Clean Seas' unilateral actions, rather than any efforts by Suntec, which caused the

paint to travel through Massachusetts.  Under circumstances such as here, there is no

specific jurisdiction over Suntec.

---

[1] Suntec has faced identical arguments in New York and New Jersey that, because marine
paint is involved, Suntec must have intended that the paint be utilized in "marine" states
such as Massachusetts.  That argument is equally applicable to, at a minimum, Alaska,
Hawaii, Washington, Oregon, California, Texas, Louisiana, Alabama, Georgia, Florida,
South Carolina, North Carolina, Virginia, Maryland, Delaware, Connecticut, Rhode
Island, New Hampshire, and Maine, assuming counsel's mental map is correct.  The
same principle would apply to every state along the St. Lawrence, Hudson, Susquehanna,
Mississippi, Ohio, and a myriad of other rivers, and all states along the Great Lakes and
the Land of a Thousand Lakes, Minnesota.

> In other words, if intermediaries act unilaterally to introduce a
> manufacturer's products into the forum state, the manufacturer
> cannot be said to have purposefully engaged in forum activities,
> even if it knew of the unilateral action.

Turpin, 56 F.Supp.2d at 126.

Clean Seas, not Suntec, sold its paint to Dolphinite. Clean Seas then turned to Suntec to mix that paint. There was no action by Suntec, itself, to create a connection with Massachusetts, which is the step Suntec must have taken to permit a finding of personal jurisdiction.

> Thus, a finding of personal jurisdiction will not offend due
> process when "the contacts proximately result from actions by
> the defendant *himself* that create a substantial connection with
> the forum State.

Noonan, 902 F.Supp. at 303.

The fact that Suntec has a website has minimal, if any, relevance to the decision.

> Neither the United States Supreme Court nor, it appears, any
> court within this circuit has held that a mere internet presence,
> without more, establishes personal jurisdiction. For its part, this
> court has stated that it would not find the existence of personal
> jurisdiction based solely on web listings such as the ones at
> issue here…. For one thing, the … [Suntec Paint] website is
> 'passive' – it only posts information for those who are
> interested – and, admittedly, makes no mention of any ties to
> Massachusetts…

Comer v. Comer, 295 F.Supp.2d 201, 209 - 210 (D.Mass. 2003).

The First Circuit has scrutinized personal jurisdiction claims closely, and often ruled against the exercise of jurisdiction. One case cited by West Marine demonstrates

5

just how substantial a defendant's contacts must be to satisfy the due process tests.  In

finding a lack of personal jurisdiction over the Defendant before it, the First Circuit

considered other cases it had decided, as follows:

> First, in *Glater,* we found that a manufacturer who advertised,
> employed eight sales representatives to distribute information,
> and sold products to distributors in the forum was not subject to
> general jurisdiction.  *See* 744 F.2d at 217.  Although CLB's
> selling efforts by its England-based sales-force represented
> substantial work, they were not as intense, active, and frequent
> as those of the *Glater* manufacturer's full-time sales
> representatives. *Compare id.* at 214-15, 217 with *Noonan II,*
> 947 F.Supp. at 567-68; *see also supra* notes 6 & 7.
>
>  In *Donatelli,* we found that ten years of providing league
> officials at exhibition hockey games, scouting, providing
> television broadcasts, and selling products bearing the National
> Hockey League (NHL) logo, taken together, did not meet the
> due process test.  *See Donatelli v. Nat'l Hockey League,* 708
> F.Supp. 31, 35 (D.R.I.1989) (reciting facts), *reversed* 893 F.2d
> 459 (1st Cir.1990).  Although CLB's contacts were arguably
> more intense than the NHL's contacts in Rhode Island, its two-
> year history in Massachusetts is far less continuous than the ten
> years of activity in that case. [FN9]

Noonan v. The Winston Co., 135 F.3d 85,  93 (1st Cir. 1998).


Here, Suntec has no sales representatives to direct sales efforts toward

Massachusetts.  There is no record here of any sales by Suntec to Massachusetts,

only of one sale by Suntec to Clean Seas, who in turn, independently, sold

product to Massachusetts, rather than sales on behalf of Suntec to Massachusetts.

There is no factual basis to support a finding of personal jurisdiction over Suntec.


West Marine appears to rely on Merced v. JLG Industries, Inc., 170 F.Supp.2d 65

(D.Mass. 2001).  There, L & L Fittings maintained ongoing direct sales relationships with

customers in Massachusetts. Over 5 years, without the aid of agents or distributors, L &
L sold its products directly to "several" Massachusetts companies each year. 170
F.Supp.2d at 75.

West Marine did not disclose, however, that a co-defendant in that case,
Hydraulic Fittings, was dismissed from the action because of the lack of personal
jurisdiction over it. Hydraulic Fittings sold other components which were used in the
involved manlift. It maintained regular sales to the manlift manufacturer, JLG, in
Pennsylvania. Like Suntec in this case, Hydraulic Fittings, however, had no other sales
to Massachusetts, or other contacts with Massachusetts. Merced v. JLG Industries, Inc.,
193 F.Supp.2d 290 (D. Mass. 2001).


In this case, like Hydraulic Fittings, Suntec has no other contacts with
Massachusetts – no office, no employees, agents or sales force in Massachusetts, nor does
it report sales in the Commonwealth. Suntec has no reason to anticipate being haled into
court in Massachusetts. The unilateral actions of one of Suntec's customer, Clean Seas,
to whom Suntec sold its mixing services, led to the present cause of action. There are
insufficient bases for jurisdiction.

In addition, Massachusetts really has little interest in this action. West Marine is a
foreign corporation. Few of its customers were located here, according to its own
affidavit.

<u>Discovery Will Not Assist West Marine to "Round Out" Its Prima Facie Case</u>

Discovery with respect to jurisdictional challenges is not an absolute right. It is available "only where a plaintiff is able to identify the specific facts which he seeks to round out his prima facie case." <u>Noonan v. The Winston Co.</u>, 902 F.Supp. 298, 309 (D.Mass. 1995).

West Marine has not shown specific additional facts which will help its argument. Rather, it is attempting to discover facts which show that Suntec is lying, when it says that it has no other contacts with Massachusetts beyond those disclosed in Mr. Anderson's affidavits. Under the circumstances of this case, discovery should be denied.

<u>West Marine Has No Equitable Subrogation Rights</u>

In response to Suntec's claims that West Marine's tort claims are barred by the "economic loss" rule, and that their warranty claims has by their lack of contractual privity, West Marine has argued, without citing a supporting case, that it is equitably subrogated to the rights of the customers whose claims it paid. West Marine is wrong.

While it has correctly quoted from <u>Jackson v. Boylston Mut. Ins. Co.</u>, 139 Mass. 508 (1885) concerning general principles of equitable subrogation, Massachusetts courts have apparently only applies equitable subrogation in matters involving mortgages and insurance contracts.

"'Equitable subrogation is an exception to the basic principle that determines priority among mortgages," Soap and T., Inc. v. Mercantile Bank and Trust Co., 1999 WL 1318976 (Mass.Super.Ct., Civil No. 95-2198H, March 1, 1999); East Boston Savings Bank v. Ogan, 428 Mass. 327, 701 N.E.2d 331 (1998).  It also applies when a mortgage is required to pay taxes in order to protect its security before foreclosure.  Massachusetts Hospital Life Ins. Co. v. Shulman, 299 Mass. 312, 12 N.E.2d 856 (1938).

The other area where the courts have utilized the doctrine is with respect to insurers.  "Subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof. 'The general rule of law ... is that (where) there is a contract of indemnity (it matters not whether it is a marine policy or a policy against fire on land, or any other contract of indemnity) and loss happens ... if anything which diminishes the loss comes into the hands of the person to whom he has paid it, it becomes an equity that the person who has already paid the full indemnity is entitled to be recouped by having that amount back." Travelers Ins. Co. v. Graye, 358 Mass. 238, 240, 263 N.E.2d 442, 443 (1970).  "Subrogation is an equitable arrangement incident to all contracts of indemnity and to all payments on account thereof." Money Store/Mass., Inc. v. Hingham Mut. Fire Ins. Co., 430 Mass. 298, 302, 718 N.E.2d 840, 843 (1999).  It also applies to claims between two carriers, each of whom might be responsible to pay the insured. United States Fire Ins. V. Peerless Ins. Co., 18 Mass.L.Rptr. 64, 2004 WL 1515591 (Mass.Super.Ct., Civ. No. 00-5595, Brassard, J., June 15, 2004).

Not all insurance contracts bring with them subrogation rights. "Subrogation rights may be reserved by an agreement between the insurer and insured, may, in some instances, arise by implication of law, or may be authorized by statute." Safety Ins. Co. v. Mass. Bay Transportation Authority, 58 Mass.App.Ct. 99, 103, 787 N.E.2d 1132, 1135 (2003). Courts "have readily implied rights of subrogation under policies covering property damage," but they "have not recognized implied rights of subrogation in the area of 'personal insurance,' a category that has included medical expense benefits as well as life insurance and other forms of accident insurance." Frost v. Porter Leasing Corp., 386 Mass. 425, 428, 436 N.E.2d 387, 389-390 (1982).

"The reason for implied subrogation under contracts of insurance is to prevent an unwarranted windfall to the insured," Frost, 386 Mass. at 428, 436 N.E.2d at 389, should the insured sue the third party for a recovery duplicative of the moneys received from the insurer.

There is a reason that equitable subrogation is generally limited to insurance matters. "The equitable principle is that when, **pursuant to an obligation**, one fulfills the duties of another, he is entitled to 'step in the shoes' of and assert the rights of that other against third persons." Employers Ins. Of Wausau v. Town of Northborough, 11 Mass.L.Rptr. 280, 2000 WL 281657 (Mass.Super.Ct., Civil No. 99-1308, Gershengorn, J., Jan. 14, 2000). (Emphasis added.) That "obligation" has, in all instances in Massachusetts, arisen pursuant to an insurance contract of some kind. That "obligation" was one which the insurer owed the insured.

10

In this case, West Marine owed no "obligation" to Suntec to make any payment. The principle of equitable subrogation does not apply.

In the absence of that "obligation," there is no legal obligation to reimburse the person making the payment. "It is a general rule that an intermeddler, by gratuitously paying the debt of another, does not create a legal obligation between himself and that other." Blair v. Claflin, 310 Mass. 186, 191, 37 N.E.2d 501, 504 (1941). To the extent that West Marine argues it was paying a debt owed by Suntec, West Marine gratuitously paid, and no legal obligation was created between West Marine and Suntec.

Finally, equitable subrogation does not apply here, where West Marine has claims for contribution, or, if fault is involved, indemnity. "'Equitable subrogation' is a doctrine to do justice where other avenues, like formal assignment or contractual subrogation, are for whatever reason unavailable or inadequate." American Universal Ins. Co. v. Medical Malpractice Joint Underwriting Assoc. of Mass., 1993 WL 818614 (Mass.Super.Ct., Civil No. 89-1749D, O'Toole, J., Sept. 3, 1993).

Because no insurance policy or mortgage interest is involved, because West Marine has other avenues of recovery available to it, and because West Marine owed no obligation to Suntec to pay the claimants, West Marine is not equitably subrogated to the rights of the individual claimants. It stands in this case as a commercial purchaser of paints, in no privity with Suntec, which has suffered only economic losses.

Summary

Based on the foregoing, and the previous submittals by Suntec Paint, Inc., Suntec prays that the Court will dismiss this action, without prejudice, as there is no personal jurisdiction over Suntec in Massachusetts. Furthermore, West Marine's claims fail to state a claim upon which relief may be granted, and they should be dismissed.


Respectfully submitted
Suntec Paint, Inc.
By its attorneys



Scott L. Machanic   BBO # 311120
Cunningham, Machanic, Cetlin,
        Johnson & Harney, LLP
220 N. Main Street
Natick, MA 01760
(781) 237-7030


229914

## CERTIFICATE OF SERVICE


I hereby certify that on October 28, 2004, I electronically filed the foregoing Reply to West Marine's Opposition to Suntec's Motion to Dismiss and/or for Summary Judgment together with the supporting affidavit of Joseph Anderson with the Clerk of the District Court using the CMIECF system, which sent notification of such filing to the following:

1. Joanne Goulka, Esq. at jgoulka@griffinandgoulka.com and
2. Marie Cheung-Truslow at mtruslow@smithbrink.com


Scott L. Machanic