UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WEST MARINE PRODUCTS, INC. )<br>and UNITED STATES FIRE )<br>INSURANCE COMPANY, )<br>    PLAINTIFFS )<br>)<br>v. )<br>)<br>DOLPHINITE, INC., )<br>CLEAN SEAS COMPANY, and )<br>SUNTEC PAINT, INC., )<br>    DEFENDANTS ) | CIVIL ACTION NO. 04-10251-PBS |

## AFFIDAVIT OF JOSEPH H. ANDERSON
## IN OPPOSITION TO MOTION TO STRIKE

Now comes Joseph H. Anderson and deposes as follows:

1. I am employed by the Defendant Suntec Paint, Inc. as president, and I have been employed with Suntec for approximately 30 years. I make the statements contained in this affidavit based on my personal knowledge.

2. I understand that West Marine has questioned the use of the words "us" and "we" in my prior affidavit submitted in this case. Contrary to the implication which West Marine has attempted to raise, I was personally involved in negotiating the contract with Clean Seas Company. Until the orders of particular batches were confirmed by purchase order, the dealings with Clean Seas personnel were primarily verbal, and I was involved directly in most of the communications. With respect to the understanding between the Suntec and Clean Seas, I was involved in almost all, in not all, of the communications, and, as president of the company, if I was not personally involved in any communication, I know of the substance of any significant communications with respect to Clean Seas. I state the limitation

in this paragraph of "almost all, in not all," only because it is theoretically possible that someone at Suntec was involved in a communication of which I am unaware. However, no one in a position to bind Suntec to any agreement would have been a party to any significant communication of which I was not aware and/or approve.

3. Specifically, I was personally involved with the approach by Clean Seas to us in February of 2002 regarding our ability to mix marine paint to specifications desired, and supplied, by Clean Seas. I was personally involved in our review of the formula specifications and other information supplied by Clean Seas, and I was personally involved in the communications by which we subsequently agreed to mix the paint as specified by Clean Seas. It was my personal understanding to which I referred, when I stated that "We understand that the inquiry by Clean Seas was prior to, and independent of, its contract with Dolphinite."

4. As company president, I personally know that we mixed marine paint under contract with Clean Seas. Since I was the primary contact at Suntec concerning the paint, I personally know that "We were never involved in determining the formula for the marine paint we mixed for Clean Seas—Clean Seas holds the patents. We mixed the marine paint exclusively using ingredients provided to us by Clean Seas. We placed the paint in cans, and applied labels which were designed and printed by others and supplied to us."

5. I was the person involved in the contacts referenced in the statement that "Sometime after we began mixing marine paint for Clean Seas, it contacted us concerning a contract it had to produce the marine paint, and requested that we

mix that paint. We were not, and are not, parties to Clean Seas's contract. We agreed to mix the paint for Clean Seas. We were not involved in and did not have the right to be involved in Clean Seas's selection of customers or markets for the selling of the paint we mixed for it." As company president, I would be the person involved if we had been a party to Clean Sea's contract, or if we were involved in, or had a right to be involved in, Clean Sea's selection of customers or

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26th DAY OF OCTOBER, 2004.

_____
Joseph Anderson

229894