UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WEST MARINE PRODUCTS, INC., and UNITED STATES FIRE INSURANCE COMPANY,<br>    Plaintiffs,<br><br>V.<br><br>DOLPHINITE, INC., CLEAN SEAS COMPANY, and SUNTEC PAINT, INC.<br>    Defendants | CIVIL ACTION<br>NO. 04-10251-PBS |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
CLEAN SEAS COMPANY'S MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT**

I.   **STATEMENT OF THE CASE**

This action arises out of claims that marine paint designed, manufactured and/or sold by the three defendants was defective, causing property damage to boats owned by customers of plaintiff West Marine Products, Inc. (hereinafter "West Marine"), which had sold the paint at retail to those customers. West Marine and its insurer, the plaintiff United States Fire Insurance Company, honored the implied warranty of merchantability which West Marine gave when it sold the paint, and they have paid over $490,000 to those customers to compensate them for their damages. West has also suffered its own damages for responding to its customers' claims and for unsold products.

There are counts against Clean Seas Company (hereinafter "Clean Seas") for breach of express warranty (Count XIII), breach of implied warranty of merchantability (Count XIV), breach of implied warranty of fitness for a particular purpose (Count XV),

strict products liability (Count XVI), negligence (Count XVII), common law indemnity for claims already paid out (Count XVIII), and a Count for declaratory judgment seeking a declaration that Suntec Paint owes indemnity for claims submitted to West by its customers after the date of filing of the Complaint (Count XIX). Clean Seas has moved to dismiss all counts against it or, in the alternative, for summary judgment. This Memorandum is submitted in opposition to Clean Sea's motion.

II. **Clean Sea's Motion is Premature and Plaintiffs Should Be Permitted To Perform Discovery**

This action was filed on or about February 5, 2004 but did not proceed very far because the defendant Dolphinite, Inc. filed for bankruptcy protection before service was made. It took a substantial amount of time for plaintiffs to put this case in a posture where service could even be made. Dolphinite, Inc. did not list plaintiffs as creditors even though it included this action in its Bankruptcy Matrix. Plaintiffs had to move to intervene as creditors and then move for relief from the automatic stay so they could proceed against defendants Clean Seas Company and Suntec Paint. Relief from the automatic stay was only granted on July 12, 2004.

Accordingly, no formal discovery of any kind has been performed.[1] Plaintiffs have no way of knowing if the factual allegations Clean Seas makes in support of its Motion are true, or of disproving them if they are not true. Plaintiffs ought to be given an opportunity to perform discovery before being required to respond to a Motion for

---

[1] During negotiations undertaken before service was made, plaintiffs sent out to Clean Seas' original attorney, Stephen Durant, the documents they have in their possession which they would be producing in the course of complying with their automatic discovery obligations.

Summary Judgment. This is not a case where plaintiffs have sat by without diligently pursuing the case. The defendants have not even provided the discovery to be produced automatically. Clean Seas has not even produced the contractual agreements it has with Suntec Paint, Inc. Mr. Polenski merely refers to them as a "distribution agreement with Dolphinite and a contractual arrangement" with Suntec. There is no explanation as to why Dolphinite was Clean Seas' only customer for the product.

III.   **The Economic Loss Rule Does Not Apply**

The economic loss rule stands for the proposition that a plaintiff may not recover in tort if its losses consist only of economic damages. The applicability of the economic loss rule depends on what constitutes the 'relevant product" and the "other property." *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 90 (1998). Here, the relevant products are the marine paints, not boats with paint on them. See, *E.I. DuPont de Nemours & Co., v. Finks Farms, Inc.*, 656 So. 2d 171 (Fla. 2d D.C.A. 1995) (if a product is purchased for use with an existing "finished" product, then damage to the existing product will be damage to "other property"). The damage consisted, among other things, of barnacles and other creatures growing on the bottoms of the boats to which the paint was applied. This growth exceeded what would normally occur, and damaged the boat hulls. The paint caused the bottom of inflatables to harden and crack, rendering them unusable. Further, the paint did not dry on inflatables, which meant it could not be removed and replaced with a bottom paint which would work. That also rendered the inflatables completely unusable. These damages are not like the

damages at issue in *Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.), Inc.*, U.S.D.C. (D.Mass.) C.A. No. 00-40084-CBS (April 20, 2003), where only the top coats, sealers and stains used on cabinets yellowed, peeled and flaked. Here, the boats and inflatables themselves were damaged.

The fact that the "other property" which was damaged belonged to West's customers and not to West does not defeat plaintiffs' claims. Plaintiffs paid West's customers because West was strictly liable under warranty law to them because the paints were defective. Having made those payments, plaintiffs have become, in essence, subrogated to the rights of West's customers to collect from the parties who are actually responsible for those paints becoming defective. As stated by the Supreme Judicial Court in *Jackson v. Boylston Mutual Insurance Co.*, 139 Mass. 508, 510 (1885): "Subrogation is the substitution of one person in place of another, whether as a creditor, or the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. It does not necessarily depend upon contract, but grows out of the relation which two parties sustain to each other...." Indeed, under the pleading requirements of F.R.C.P. 17(a), the warranty claims which could have originally been made by the ultimate users of the paint could not be raised in their individual names once their claims were satisfied by the plaintiffs herein.

IV.  **Lack of Privity Is No Defense**

Clean Seas claims that plaintiffs' breach of warranty claims are contract claims and that because they are not in privity with Clean Seas, Clean Seas is entitled to a

summary judgment. It relies on G.L. c. 106, § 2-318 for that proposition.

G.L. c. 106, § 2-318 provides in relevant part: "Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer . . . of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use, consume or be affected by the goods." By its express terms, this statute is not limited to consumer transactions and this Court is not bound by the decisions in *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 97-98 (D.Mass. 1998) or *Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.), Inc., supra.* U.S.D.C. (D.Mass.) C.A. No. 00-40084-CBS (April 20, 2003). West Marine may not have used or consumed the marine paint, but it was most definitely affected by the goods.

Second, as stated above, plaintiffs are seeking reimbursement for amounts paid to West Marine's customers because paints sold by the defendants were defective. Almost all of those customers were consumers who did "use, consume or [were] affected by the goods." Under G.L. c. 106, § 2-318, lack of privity is no defense. See, *Jacobs v. Yamaha Motor Corp.*, 420 Mass. 323, 330-331 (1995).

V.   **Plaintiffs' Common Law Indemnity Claim Is Viable**

West Marine is a non-altering seller that honored the implied warranty of merchantability claims of its customers which arose because the defendants' marine paint was defective. No one seems to be disputing that the paint was defective. That defective marine paint was manufactured by Suntec Paint, Inc. under a contract with

Clean Seas. Clean Seas presumably created the paint. It admits it patented it and sold it to Dolphinite, Inc., who sold it to West Marine. Since no discovery has been performed, the evidence does not establish the formulation was improper or whether the paint was mixed wrong.

Plaintiffs are entitled to seek indemnity. Under the Restatement of Torts (2d), § 886B:

> (1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.
>
> (2) Instances in which indemnity is granted under this principle include the following:
>
> . . .
>
> (d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect . . . .

Massachusetts has adopted a similar theory in *Santos v. Chrysler Corporation*, 430 Mass. 198, 217 (1999): "'Indemnity . . . allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorney's fees.'", quoting *Elias v. Unisys Corp.*, 410 Mass. 479, 482 (1991).

Clean Seas' contention that the indemnity count and the declaratory judgment count must be dismissed because they expect the breach of warranty and negligence counts to be dismissed is without merit. Clean Seas based its request for dismissal of

those counts on lack of privity and the economic loss rule. Those defenses have nothing to do with the presence or absence of "fault" on the part of Clean Seas. Designing, manufacturing and selling paint that harmed boats and inflatables certainly ought to qualify as fault.

VI.     **The Count for Strict Liability Should Not Be Dismissed**

Although it is accurate that Massachusetts has not specifically adopted Section 402 of the Restatement of Torts (3d), it has noted that the Massachusetts law of warranty is congruent in nearly all respects with the strict liability principles expressed in the Restatement. *Heins v. Wilhelm Loh Wetzlar Optical,* 26 Mass.App.Ct. 14, review denied 402 Mass. 1105 (1988); *Colter v. Barber-Greene Co.,* 403 Mass. 50, 61 (1988); *Hayes v. Ariens Company*, 391 Mass. 407, 412 (1984). F.R.C.P. 8(a) requires only a short and plain statement of the claim. Count XVI does not become deficient because it alleges strict liability. Warranty law likewise involves strict liability. *Colter, supra,* at 61. At most, plaintiffs have pleaded multiple counts for what is essentially the same remedy. That does not mean it fails to state a claim.

VII.    **Conclusion**

For the reasons stated above, Clean Seas' Motion to Dismiss or for Summary Judgment should be denied.

Plaintiffs,
By their attorneys,
GRIFFIN & GOULKA

*/s/ Joanne L. Goulka*
Joanne L. Goulka
92 Montvale Avenue, Suite 2700
Stoneham, Massachusetts 02180
(781) 279-9858
B.B.O. #205500

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a courtesy copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on November 2, 2004.

*/s/ Joanne L. Goulka*
Joanne L. Goulka