# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WEST MARINE PRODUCTS, INC.,   )
and UNITED STATES FIRE   )
INSURANCE COMPANY,   )
    Plaintiffs,   )
  )
V.   )     **CIVIL ACTION**
  )     **NO. 04-10251-PBS**
DOLPHINITE, INC.,   )
CLEAN SEAS COMPANY, and   )
SUNTEC PAINT, INC.,   )
    Defendants   )

## AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

### PARTIES

1.    Plaintiff West Marine Products, Inc. (hereinafter "West Marine") is a duly organized California Corporation with principal offices at 500 Westridge Drive, Watsonville, California.

2.    Plaintiff, United States Fire Insurance Company is a duly organized insurance company which provided insurance to the plaintiff West Marine Products, Inc. and is subrogated to West Marine's rights to the extent that it has indemnified West Marine.

3.    Defendant Dolphinite, Inc. (hereinafter "Dolphinite") is a Massachusetts corporation with principal offices at 14 Barney's Joy Road, South Dartmouth, Bristol County, Massachusetts, and at all times relevant to this Complaint conducted business in the Commonwealth of Massachusetts.

4.    Defendant Clean Seas Company (hereinafter "Clean Seas") is a duly organized Florida corporation with principal offices at 1301 Riverplace Boulevard, Suite 1904, Jacksonville, Florida, and upon information and belief, at all times relevant to this Complaint

GRIFFIN & GOULKA
(781) 279-9858

– 1 –

conducted business in the Commonwealth of Massachusetts.

5.      Defendant Suntec Paint, Inc. (hereinafter "Suntec") is a duly organized Florida corporation with principal offices at 1111 S.E. 22nd Avenue, Gainesville, Florida, and upon information and belief, at all times relevant to this Complaint conducted business in the Commonwealth of Massachusetts.

6.      This Court has jurisdiction over the counts in this Complaint and the parties pursuant to 28 U.S.C. §§ 1332 and 2201.  The matter and controversy stated in this Complaint (a) is an actual controversy; (b) exceeds the sum of $75,000.00, excluding interest and costs, and (c) is between entities of different states.

7.      This Court has personal jurisdiction over the defendants pursuant to *International Shoe Co. v. Washington, 326 U.S. 310 (1945)* and their progeny and the laws of the Commonwealth of Massachusetts including, but not limited to, the so-called Long Arm Statute, G.L. c. 223A, § 3.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, et seq.

<u>FACTS</u>

9.      West Marine is, and at all times relevant to this complaint was, a company which sells marine boating products to consumers through its retail stores, catalogues, wholesale distribution and internet distribution sales.  Among the products it sells are paint products for boat hulls.  United States Fire Insurance Company is, and was at all times relevant to this complaint, the general liability insurer for West Marine.

10.      Upon information and belief, Dolphinite is, and at all times relevant to this complaint was, a manufacturer and distributor of products for the marine industry including, but

not limited to, boat hull paints that allegedly would kill marine growth on hulls to which it was applied (anti-fouling properties), would increase the speed of boats and inflatables to which it was applied (speed properties) and was easy to apply (ease of application properties) desirable to the recreational marine market.

11.    Upon information and belief, Clean Seas is, and at all times relevant to this complaint was, a manufacturer and distributor of paints for the marine industry including, but not limited to, boat hull paints that allegedly would kill marine growth on hulls to which it was applied (anti-fouling properties), would increase the speed of boats and inflatables to which it was applied (speed properties) and was easy to apply (ease of application properties) desirable to the recreational marine market.

12.    Upon information and belief, Suntec is, and at all times relevant to this complaint was, a manufacturer and distributor of paints including, but not limited to, boat hull paints that allegedly would kill marine growth on hulls to which it was applied (anti-fouling properties), would increase the speed of boats and inflatables to which it was applied (speed properties) and was easy to apply (ease of application properties) desirable to the recreational marine market.

13.    On or about September 5, 2002, West Marine entered into a written agreement with Dolphinite for the purchase of products to be sold in West Marine's retail outlets, and through catalogues, wholesale distribution and internet distribution sales.  The agreement specified the terms and conditions for the purchase of all products from Dolphinite for retail and wholesale sales within all of West Marine's distribution outlets.  A true and correct copy of said written agreement is attached hereto as Exhibit A, and incorporated herein by this reference.

14.    Section 1.3 of the General Terms of the September 5, 2002 Agreement, in

pertinent part, states:

> 1.3  Representations and Warranties.  Vendor represents and warrants to West Marine that:
>
> a.  All Vendor Products supplied to or on behalf of West Marine: (i) are free from defects, conform to samples, specifications, or other descriptions furnished by the Vendor and/or agreed to by West Marine (whichever standards result in a higher quality); (ii) are merchantable . . . ; (iii) are fit and appropriate for the particular and ordinary purpose for which such merchandise was designed . . . ; (iv) are not adulterated . . . falsely labeled or advertised by Vendor; . . . (vi) comply with Vendor's published specifications . . .
>
> b.  In addition to all warranties implied by law, that Vendor Product shall conform to and comply in all respects with the Applicable Laws including all applicable Environmental Laws . . . .

15.    Section 1.4 of the General Terms of the September 5, 2002 Agreement, in pertinent part, states:

> 1.4 Indemnification
>
> a.  Vendor agrees to indemnify, defend and hold West Marine harmless from and against any Claim [ the word "Claim is defined in Section 1.0 as any claim, action, legal proceeding, liability, loss, damage, judgment, settlement, costs and expenses, including attorneys' fees and costs. . .), . . . arising from or in connection with the manufacture, labeling, advertisement . . . distribution, sale, . . . any Claim that arises from or relates in any way to: . . . (e) any Claim arising out of or resulting from any actual or alleged defect in Vendor Product or that such Vendor Product is otherwise deficient in any respect in its manufacture, design, . . . labeling, assembly or otherwise, whether latent or patent, including any

S:\Cases\2002-2003\03\203091\PLEADINGS USDIST CT\AmendedComplaint.DOC

> actual or alleged . . . damage to any property, or any other damage or loss by whomsoever suffered.

16.    Section 1.5 of the General Terms of the September 5, 2002 Agreement, in

pertinent part, states:

> 1.5 Insurance
>
> a.  Vendor shall, at its own expense, obtain and maintain the following insurance for the Term of this Agreement:  Commercial General Liability, with coverage including premises/operations, contractual, personal and products/completed operations liabilities, with limits of not less than $2,000,000 per occurrence . . . for property damage . . .
>
> b. . . . The insurance will include product liability insurance that holds harmless the insureds against such liability to third parties resulting from an injury attributable to any Vendor Product manufactured, labeled, . . . supplied, sold, . . . by Vendor under this Agreement.  West Marine . . . shall be named as additional insureds. . . .

17.    Section 11.20 of the General Agreement Provisions of the September 5, 2002

Agreement, in pertinent part, states:

> 11.20 Governing Law, Jurisdiction.
>
> This Agreement and all rights and duties hereunder shall be governed by, and construed in accordance with, the laws of the State of California, United States of America, excluding its conflict of laws principles that would apply the law of another jurisdiction, for the purposes of enforcing any claim arising under this Agreement. . . .

18.  In accordance with the terms of the September 5, 2002 Agreement, West Marine

purchased, in sealed containers, pre-labeled with the "Dolphinite" brand, and with use and application instructions on said label provided by Dolphinite, for resale in its various outlets, Dolphinite brand "Go Fast Paint" and "Go Fast Inflatable Bottom Paints" (hereinafter the "Products"). West Marine purchased the Products from Dolphinite based on representations and warranties that the Products would adhere to boat hulls and that they had anti-fouling, speed and ease of application properties.

19.     Upon information and belief, the Products were manufactured, sold and/or distributed by Dolphinite, Clean Seas and Suntec.

20.     Pursuant to the September 5, 2002 Agreement, West Marine purchased the Products from Dolphinite for resale in February and March of 2003. The Products were comprised of the aforedescribed paints in sealed containers labeled for resale with the "Dolphinite" brand and with use and application instructions.

21.     Based on representations and warranties from Dolphinite, West Marine purchased, marketed, advertised and sold the Products to its retail and wholesale customers as paints which would adhere to boat hulls and that they had anti-fouling, speed and ease of application properties. In doing so, West Marine did not alter or change the Products, their sealed containers or their labels or use and application instructions.

22.     Upon information and belief, the Products, inclusive of their labeling, and use and application instructions, were defective, unfit for their intended use, and were nonconforming to the representations and warranties which accompanied their sale, marketing and distribution by defendants. When used as instructed, the Products did not adhere to boat hulls, and/or did not have the anti-fouling properties, speed properties, and/or ease of application

properties which the defendants, and each of them, represented the Products to have. Upon information and belief, retail and wholesale customers of plaintiffs who used the Products experienced wide-spread and repeated failures in the Products.

23.     As a consequence of the failure of the Products, claims by West Marine customers were filed, and continue to be filed, against West Marine as a result of the failure of the Products. As a further consequence of the failure of the Products, West Marine stopped selling its unsold inventory of the Products, has removed the Products from its wholesale and retail distribution chains, continues to receive customer returns of the defective Product, is presently storing its unsold inventory and returns of the Products and will ultimately need to dispose of such inventory and returns in compliance with all Federal and state laws regulating the disposal of Hazardous Materials. West Marine has incurred, and will continue to incur, substantial costs and expenses in doing so, and its unsold inventory of the Products has no value because of its defective nature. These costs and expenses, including the unsold inventory, as of the date hereof exceed $550,000.

24.     The claims filed against West Marine by its customers are based on a failure of the Products to adhere to boat hulls, a failure of the Products to prevent marine growth, the Products cause the boats to move at a slower speed instead of a faster speed, and the Products were difficult to apply and/or hardened incorrectly. The claims allege that West Marine customers have suffered property damage to their boats including, but not limited to, marine growth on hulls, paint damage, increased fuel consumption, loss of use of vessel, haul out costs, scraping and cleaning costs, costs to repaint and costs for relaunching vessels. Some of the claims allege that the boats or inflatables have been damaged to the point they are totally

GRIFFIN & GOULKA
(781) 279-9858

unusable and must be replaced.

25.     The claims against West Marine by its customers for property damage as a result of the failure of the Products which have already been paid by the plaintiffs exceed $294,723.49.

26.     On or about July 1, 2003, West Marine sent a demand, by registered mail, to Dolphinite for indemnification and defense on behalf of West Marine in accordance with the September 5, 2002 Agreement, for the claims filed against West Marine for the property damage incurred as a result of the failure of the Products.

27.     To date, Dolphinite has refused to indemnify and defend West Marine for any or all claims arising out of and in any way related to the failure of the Products.

28.     On or about September 17, 2003, West Marine sent to Dolphinite a formal notice of revocation of its prior acceptance of Dolphinite's delivery of the Products to West Marine, tendered its unsold inventory of the Products to Dolphinite, pursuant to Uniform Commercial Code §2-608, and reserved its rights to recover its cost of the defective Products and all expenses associated with the shipping and handling thereof. Dolphinite refused to accept the tender, provided no instructions for the return of the unsold inventory, and disavowed any right, title or interest in the rejected unsold inventory of the Products in the possession of West Marine.

29.     Upon information and belief, Dolphinite failed to obtain insurance policies pursuant to the September 5, 2002 Agreement which named West Marine as an additional insured.

30.     Upon information and belief, Dolphinite failed to obtain insurance policies pursuant to the September 5, 2002 Agreement for insurance coverage for failures attributable to the Products. Plaintiff United States Fire Insurance Company has paid some of the claims

against West Marine pursuant to the policy of liability insurance it issued.

31.     Because of the actions of the defendants, plaintiffs have suffered, *inter alia*, the following damages: The amount West Marine paid Dolphinite for the defective Products, the amounts paid by West Marine to market and sell the Products, the amounts paid to ship the Products to West Marine locations, the amounts paid to store the Products, costs incurred in handling claims and complaints, costs incurred by plaintiffs in claims paid to date, lost sales, loss of good will and reputation due to the defective Products, loss of other business opportunities, costs incurred in enforcing the contract between West Marine and Dolphinite, costs incurred in testing the Products, costs incurred in handling and processing returns from customers, costs of attorneys' fees and the fees of other professionals, costs incurred to remove the Products from West Marine's stores and distribution centers, costs incurred to ship the unsold or returned inventory of the Products to an appropriate storage facility, costs of storage of the unsold or returned inventory of the Products, costs of disposition of the unsold or returned inventory of the Products and other incidental and consequential damages.

COUNT I - Breach of Contract
<u>(Plaintiffs v. Dolphinite)</u>

32.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 31 as if fully set forth herein.

33.     As more fully described herein, Dolphinite breached its contract with West Marine, a copy of such September 5, 2002 Agreement is attached hereto as Exhibit A, and incorporated herein by this reference.

34.     Dolphinite's breach of contract includes, but is not limited to:

(a) failing to furnish the Products in a condition that conforms with representations and warranties, namely that the Products did not increase the speed of the boats and inflatables, adhere to boat hulls or have anti-fouling or ease of application properties as represented and warranted;

(b) failing to comply with the express and implied warranties of the Products in accordance with the Agreement, common law, and statutory law;

(c) failing to fully comply with the express warranties under the Agreement;

(d) failing to provide indemnity and defense to West Marine with regard to consumer claims regarding the Products;

(e) failing to assume defense and settlement of consumer claims regarding the Products;

(f) failing to obtain appropriate insurance policy coverages for the Products in accordance with the terms of the Agreement;

(g) failing to name West Marine as an additional insured in accordance with the terms of the Agreement;

(h) failing to properly label the Products; and

(i) failing to accept West Marine's tender of West Marine's inventory of unsold and returned Products and to refund West Marine's expenses and costs therefore, including, without limitation, the cost of the Products and their transportation, storage and disposition.

35. Dolphinite's breaches of the Agreement were knowing and willful.

36. As a direct and proximate result of Dolphinite's breaches, West Marine has

suffered and continues to suffer damages.

COUNT II - Breach of Express Warranties
<u>(Plaintiffs v. Dolphinite)</u>

37.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38.    Dolphinite represented and warranted, including but not limited to, that the Products would increase the speed of the boats and inflatables on which the paint was applied, would adhere to boat hulls, would have anti-fouling, and ease of application properties and that the Products would keep a boat reasonably clean of marine growth for a year.  Dolphinite further provided use and application instructions on its labels for the Products, which constituted further representations and warranties to West Marine, and to foreseeable users, including West Marine's customers.

39.    Dolphinite breached its warranties by supplying the Products which, when used and applied in substantial compliance with Dolphinite's use and application instructions, among other things, did not adhere to boat hulls, did not increase the speed of the boats and inflatables on which the paint was applied, did not adhere to boat hulls, did not have anti-fouling, speed or ease of application properties, and did not keep a boat reasonably clean of marine growth for a year.

40.    West Marine has and will continue to suffer harm as a result of Dolphinite's breach of express warranties.

COUNT III - Breach of Implied Warranties of Merchantability
<u>(Plaintiffs v. Dolphinite)</u>

41.    The plaintiffs repeat and incorporate by reference the allegations contained in

paragraphs 1 through 40 as if fully set forth herein.

42.    Dolphinite is a merchant with respect to goods of the kind contracted for through the Agreement between Dolphinite and West Marine.

43.    The Products, as provided to West Marine, could not pass without objection in the marine trade, as they neither functioned as boat paint in that they did not adhere, nor did they have reasonable anti-fouling, speed or ease of application characteristics.

44.    The Products, as provided to West Marine, were not of average quality within the marine industry.

45.    When used in substantial compliance with the use and application instructions provided by Dolphinite, the Products, as provided to West Marine, were not fit for the ordinary purpose for which such goods are used in that they did not adhere, and they did not have reasonable anti-fouling, speed or ease of application characteristics.

46.    The Products, as provided to West Marine, were not of consistent quality.

47.    The Products, as provided to West Marine, when used in substantial compliance with the use and application instructions provided by Dolphinite, did not conform to the promises and affirmations of fact made on the labeling of the Products as provided to West Marine in that the Products did not adhere to boat hulls, and did not have reasonable speed, anti-fouling or ease of application characteristics.

48.    The Products did not conform to the usage of trade in the marine industry.

49.    Each of the actions of Dolphinite as described herein is and was a breach of the implied warranty of merchantability.

50.    West Marine has suffered, and will continue to suffer, harm as a direct and

proximate result of Dolphinite's breach of the implied warranties of merchantability.

COUNT IV - Breach of Implied Warranties
for Fitness for Particular Use
<u>(Plaintiffs v. Dolphinite)</u>

51.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52.     At all times West Marine and Dolphinite entered into the Agreement, Dolphinite knew and had reason to know the particular purpose for which the Products were required, namely to act as marine boat paint with anti-fouling, speed and ease of application characteristics.

53.     At and before the time that West Marine and Dolphinite entered into the Agreement, Dolphinite knew and had reason to know that West Marine was relying on Dolphinite's purported skill and judgment to select, manufacture and otherwise furnish suitable goods.

54.     The Products, as provided to West Marine, when used in substantial compliance with the use and application instructions provided by Dolphinite, were not suitable goods for the particular purposes for which they were required in that they did not adhere to boat hulls and did not have anti-fouling, speed or ease of application characteristics.

55.     Dolphinite's actions are and were a breach of the implied warranty of fitness for a particular purpose which directly and proximately caused, and continues to cause, injury to West Marine.

COUNT V - Breach of Covenant of Good Faith and Fair Dealing
(Plaintiffs v. Dolphinite)

56.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 55 as if fully set forth herein.

57.     As described more fully herein, Dolphinite knowingly manufactured and/or provided West Marine with products that substantially did not conform to the representations, warranties and descriptions of the Products as given to West Marine.

58.     After West Marine received complaints regarding the Products and reported the same to Dolphinite, Dolphinite failed to take any appropriate action, and gave West Marine no accurate information regarding the cause or causes of the failures of the Products, nor did Dolphinite give West Marine any financial assurances, nor did it provide West Marine with any information on which West Marine could have acted to mitigate its losses or damages, or the losses and damages being suffered by West Marine's customers.

59.     West Marine is informed and believes that Dolphinite failed to adequately test the Products to ensure that they would adhere to boat hulls and that they had the anti-fouling properties, speed properties and ease of application properties which Dolphinite had represented them to have.  West Marine is further informed and believes that Dolphinite failed to adequately state and/or test the instructions on Dolphinite's product labels, including Dolphinite's use and application instructions, to ensure that the instructions were accurate and that when the Products were used in substantial accordance with said labeling, and use and application instructions, the Products would have the anti-fouling properties, speed properties, and ease of application properties which Dolphinite represented them to have. West Marine is further informed that upon

receiving notice of the failures of the Products from West Marine, Dolphinite further failed to conduct reasonable, necessary and timely tests to identify the cause or causes of the failures of the Products.

60.    As further described herein, Dolphinite willfully and knowingly breached its obligations under the Agreement, including failing to assist West Marine in handling customer complaints, failing to defend and indemnify West Marine with respect to such complaints and claims, failing to accept the defense and settlement of such customer complaints and claims, and failing to accept West Marine's tender of West Marine's unsold and returned inventory of the Products and West Marine's demand for reimbursement of its expenses related to such unsold and returned inventory of the Products.

61.    West Marine has suffered, and continues to suffer, harm as a direct and proximate result of Dolphinite's breach of covenant of good faith and fair dealing.

## COUNT VI - Negligent Misrepresentation
### (Plaintiffs v. Dolphinite)

62.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 61 as if fully set forth herein.

63.    As further described herein, Dolphinite negligently misrepresented that they could manufacture or supply the Products as contemplated and advertised and in accordance with the representations and warranties made by Dolphinite.

64.    Dolphinite further negligently misrepresented that the Products would adhere to boat hulls, and had speed properties, anti-fouling properties and ease of application properties, and that the Products would perform as intended when used and applied in substantial

accordance with the use and application instructions provided by Dolphinite.

65.    As further described herein, West Marine relied, to its detriment, on the negligent misrepresentations of Dolphinite, and continued to sell the Products.

66.    West Marine has suffered, and continues to suffer, harm and damages as a direct and proximate result of Dolphinite's negligent misrepresentation and West Marine's reliance thereupon.

COUNT VII - Intentional Misrepresentation
(Plaintiffs v. Dolphinite)

67.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 66 as if fully set forth herein.

68.    As further described herein, Dolphinite intentionally misrepresented that it manufactured and/or supplied the Products as contemplated and advertised and in accordance with the representations and warranties made by Dolphinite.

69.    As further described herein, Dolphinite intentionally misrepresented that the Products it supplied to West Marine were in accordance with the products as contemplated and advertised and in accordance with the representations and warranties made by Dolphinite.

70.    Dolphinite further intentionally misrepresented that the Products would adhere to boat hulls, and had speed properties, anti-fouling properties, ease of application properties, and that the Products would perform as intended when used in substantial accordance with the use and application instructions provided by Dolphinite.

71.    As further described herein, West Marine relied, to its detriment, on the intentional misrepresentations of Dolphinite, and continued to sell the Products.

72.     West Marine has suffered, and continues to suffer, harm and damages as a direct and proximate result of Dolphinite's intentional misrepresentations and West Marine's detrimental reliance thereupon.

COUNT VIII - Violation of the Massachusetts Consumer
Protection Act, M.G.L. c. 93A
(Plaintiffs v. Dolphinite)

73.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 72 as if fully set forth herein.

74.     Dolphinite is a "person" engaged in "trade or commerce" as defined by M.G.L. c. 93A, § 1.

75.     As more fully described herein, Dolphinite engaged in unfair and deceptive trade practices in violation of M.G.L. c. 93A including, but not limited to, the knowing sale of products which were of different chemical composition and characteristics than the Products which were represented and warranted, and which did not conform to representations, affirmations, descriptions and warranties regarding the Products, the labeling of the Products or the advertising for the Products; the failure to assist West Marine in the handling of customer claims caused by the actions of Dolphinite; the failure of Dolphinite to defend and indemnify West Marine regarding customer claims or accepting the defense and settlement of customer complaints; the continued failure of Dolphinite to remediate the property damage and loss of West Marine and its customers; and the failure of Dolphinite to accept West Marine's tender of its unsold and returned inventory of the Products, and to accept West Marine's demand for reimbursement of its expenses related thereto, including, without limitation, the cost of the Products and the transportation, storage and disposition of such unsold and returned inventory of

the Products.

76.     Dolphinite committed each of these violations willfully and with knowledge that the activities were wrongful.

77.     As a direct and proximate result of Dolphinite's violations of M.G.L. c. 93A, West Marine was caused, and continues and will suffer substantial financial loss.

COUNT IX - Strict Products Liability
(Plaintiffs v. Dolphinite)

78.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 77 as if fully set forth herein.

79.     As previously alleged herein, the Products, inclusive of the paint, labeling, and use and application instructions, were defective in design, formulation and manufacture at the time of manufacture, distribution and/or sale by Dolphinite.

80.     West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to and intended by Dolphinite, and that when the Products were used by West Marine's customers, the Products were in substantially the same condition as when they were manufactured, sold and/or distributed by Dolphinite.

81.     West Marine is informed and believes that as a result of the defects in the design, formulation and manufacture of the Products, inclusive of their labeling, and use and application instructions, West Marine's customers have suffered, and continue to suffer, injuries and damages as previously alleged herein, and have made, and continue to make, damage claims to West Marine.

82.     West Marine is informed and believes that as a result of the defects in the design,

formulation and manufacture of the Products, inclusive of their labeling, and use and application instructions, West Marine has suffered, and continues to suffer, injuries and damages as previously alleged herein.

COUNT X - Negligence
(Plaintiffs v. Dolphinite)

83.  The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84.    As previously alleged herein, the Products, inclusive of the paint, the labeling, and the use and application instructions, were negligently designed, formulated and manufactured by Dolphinite.

85.    West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to and intended by Dolphinite, and that when the Products were used by West Marine's customers, the Products were in substantially the same condition as when they were manufactured, sold and distributed by Dolphinite.

86.    West Marine is informed and believes that as a result of the negligence of Dolphinite in the design, formulation, manufacture and sale of the Products, inclusive of their labeling, and use and application instructions, West Marine's customers, have suffered, and continue to suffer, injuries and damages as previously alleged herein, and have made, and continue to make, claims to West Marine.

87.    West Marine is informed and believes that as a result of the negligence of Dolphinite, in the design, formulation, manufacture and sale of the Products, inclusive of their labeling, and use and application instructions, West Marine has suffered, and continues

GRIFFIN & GOULKA
(781) 279-9858

S:\Cases\2002-2003\03\203091\PLEADINGS USDIST CT\AmendedComplaint.DOC

to suffer, injuries and damages as previously alleged herein.

COUNT XI - Common Law Indemnity
(Plaintiffs v. Dolphinite)

88.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 87 as if fully set forth herein.

89.     West Marine's customers have filed claims against West Marine for damages. Such damages were caused in full or in overwhelming part by the breaches of warranty, strict products liability, negligence and/or willful conduct of Dolphinite.

90.     No actions or inaction of West Marine caused any damage to the customers who have brought claims, and any liability of West Marine to the proponents of the customer claims is purely based upon the wrongful acts of Dolphinite.

91.     Dolphinite has, to date, refused to provide indemnity for claims or defense costs, and it has refused to provide a defense to West Marine regarding customer claims.

92.     Plaintiffs have incurred, and continue to incur, substantial costs, losses, liabilities, expenses and attorneys' fees in connection with the defense and administration of the customers' claims.

93.     Plaintiffs have incurred damages from customers' claims and plaintiffs may become subject to further liabilities, costs, losses, expenses and attorneys' fees.

94.     Plaintiffs are entitled to common law indemnity from Dolphinite for all costs, losses, liabilities, expenses and attorneys' fees in connection with the defense and administration of the customers' claims.

COUNT XII - Declaratory Judgment Pursuant
to 28 U.S.C., § 2201 and Fed.R.Civ.P. 57
(Plaintiffs v. Dolphinite)

95.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 94 as if fully set forth herein.

96.     As set forth herein, an actual controversy as defined by 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 exists as to the following issues:

    a)     whether pursuant to the Agreement Dolphinite owes plaintiffs indemnity for West Marine's costs, losses, liabilities, expenses and attorneys' fees in connection with the defense and administration of the customers' claims and/or a defense of the customers' claims;

    b)     whether Dolphinite owes plaintiffs common law indemnity for West Marine's costs, losses, liabilities, expenses and attorneys' fees in connection with the defense and administration of the customers' claims;

    c)     whether Dolphinite owes West Marine for all costs incurred by West Marine relating to the Products including, without limitation, costs related to the Products' purchased, transportation, marketing, selling , and storage and disposition of its unsold and returned inventory of the Products.

97.     A declaratory judgment as to the damage claims, recession rights and the indemnity obligations of the parties would free the parties from the uncertainty and insecurity with respect to their respective rights, duties, status and other legal relations.

98.     As further explained herein, plaintiffs are entitled to contractual and common law indemnity from Dolphinite with respect to West Marine's costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of all current and any

future customers' claims related to the failure of the Products, as well as a right of recession with respect to its unsold and returned inventory of the Products purchased from Dolphinite, and related costs and expenses.

## COUNT XIII - Breach of Express Warranties
## (Plaintiffs v. Clean Seas)

99.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

100.     As more fully explained herein, upon information and belief, Dolphinite entered into a contract with Clean Seas for the manufacture of the Products.  Upon information and belief, Clean Seas represented that the Products would adhere to boat hulls and would have anti-fouling, speed and ease of application properties, and that the Products would keep a boat reasonably clean of marine growth for a year.

101.     Clean Seas breached its warranties by manufacturing Products which did not adhere to boat hulls, did not have anti-fouling, speed or ease of application properties, and did not keep a boat reasonably clean of marine growth for a year.

102.     Plaintiffs have suffered, and will continue to suffer, harm as a result of Clean Sea's breach of express warranties.

## COUNT XIV - Breach of Implied Warranties of Merchantability
## (Plaintiffs v. Clean Seas)

103.     The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104.     Clean Seas is a merchant with respect to goods of the kind such as the Products.

105.     Upon information and belief, Clean Seas manufactured and sold the Products.

106.    The Products, as provided to West Marine, could not pass without objection in the marine trade as they neither functioned as a boat paint in that they did not adhere, nor did they have reasonable anti-fouling, speed or ease of application characteristics.

107.    The Products as provided to West Marine were not of average quality within the marine industry.

108.    The Products as provided to West Marine were not fit for the ordinary purpose for which such goods are used in that they did not adhere nor did they have reasonable anti-fouling, speed or ease of application characteristics.

109.    The Products as provided to West Marine were not of consistent quality.

110.    The Products as provided to West Marine did not conform to the promises and affirmations of fact made on the labeling of the Products as provided to West Marine in that the Products did not adhere to boat hulls nor did they have reasonable speed, anti-fouling or ease of application properties.

111.    The Products did not conform to the usage of trade in the marine industry.

112.    Each of the actions of Clean Seas as described herein is and was a breach of the implied warranties of merchantability.

113.    Plaintiffs have suffered, and will continue to suffer, harm as a direct and proximate result of Clean Seas' breach of implied warranty of merchantability.

COUNT XV - Breach of Implied Warranties
of Fitness for a Particular Purpose
(Plaintiffs v. Clean Seas)

114.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 113 as if fully set forth herein.

115.    At and before the time that Clean Seas manufactured and sold the Products, Clean Seas knew and had reason to know the particular purpose for which the Products were required, namely, to act as marine boat paints with anti-fouling, speed and ease of application characteristics.

116.    At and before the time that Clean Seas manufactured and sold the Products, Clean Seas knew and had reason to know that West Marine and others were relying on the manufacturer's purported skill and judgment to select, manufacture and otherwise furnish suitable goods.

117.    The Products as provided to West Marine were not suitable goods for the particular purpose for which they were required in that they did not adhere to boat hulls and did not have anti-fouling, speed or ease of application characteristics.

118.    Clean Seas actions are and were a breach of implied warranty of fitness for a particular purpose, which directly and proximately caused, and continues to cause, injury to plaintiffs.

COUNT XVI - Strict Products Liability
(Plaintiffs v. Clean Seas)

119. The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 118 as if fully set forth herein.

120.    As previously alleged herein, the Products were defective in design, formulation and manufacture at the time of manufacture, distribution and sale by Clean Seas.

121.    West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to and intended by Clean Seas, and that the Products were used by West Marine's customers in substantially the same condition as when the Products were manufactured, sold and distributed by Clean Seas.

122.    West Marine is informed and believes that as a result of the defects in the design, formulation and manufacture of the Products, West Marine's customers have suffered, and continue to suffer, injuries and damages as previously alleged herein, and have made and continue to make, damage claims to West Marine.

123.    West Marine is informed and believes that as a result of the defects in the design, formulation, and manufacture of the Products, West Marine has suffered, and continues to suffer, injuries and damages as previously alleged herein.

COUNT XVII - Negligence
(Plaintiffs v. Clean Seas)

124.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 123 as if fully set forth herein.

125.    As previously alleged herein, the Products were negligently designed, formulated, manufactured and sold by Clean Seas.

126.    West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to, and intended by Clean Seas, and that when the Products were used by West Marine's customers, such Products were in substantially the same condition as

when manufactured, sold and distributed by Clean Seas.

127.    West Marine is informed and believes that as a result of the negligence of Clean Seas in the design, formulation, manufacture and sale of the Products, West Marine's customers have suffered, and continue to suffer, injuries and damages as previously alleged herein, and have made, and continue to make, claims to West Marine.

128.    West Marine is informed and believes that as a result of the negligence of Clean Seas in the design, formulation, manufacture and sale of the Products, West Marine has suffered, and continues to suffer, injuries and damages as previously alleged herein.

COUNT XVIII - Common Law Indemnity
( Plaintiffs v. Clean Seas)

129.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 128 as if fully set forth herein.

130.    West Marine's customers have filed claims against West Marine for damages. Such damages were caused in full or in overwhelming part by the breaches of warranty, strict products liability, negligence and/or willful conduct of Clean Seas.

131.    No action or inaction of West Marine caused any damage to the claimants who have brought claims, and any liability of West Marine to the proponents of the customers' claims is purely constructive based upon the wrongful acts of Clean Seas.

132.    Upon information and belief, Clean Seas has to date refused to provide indemnity for claims or defense costs, and it has refused to provide a defense to West Marine regarding customers' claims.

133.    Plaintiffs have incurred, and continue to incur, substantial costs, losses, liabilities,

expenses and attorneys' fees in connection with the defense and administration of the customers' claims.

134.    Plaintiffs have incurred damages from customers' claims, and plaintiffs may become subject to further liabilities, costs, losses, expenses and attorneys' fees.

135.    Plaintiffs are entitled to common law indemnity from Clean Seas for all costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of the customers' claims.

COUNT XIX - Declaratory Judgment Pursuant
to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57
(Plaintiffs v. Clean Seas)

136.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 135 as if fully set forth herein.

137.    As set forth herein, an actual controversy as defined by 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 exists as to whether Clean Seas owes plaintiffs common law indemnity for West Marine's costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of the customers' claims and/or for all costs incurred by West Marine relating to the Products including, without limitation, costs related to the Products' purchase, transportation, marketing, selling, and storage and disposition of its unsold and returned inventory of the Products.

138.    A declaratory judgment as to the indemnity obligations of the parties would free the parties from the uncertainty and insecurity with respect to their respective rights, duties, status and other legal relations.

139.    As further explained herein, plaintiffs are entitled to common law indemnity from

GRIFFIN & GOULKA
(781) 279-9858

– 27 –

Clean Seas with respect to West Marine's costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of all current and any future customers' claims related to the failure of the Products.

COUNT XX - Breach of Express Warranties
<u>(Plaintiffs v. Suntec)</u>

140.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 139 as if fully set forth herein.

141.    As more fully explained herein, upon information and belief, Clean Seas entered into a contract with Suntec for the manufacture of the Products.  Upon information and belief, Suntec represented that the Products as paints would function as normal boat paints and therefore would adhere to boat hulls and would have anti-fouling, speed and ease of application properties, and that the Products would keep a boat hull reasonably clean of marine growth for a year.

142.    Suntec breached its warranties by manufacturing products which did not adhere to boat hulls, did not have anti-fouling, speed or ease of application properties, and did not keep a boat reasonably clean of marine growth for a year.

143.    Plaintiffs have suffered, and will continue to suffer, harm as a result of Suntec's breach of express warranties.

COUNT XXI - Breach of Implied Warranties of Merchantability
<u>(Plaintiffs v. Suntec)</u>

144.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 143 as if fully set forth herein.

145.    Suntec is a merchant with respect to goods of the kind such as the Products.

146.    Upon information and belief, Suntec manufactured the Products.

GRIFFIN & GOULKA
(781) 279-9858

- 28 -

147.    The Products, as provided to West Marine, could not pass without objection in the marine trade as they neither functioned as a boat paint in that they did not adhere, and they did not have reasonable anti-fouling, speed or ease of application characteristics.

148.    The Products as provided to West Marine were not of average quality within the marine industry.

149.    The Products as provided to West Marine were not fit for the ordinary purpose for which such goods are used in that they did not adhere and they did not have reasonable anti-fouling, speed or ease of application characteristics.

150.    The Products as provided to West Marine were not of consistent quality.

151.    The Products as provided to West Marine did not conform to the promises and affirmations of fact made on the labeling of the Products as provided to West Marine in that the Products did not adhere to boat hulls nor did they have reasonable speed, anti-fouling or ease of application properties.

152.    The Products did not conform to the usage of trade in the marine industry.

153.    Each of the actions of Suntec as described herein is and was a breach of the implied warranties of merchantability.

154.    Plaintiffs have suffered, and will continue to suffer, harm as a direct and proximate result of Suntec's breach of implied warranty of merchantability.

COUNT XXII - Breach of Implied Warranties
of Fitness for a Particular Purpose
(Plaintiffs v. Suntec)

155.   The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 154 as if fully set forth herein.

156.   At and before the time that Suntec manufactured the Products, Suntec knew and had reason to know the particular purpose for which the Products were required, namely, to act as marine boat paints with anti-fouling, speed and ease of application characteristics.

157.   At and before the time that Suntec manufactured the Products, Suntec knew and had reason to know that West Marine and others were relying on the manufacturer's purported skill and judgment to select, manufacture and otherwise furnish suitable goods.

158.   The Products as provided to West Marine were not suitable goods for the particular purpose for which they were required in that they did not adhere to boat hulls and did not have anti-fouling, speed or ease of application characteristics.

159.   Those actions of Suntec are and were a breach of implied warranty of fitness for a particular purpose, which directly and proximately caused, and continues to cause, injury to plaintiffs.

COUNT XXIII - Strict Products Liability
(Plaintiffs v. Suntec)

160.   The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 159 as if fully set forth herein.

161.   As previously alleged herein, the Products, were defective in design, formulation and manufacture at the time of manufacture and distribution by Suntec.

162.     West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to and intended by Suntec, and that when the Products were used by West Marine's customers, such Products were in substantially the same condition as when manufactured, sold and distributed by Suntec.

163.     West Marine is informed and believes that as a result of the defects in the design, formulation, manufacture and sale of the Products, West Marine's customers have suffered, and continue to suffer, damages as previously alleged herein, and have made, and continue to make, damage claims to West Marine.

164.     West Marine is informed and believes that as a result of the defects in the design, formulation, manufacture and sale of the Products, West Marine has suffered, and continues to suffer, injuries and damages as previously alleged herein.

COUNT XXIV - Negligence
<u>(Plaintiffs v. Suntec)</u>

165. The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 164 as if fully set forth herein.

166.     As previously alleged herein, the Products were negligently designed, formulated, manufactured and sold.

167.     West Marine is informed and believes that its customers used the Products in a manner reasonably foreseeable to and intended by Suntec, and that when the Products were used by West Marine's customers, the Products were in substantially the same condition as when manufactured, sold and distributed by Suntec.

168.     West Marine is informed and believes that as a result of the negligence of Suntec

in the design, formulation, and manufacture of the Products, West Marine's customers have suffered, and continue to suffer, injuries and damages as previously alleged herein, and have made, and continue to make, claims to West Marine.

169.    West Marine is informed and believes that as a result of the negligence of Suntec in the design, formulation and manufacture of the Products, West Marine has suffered, and continues to suffer, injuries and damages as previously alleged herein.

COUNT XXV - Common Law Indemnity
(Plaintiffs v. Suntec)

170.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 169 as if fully set forth herein.

171.    West Marine's customers have filed claims against West Marine for damages. Such damages were caused in full or in overwhelming part by the breaches of warranty, strict products liability, negligence and/or willful conduct of Suntec.

172.    No action or inaction of West Marine caused any damage to the customers who have brought claims, and any liability of West Marine to the proponents of the customers' claims is purely based upon the wrongful acts of Suntec.

173.    Upon information and belief, Suntec has to date refused to provide indemnity for claims or defense costs, and it has refused to provide a defense to West Marine regarding customers' claims.

174.    Plaintiffs have incurred, and continue to incur, substantial costs, losses, liabilities, expenses and attorneys' fees in connection with the defense and administration of the customers' claims.

GRIFFIN & GOULKA
(781) 279-9858

175.    Plaintiffs have incurred damages from customers' claims, and plaintiffs may become subject to further liabilities, costs, losses, expenses and attorneys' fees.

176.    Plaintiffs are entitled to common law indemnity from Suntec for all costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of the customers' claims.

COUNT XXVI - Declaratory Judgment Pursuant
to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57
(Plaintiffs v. Suntec)

177.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 176 as if fully set forth herein.

178.    As set forth herein, an actual controversy as defined by 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 exists as to whether Suntec owes West Marine common law indemnity for West Marine's costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of the customers' claims and/or for all costs incurred by West Marine relating to the Products including, without limitation, costs related to the Products' purchase, transportation, marketing, selling, and storage and disposition of its unsold and returned inventory of the Products.

179.    A declaratory judgment as to the indemnity obligations of the parties would free the parties from the uncertainty and insecurity with respect to their respective rights, duties, status and other legal relations.

180.    As further explained herein, plaintiffs are entitled to common law indemnity from Suntec with respect to West Marine's costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of all current and any future

S:\Cases\2002-2003\03\203091\PLEADINGS USDIST CT\AmendedComplaint.DOC

customers' claims related to the failure of the Products.

COUNT XXVII - Contribution
(Plaintiffs v. Suntec)

181.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 180 as if fully set forth herein.

182.    West Marine's customers have filed claims against West Marine for damages. Such damages were caused in full or in part by the breaches of warranty, strict products liability, negligence and/or willful conduct of Suntec.

183.    Plaintiffs have settled the claims of said customers and will continue to settle such claims.

184.    Plaintiffs have paid in excess of their pro rata share of the joint liability of the parties.

185.    Plaintiffs are entitled to contribution for all sums which they have paid and will pay in excess of their pro rata share of the common liability of the parties.

COUNT XXVIII - Contribution
(Plaintiffs v. Clean Seas)

186.    The plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 185 as if fully set forth herein.

187.    West Marine's customers have filed claims against West Marine for damages. Such damages were caused in full or in part by the breaches of warranty, strict products liability, negligence and/or willful conduct of Clean Seas.

188.    Plaintiffs have settled the claims of said customers and will continue to settle such claims.

189.    Plaintiffs have paid in excess of their pro rata share of the joint liability of the parties.

190.    Plaintiffs are entitled to contribution for all sums which they have paid and will pay in excess of their pro rata share of the common liability of the parties.

WHEREFORE, plaintiffs demand judgment against the defendants as provided by law.

THE PLAINTIFFS DEMAND A TRIAL BY JURY.

> Plaintiffs,
> By their attorneys,
> GRIFFIN & GOULKA
>
> Joanne L. Goulka
> 477 Main Street
> Stoneham, Massachusetts 02180-2602
> (781) 279-9858
> B.B.O. #205500

## CERTIFICATE OF SERVICE

Joanne L. Goulka, attorney for the plaintiffs in the above-entitled action, hereby certifies that a courtesy copy of this document was served upon the attorney of record for each party by regular mail, postage prepaid, on December 16, 2004.

> Joanne L. Goulka

S:\Cases\2002-2003\03\203091\PLEADINGS USDIST CT\AmendedComplaint.DOC