UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WEST MARINE PRODUCTS, INC., et al., | ) ) ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 04-10251-PBS |
| DOLPHINITE, INC., | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS AND TO TRANSFER VENUE AND ORDER ON MOTION TO STRIKE

March 23, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of defective boat hull paints sold by the plaintiff West Marine Products, Inc. ("West Marine").  West Marine and its insurer, United States Fire Insurance Co., are seeking to recover amounts they have incurred and will incur as a result of the allegedly defective boat hull paints, including but not limited to costs required to settle the warranty claims of West Marine's customers and costs incurred in connection with the storage, handling and disposal of the unsold and returned paints.

The paint was originally formulated and patented by the defendant Clean Seas Co. ("Clean Seas"), which contracted with the defendant Suntec Paint, Inc. ("Suntec") to mix the paint.  Clean Seas and Suntec are based in Florida.  Clean Seas, in turn, sold the paint to the defendant Dolphinite, Inc. ("Dolphinite"), a Massachusetts company which is

presently in bankruptcy.  Dolphinite resold the paint under its brand name to numerous

retailers, including the plaintiff West Marine, a California corporation with businesses

and customers throughout the United States.

This matter is presently before the court on Suntec's motion to dismiss for lack of

personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) (Docket No. 4), a related motion

to strike portions of the affidavit of Joseph A. Anderson, Suntec's president (Docket

No. 20), and the motion of Clean Seas to dismiss or transfer venue to the United States

District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404 (Docket

No. 9).  The parties have agreed that the other pending motions addressed to the merits of

the claims asserted should be deferred pending resolution of the jurisdictional issues

raised by Suntec and Clean Seas.[1]

For the reasons detailed herein, this court recommends to the District Judge to

whom this case is assigned that Suntec's motion to dismiss for lack of personal

jurisdiction (Docket No. 4) be ALLOWED.  This court further recommends that Clean

Seas' motion to dismiss or transfer (Docket No. 9) be ALLOWED IN PART and

DENIED IN PART, and that this matter be transferred to the Middle District of Florida.

---

[1] In its motion, Suntec is alternatively seeking summary judgment on plaintiff's claims
against it for breach of express and implied warranties, and strict liability.  (Docket No. 4).  Clean
Seas also has moved to dismiss for failure to state a claim or for summary judgment on these same
and other claims asserted against it.  (Docket Nos. 12 & 13).  The plaintiffs have moved to amend
their complaint.  (Docket No. 38).  If this case is transferred to Florida, as this court recommends,
these motions should be denied without prejudice so that they can be renewed in the appropriate
forum.

Finally, as detailed herein, this court DENIES the plaintiff's motion to strike portions of

Joseph H. Anderson's affidavit (Docket No. 20).

## II.  STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P.

12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction

exists." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.

1998), and cases cited.  Where, as here, the court elects to dispose of a motion to dismiss

for lack of personal jurisdiction without holding an evidentiary hearing, the court applies

a "prima facie" standard of review pursuant to which the plaintiff must "demonstrate the

existence of every fact required to satisfy both the forum's long-arm statute and the Due

Process Clause of the Constitution." United Elec. Radio & Mach. Workers of Am. v. 163

Pleasant St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993) (quotations and citation omitted).

Under this standard, the court will look to the facts alleged in the pleadings and the

parties' supplemental filings, including affidavits.  Sawtelle v. Farrell, 70 F.3d 1381,

1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.

1994).  The court will "take specific facts affirmatively alleged by the plaintiff as true

(whether or not disputed) and construe them in the light most congenial to the plaintiff's

jurisdictional claim." Mass. Sch. of Law, 142 F.3d at 34.  It will then "add to the mix

facts put forward by the defendants, to the extent that they are uncontradicted." Id.

Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences."  Ticketmaster-New York, 26 F.3d at 203.

### The Anderson Affidavit

Because Suntec relies on facts presented in the affidavit of its president, Joseph H. Anderson ("Anderson Aff."),[2] in support of its motion to dismiss for lack of personal jurisdiction, this court will briefly address the plaintiffs' motion to strike portions of that affidavit before reciting the relevant facts.  Specifically, the plaintiffs have moved to strike paragraphs 6, 7 and 8 of Mr. Anderson's affidavit, pursuant to Fed. R. Civ. P. 56(e),[3] on the grounds that his use of the words "us" and "we" in those paragraphs imply that he lacks personal knowledge of negotiations between Suntec and Clean Seas regarding Suntec's agreement to mix the boat hull paint at issue in the case or of Suntec's performance pursuant to that agreement.  The plaintiffs further contend that Mr. Anderson's statements regarding Suntec's contractual obligations are too conclusory.

"[T]his Court may consider affidavits submitted in support of the instant motion to dismiss if they are based on the personal knowledge of a competent affiant."  Milford

---

[2]  The Affidavit of Joseph H. Anderson is attached to "Defendant Suntec Paint, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, for Summary Judgment on Counts XX, XXI, XXII, and XXIII" (Docket No. 4).

[3]  Fed. R. Civ. P. 56(e) provides that affidavits submitted in the summary judgment context "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  The same standard applies to affidavits submitted in connection with a motion to dismiss for lack of personal jurisdiction.  See American Express Int'l, Inc. v. Mendez-Capellan, 889 F.2d 1175, 1178 (1st Cir. 1989).

<u>Power Ltd. P'ship v. New England Power Co.</u>, 918 F. Supp. 471, 478 (D. Mass. 1996).

The record demonstrates that notwithstanding Mr. Anderson's use of the words "us" and "we" to describe the circumstances surrounding Suntec's participation in the production of the boat hull paints, his affidavit was, in fact, made on personal knowledge.  Not only did Mr. Anderson state, under pains and penalties of perjury, that he was making the affidavit "based on my personal knowledge" (Anderson Aff. ¶ 1), but he also submitted a second sworn affidavit in which he described his personal involvement in Suntec's negotiations and communications with Clean Seas and his knowledge, as president of Suntec, concerning the substance of Suntec's agreement with Clean Seas to mix the boat hull paints.  <u>See</u> <u>generally</u> Affidavit of Joseph H. Anderson in Opposition to Motion to Strike.[4]  Most significantly, Mr. Anderson states therein that he "was the primary contact at Suntec concerning the paint . . . ."  <u>Id.</u> at ¶ 4.  This court concludes, therefore, that there is no basis for striking portions of Mr. Anderson's affidavit based on a lack of personal knowledge.

Additionally, because Mr. Anderson's statements recount facts concerning Suntec's contacts with Clean Seas and its paint mixing responsibilities, this court finds

---

[4]  The Affidavit of Joseph H. Anderson in Opposition to Motion to Strike is attached to Suntec's opposition to the plaintiffs' motion to strike.  (Docket No. 25).

that there is no support for the plaintiffs' argument that paragraphs 6 through 8 of the affidavit are too conclusory.  Accordingly, the Plaintiffs' Motion to Strike Portions of the Affidavit of Joseph H. Anderson (Docket No. 20) is denied.  See New England Anti-Vivisection Soc'y, Inc. v. United States Surgical Corp., Inc., 889 F.2d 1198, 1204 (1st Cir. 1989) (it is within district court's discretion to deny motion to strike affidavit claiming lack of personal knowledge and that it contained irrelevant, immaterial or conclusory language).

**Background**

The relevant facts, set forth in the light most favorable to the plaintiff's jurisdictional claim, are as follows.  Plaintiff West Marine is a California corporation that has its principal place of business in Watsonville, California.  (Complaint ("Compl.") ¶ 1).  West Marine is one of the country's largest retail sellers of boating supplies and equipment. (Affidavit of Pam Fields ("Fields Aff.") ¶ 2).[5]  It owns retail stores in thirty-eight states, including fifteen in Massachusetts, and also markets its products to customers in every state through catalogs.  (Id.).  Most of West Marine's customers are individuals who own boats for personal or family use.  (Id.).

The plaintiffs allege that on or about September 5, 2002, West Marine entered into a contract with Dolphinite, a Massachusetts corporation with a principal place of business

---

[5]  The Affidavit of Pam Fields, General Counsel for West Marine, can be found at Docket No. 19.

in South Dartmouth, Massachusetts.[6]  (Compl. ¶¶ 3, 13).  Pursuant to the contract, West

Marine purchased 11,150 units of boat hull paints from Dolphinite, at a cost of

$693,069.[7]  (Fields Aff. ¶ 3).  West Marine purchased the paint based on representations

and warranties that the paint would adhere to boat hulls, and had "anti-fouling, speed and

ease of application properties."  (Compl. ¶ 18).  West Marine purchased the paint in

February and March, 2003 in order to resell it to its customers.  (Compl. ¶ 20; see also

Fields Aff. ¶ 5).  The paint came in sealed containers that had been pre-labeled with the

"Dolphinite" brand and marked with instructions for use and application.  (Compl. ¶ 18).

Dolphinite had entered into a contract for the production of the marine paint with

Clean Seas, a Florida corporation with a principal place of business in Jacksonville,

Florida.  (Compl. ¶¶ 4, 100; see Anderson Aff. ¶¶ 6, 8, 10).  Suntec, another Florida

corporation with a principal place of business in Florida, was responsible for mixing the

---

[6]  Plaintiffs have informed the court that Dolphinite filed for bankruptcy protection after suit was filed but before service of process had been made on the company.  The plaintiffs intervened as creditors in the bankruptcy court and sought relief from the automatic stay so that they could proceed against Clean Seas and Suntec.  The bankruptcy court granted the plaintiffs' requested relief on July 12, 2004.  See Plaintiffs' Opposition to Defendant Suntec Paint's Motion to Dismiss or for Summary Judgment (Docket No. 17) ("Pls.' Mem.") at 2.  At oral argument, plaintiffs' counsel confirmed that this case remains stayed against Dolphinite.

[7]  The plaintiffs allege that the contract between West Marine and Dolphinite contains a choice of law provision, which provides that the "Agreement and all rights and duties hereunder shall be governed by, and construed in accordance with, the laws of the State of California ... excluding its conflict of laws principles that would apply the law of another jurisdiction, for the purposes of enforcing any claim arising under this Agreement ...."  (Compl. ¶ 17).

paint.  (See Anderson Aff. ¶¶ 8-11).[8]  Suntec performed its work pursuant to a contract for mixing services that it had entered into with Clean Seas in Florida prior to and independent of Clean Seas' contract with Dolphinite.  (Id. ¶¶ 6, 9).

Generally, Suntec's business consists of making paint, primarily for marking athletic fields, by mixing ingredients purchased from others.  (Id. ¶¶ 2, 3).  Suntec also provides "toll manufacturing services" to other companies, which involves mixing paint products according to formulas that those companies supply to Suntec.  (Id. ¶ 4).  The market for Suntec's products and services is primarily in the southeastern part of the United States.  (Id. ¶¶ 3, 4).  Suntec has no sales offices in Massachusetts and no sales representatives assigned to market the company's products in the Commonwealth.  (Id. ¶ 5).  The company uses telemarketers, but their target markets do not include Massa-chusetts.  (Id. ¶ 11).  In fact, Suntec is not authorized to do business in Massachusetts, has no agents or officers here, and has appointed no agent for receiving service of process in

_____

[8]  Plaintiffs contend generally that they have not yet taken any discovery and, thus, cannot verify Suntec's representations about is contacts, or lack thereof, with Massachusetts.  However, the plaintiffs have not filed any specific discovery requests and have not offered any evidence which would call Suntec's representations into question.  Plaintiff West Marine would obviously know if Suntec's description of its lack of involvement with West Marine was inaccurate, yet it has not challenged Suntec's description of its role.  Assuming it its relevant, West Marine itself knows how much of the paint was sold in Massachusetts, and the path it took to get here.  West Marine would also be able to determine if Suntec openly marketed its business in the Commonwealth or otherwise had an obvious presence here, without discovery.  Finally, Clean Seas also does not dispute Suntec's representations about its business and/or role in the relevant transactions.  Consequently, this court sees no need to further delay this matter and allow West Marine to pursue unspecified discovery.  If the District Judge finds, however, that this record is incomplete, this court recommends that the plaintiffs be required to identify specific discovery they are seeking and the purpose for which it is being sought.

Massachusetts. (<u>Id.</u> ¶ 12). Moreover, Suntec neither leases nor owns property in Massachusetts, has no bank accounts or other assets in the Commonwealth, and is not listed in any Massachusetts telephone book. (<u>Id.</u>). Furthermore, for at least the last three years, the time period at issue in this case, Suntec has not attempted to solicit customers, negotiate contracts or otherwise done business in Massachusetts, and has not been a party to any contract involving a Massachusetts customer.[9] (<u>Id.</u> ¶¶ 5, 11). According to Suntec's president, the circumstances of this case constitute the only time in the past three or four years when, to his knowledge, paints that Suntec mixed were ultimately sold to Massachusetts consumers. (<u>Id.</u> ¶ 5).

Under its agreement with Clean Seas, Suntec was responsible for mixing marine paint using ingredients supplied by Clean Seas and in accordance with formula specifications and instructions from Clean Seas. (<u>Id.</u> ¶¶ 6, 7). Suntec placed the paint in cans and applied labels that were printed and supplied by others. (<u>Id.</u> ¶ 7). With respect to the boat hull paints at issue in this action, Clean Seas paid Suntec in Florida for the mixing services, and either Clean Seas or Dolphinite arranged for a trucking firm to pick up the paint products from Suntec's Florida plant. (<u>Id.</u> ¶ 9). Suntec had no involvement in

---

[9] The plaintiffs stated in their brief that Suntec maintains both a toll free number that is accessible from Massachusetts, and a website listing all of its products. <u>See</u> Pls.' Mem. at 12. Suntec agrees that it does in fact maintain a website. <u>See</u> Suntec's Reply to West Marine's Opposition (Docket No. 24) at 5. However, the plaintiffs have not attempted to present any evidence regarding Suntec's website, or the toll free number, and there is no evidence that Suntec's website or phone number is directed to Massachusetts consumers. <u>See</u>, <u>e.g.</u>, <u>Comer v. Comer</u>, 295 F. Supp. 2d 201, 209-10 (D. Mass. 2003) (existence of passive website accessible by, but not directed to, Massachusetts internet users does not create personal jurisdiction in Massachusetts).

Clean Seas' selection of customers or markets for the paints. (Id. at 8). Additionally, Suntec is not a party to any contract with West Marine or Dolphinite, has received no payments from those parties, and has provided no samples or services to them. (Id. ¶¶ 9, 10). Suntec's first contact with West Marine occurred when it received service of process in this action, and its only contact with Dolphinite consisted of a telephone call from Dolphinite in 2003, in which Dolphinite asked when it could expect shipments of paint that it had ordered from Clean Seas. (Id. ¶ 10).

Notwithstanding Suntec's lack of business dealings in Massachusetts, West Marine ultimately resold approximately 399 units of the boat hull paint that Suntec had mixed to West Marine's Massachusetts customers. (Fields Aff. ¶ 5). The paint not only failed to perform properly, but also caused damage, some of which was irreparable, to boats and inflatables belonging to those customers. (Id. ¶ 6). To date, the plaintiffs have made payments to approximately forty-four of West Marine's Massachusetts customers in order to satisfy their claims arising from the damage to their marine vessels. (Id. ¶¶ 5, 6).

### III.  ANALYSIS

#### A.  Personal Jurisdiction Analysis

The court turns first to Suntec's motion to dismiss for lack of personal jurisdiction. In order to exercise personal jurisdiction over a defendant, the court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. Sawtelle, 70 F.3d at 1387;

Ticketmaster-New York, 26 F.3d at 204.  The Massachusetts' long-arm statute, Mass.

Gen. Laws ch. 223A, § 3 (2000), authorizes jurisdiction over the person to the limits

allowed by the federal Constitution.[10]  See Daynard v. Ness, Motley, Loadholt,

Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) ("the Supreme Judicial Court

of Massachusetts has interpreted the state's long-arm statute 'as an assertion of

jurisdiction over the person to the limits allowed by the Constitution of the United

States.'") (quoting 'Automatic' Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass.

441, 443, 280 N.E.2d 423, 424 (1972)).  "[W]hen a state's long-arm statute is coextensive

with the outer limits of due process, the court's attention properly turns to the issue of

whether the exercise of personal jurisdiction comports with federal constitutional

standards."  Sawtelle, 70 F.3d at 1388.   It is appropriate, therefore, for the court to

"sidestep the statutory inquiry and proceed directly to the constitutional analysis . . . ."

Daynard, 290 F.3d at 52.[11]

    Due process requires the court to determine whether the defendant has maintained

"certain minimum contacts" with the forum state such that "the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co.

v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting

---

[10]  The Massachusetts long-arm statute defines "person" to include corporations.  Mass. Gen. Laws ch. 223A, § 1.

[11]  For this reason, this court will not address the parties' arguments as to whether Suntec meets the state's long-arm statute's requirements, including whether Suntec "derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth" (i.e., from the sale of West Marine paint), a highly contested matter.  Mass. Gen. Laws ch. 223A, § 3(d).

Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).

Accordingly, "[t]he accepted mode of analysis for questions involving personal

jurisdiction concentrates on the quality and quantity of the potential defendant's contacts

with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288

(1st Cir. 1999). "Jurisdiction is proper . . . where the contacts proximately result from

actions by the defendant *himself* that create a substantial connection with the forum

State." Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480

U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (quotations and citation

omitted).

The court may exercise two types of jurisdiction — general or specific. "General

jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-

based contacts, but the defendant has nevertheless engaged in continuous and systematic

activity, unrelated to the suit, in the forum state.'" Mass. Sch. of Law, 142 F.3d at 34

(quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080,

1088 (1st Cir. 1992) ("Pleasant St. I")). "Specific jurisdiction exists when there is a

demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities,

such as when the litigation itself is founded directly on those activities." Id.

### 1.    General Jurisdiction Analysis

The record demonstrates that Suntec's contacts with Massachusetts are far too

attenuated to constitute the type of "continuous and systematic" activity that is necessary

to support this court's general jurisdiction over the defendant, and are even more limited

than in other cases where the contacts between the defendant and the forum were found

inadequate to satisfy the constitutional standard for exercising general jurisdiction.  See,

e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418, 104 S. Ct.

1868, 1874, 80 L. Ed. 2d 404 (1984) (regular purchases of equipment and services within

state insufficient to warrant assertion of general jurisdiction); American Express Int'l,

Inc., 889 F.2d at 1179-81 (maintenance and use of bank accounts in forum, and training

of employees in forum insufficient to confer general jurisdiction); Glater v. Eli Lilly &

Co., 744 F.2d 213, 214-15, 217 (1ˢᵗ Cir. 1984) (no general jurisdiction over defendant that

advertised in journals which circulate in forum and employed eight sales representatives

to solicit orders, including two residents, within the forum).  The uncontrovertable facts

relating to, inter alia, Suntec's lack of advertising in Massachusetts, lack of offices,

agents, employees or salesmen, in fact its total lack of presence in the Commonwealth,

make it clear that Suntec has not "engaged in continuous and systemic activity, unrelated

to the suit, in the forum state."  Mass. Sch. of Law, 142 F.3d at 34 (internal quotation

omitted).

        Contrary to the plaintiffs' contention, there is no need for additional discovery in

the instant case, as a claim of general jurisdiction would be futile.  Thus, as the court held

in LTX Corp. v. Daewoo Corp., 979 F. Supp. 51 (D. Mass. 1997), "[d]iscovery might

have been useful to the plaintiff if a closer assessment of the nature and extent of the

defendant's contacts with Massachusetts were necessary.  But because the factual

predicate for jurisdiction that is proffered by the plaintiff falls so far short of the

minimum contacts necessary under the Due Process Clause to sustain general jurisdiction, the benefit to the plaintiff of an opportunity for discovery is not realistically discernible." Id. at 59, aff'd, 141 F.3d 1149 (1st Cir. 1998).  Consequently, this court now turns to the issue whether it may exercise specific personal jurisdiction over Suntec.

###    2.    Specific Jurisdiction Analysis

The First Circuit employs a three-part analysis to determine whether there are sufficient contacts to exercise specific personal jurisdiction over a defendant.  See Sawtelle, 70 F.3d at 1388-89.  "An affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."  Phillips Exeter Acad., 196 F.3d at 288.  First, the court must decide whether the claim underlying the litigation "relates to or arises out of the defendant's contacts with the forum."  Id.  This "relatedness requirement" "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."  Ticketmaster-New York, 26 F.3d at 206.  It ensures that the defendant will not be subject to specific personal jurisdiction unless the defendant's contacts with the forum state caused the alleged harm.

Second, the court must determine whether the defendant's contacts with the forum "'represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.'"  Sawtelle, 70 F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089).  "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability."  Id. at

1391. Voluntariness is present where a defendant deliberately has engaged in significant activities within the forum, but not where the defendant's contacts with the forum are "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985) (internal quotations and citations omitted). Foreseeability exists where the defendant's conduct and connection with the forum state is such that the defendant "should reasonably anticipate being haled into court there." Id. at 474, 105 S. Ct. at 2183 (internal quotation and citation omitted). See also Sawtelle, 70 F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction have been fulfilled, the court must decide whether the exercise of personal jurisdiction is reasonable in light of the so-called "Gestalt factors." Id. at 1394. This requires the court to consider:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

Asahi, 480 U.S. at 113, 107 S. Ct. at 1033 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980)). See also Sawtelle, 70 F.3d at 1394 (listing Gestalt factors). Even when the lawsuit arises out of the defendant's purposefully generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and funda-

mentally unfair.  <u>See</u> <u>Burger King</u>, 471 U.S. at 476-478, 105 S. Ct. at 2184-85;

<u>Ticketmaster-New York</u>, 26 F.3d at 209-10.  In the instant case, however, Suntec's

contacts with the Commonwealth of Massachusetts are insufficient to satisfy either the

"relatedness" or "purposeful availment" prongs of the jurisdictional test, and therefore, it

is unnecessary for this court to analyze the reasonableness of exercising jurisdiction over

Suntec under the Gestalt factors.

<b>a.    <u>Relatedness</u></b>

In evaluating relatedness, the court is mindful that "[q]uestions of specific juris-

diction are always tied to the particular claims asserted."  <u>Phillips Exeter Acad.</u>, 196 F.3d

at 289.  To determine personal jurisdiction in contract cases, the court must ask "whether

the defendant's contacts with the forum were instrumental either in the formation of the

-16-

contract or in its breach." Id.  In tort cases, the court "must probe the causal nexus

between the defendant's contacts and the plaintiff's cause of action." Id.  Here, the

plaintiffs have alleged claims against Suntec for breach of express warranties, breach of

implied warranties of merchantability, breach of implied warranties of fitness for a

particular purpose, strict products liability, negligence, and common law indemnity.

They also seek a declaratory judgment ruling that Suntec must indemnify the plaintiffs for

all costs and expenses incurred in connection with the defense and handling of West

Marine's customers' claims resulting from the allegedly defective marine paint.  Whether

viewed as contract or tort claims, Suntec's actions do not satisfy the relatedness

requirement.

The plaintiffs' claims against Suntec arise out of Suntec's actions in mixing the

paints.  It is undisputed that all that activity took place in Florida.  Similarly, to the extent

that the plaintiffs are claiming that express and implied warranties were created, they

exist, if at all, as a result of Suntec's activities in mixing the paints in Florida.

The plaintiffs characterize their claims against Suntec as relating to Suntec's

"manufacturing of the paint . . . for the purpose of satisfying its contract requirements

with Clean Seas Company . . . ."  Pls.' Mem. at 9.  The contract between Suntec and

Clean Seas, however, was created and performed in Florida.  Even if that agreement was

breached, it would have been breached in Florida where Suntec mixed the paints.  Thus,

none of the activities at issue are related to any conduct by Suntec in Massachusetts and, therefore, the plaintiffs cannot satisfy the relatedness prong of the specific jurisdiction analysis.

The plaintiffs contend that it is sufficient for specific jurisdiction that the paint was sold (albeit by Clean Seas) to boaters in Massachusetts, and that such Massachusetts boaters were harmed.  See Pls.' Mem. at 9-10.  Case law is clear, however, that the fact that harm was suffered in Massachusetts as a result of actions in Florida is insufficient to create specific personal jurisdiction.  See Mass. Sch. of Law, 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative."), and cases cited. For the relatedness requirements to be satisfied, "the action must directly arise out of the specific contacts between the defendant and the forum state."  Sawtelle, 70 F.3d at 1389. That requirement has not been met in the instant case.

### b.    Purposeful Availment

Although the plaintiffs' failure to demonstrate relatedness warrants dismissal of the claims against Suntec for lack of personal jurisdiction, this court finds that the plaintiffs' inability to establish purposeful availment further buttresses the conclusion that jurisdiction is improper.  The only contact that the plaintiffs have established between Suntec and Massachusetts consists of Suntec's act of mixing paint pursuant to a contract with Clean Seas, Clean Seas' sale of the paint to Dolphinite, Dolphinite's sale of the paint to West Marine, and West Marine's sale of 399 units of the paint to Massachusetts

customers.  However, Suntec's act of placing the paint into the stream of commerce is not

enough to demonstrate that Suntec purposefully established minimum contacts with

Massachusetts such that it should have reasonably anticipated having to defend a lawsuit

there.

      In its plurality opinion in <u>Asahi</u>, the Supreme Court ruled:

> [t]he placement of a product into the stream of commerce, without
> more, is not an act of the defendant purposefully directed toward the
> forum State.  Additional conduct of the defendant may indicate an
> intent or purpose to serve the market in the forum State, for example,
> designing the product for the market in the forum State, advertising
> in the forum State, establishing channels for providing regular advice
> to customers in the forum State, or marketing the product through a
> distributor who has agreed to serve as the sales agent in the forum
> State.  But a defendant's awareness that the stream of commerce
> may or will sweep the product into the forum State does not convert
> the mere act of placing the product into the stream into an act
> purposefully directed toward the forum State.

480 U.S. at 112, 107 S. Ct at 1032.  Thus, even assuming, as the plaintiffs suggest, that

Suntec knew that at least some of the paints were destined for Massachusetts, this

awareness would not be enough to show purposeful availment.  <u>See</u> <u>id.</u> (defendant's

knowledge that some of its product would end up in California does not demonstrate any

action by defendant "to purposely avail itself of the California market"); <u>Rodriguez v.</u>

<u>Fullerton Tires Corp.</u>, 115 F.3d 81, 85 (1st Cir. 1997) (third-party defendant's awareness

that the stream of commerce would move its product into the forum "alone would not be

enough to constitute the purposeful availment which is necessary for a showing of

minimum contacts"); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992)

("'mere awareness' that a product may end up in the forum state does not constitute

'purposeful availment'").

As detailed above, the record shows that Suntec does not do business in

Massachusetts.[12] It has no office, agents, employees or property in Massachusetts. Nor is

there evidence that Suntec intended to serve the Massachusetts market. It does not

advertise or otherwise solicit business in the Commonwealth, and it has no sales

personnel or telemarketing activities that target Massachusetts customers. On the basis of

these facts, the exertion of personal jurisdiction over Suntec by this court would exceed

the limits of due process. See Asahi, 480 U.S. at 112-13, 107 S. Ct. at 1032; Boit, 967

F.2d at 683. Accordingly, this court recommends that Suntec's motion to dismiss for lack

of personal jurisdiction be allowed.[13]

---

[12] The case of Merced v. JLG Indus., Inc., on which the plaintiffs rely in their brief, is
distinguishable. In that case, the court found that the third-party defendant engaged in a
persistent course of business in Massachusetts. 170 F. Supp. 2d 65, 72 (D. Mass. 2001). In
particular, the court determined that the third-party defendant "avails itself of the benefits of doing
business in the forum state by maintaining ongoing direct sales relationships with customers in
Massachusetts," and that it had "without the aid of independent agents or distributors, sold its
products to several Massachusetts companies each year." Merced, 170 F. Supp. 2d at 75. There
are no similar facts supporting the court's exercise of jurisdiction over Suntec in this action.

[13] Suntec also argues that the plaintiffs' claims against it should be dismissed on the
grounds that venue in this court is improper. Having concluded that Suntec's motion to dismiss
should be granted due to this court's lack of personal jurisdiction over Suntec, this court will not
address Suntec's venue arguments at this time.

## B.    Clean Seas' Request to Transfer Venue

Clean Seas has moved, pursuant to 28 U.S.C. § 1404, to dismiss the plaintiffs'

claims against it or, in the alternative, for a transfer of venue to the United States District

Court for the Middle District of Florida.[14]  "Under § 1404(a), a district court may transfer

any civil action to any other district where it may have been brought '[f]or the conve-

nience of parties and witnesses, in the interest of justice.'"  Coady v. Ashcraft & Gerel,

223 F.3d 1, 11 (1st Cir. 2000) (quoting 28 U.S.C. § 1404(a)).  While Clean Seas' request

that the case be dismissed under § 1404 should be denied, this court recommends that the

motion to transfer be allowed.

Clean Seas, relying on Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345 (1st Cir.

1992), cert. denied, 508 U.S. 912, 113 S. Ct. 2346, 124 L. Ed. 2d 255 (1993), contends

that the case should be dismissed.  In Mercier, the court recognized that dismissal of an

action may be appropriate on the grounds of *forum non conveniens*.  Id. at 1349.  That

doctrine, however, is not controlling in the instant case.  As the Supreme Court held in

Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996),

the "transfer of venue function of the *forum non conveniens* doctrine has been superceded

by statute," i.e., 28 U.S.C. § 140(a), "and to the extent we have continued to recognize

---

[14]  Suntec has notified the court that it supports Clean Seas' motion to transfer.  See
Docket No. 47.

that federal courts have the power to dismiss damages actions under the common law *forum non conveniens* doctrine, we have done so only in cases where the alternative forum is abroad." Id. at 722, 116 S. Ct. at 1724 (internal quotation omitted). Accordingly, the doctrine is not applicable to this case,[15] and this court recommends that Clean Seas' motion to dismiss pursuant to 28 U.S.C. § 1404 be denied.

The statute does "place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)). "Factors to be considered by the district court in making its determination include the convenience of the parties and witnesses . . . the availability of documents, and the possibilities of consolidation." Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). Consideration of these factors in this case supports the transfer of venue to Florida.

Clean Seas argues persuasively that because the allegedly defective paints were manufactured in Florida, all documents, witnesses and other physical evidence relating to

---

[15] Because the doctrine of *forum non conveniens* is inapplicable here, Clean Seas' request to transfer venue must be analyzed in accordance with 28 U.S.C. § 1404(a), and not under the *forum non conveniens* standard that Clean Seas discusses in its briefs.

the paint production is located in Florida.  See CS Mem. at 6.[16]  Indeed, both Suntec and

Clean Seas are Florida corporations having their principal places of business in Florida.

Consequently, many if not most of those parties' documents and witnesses are likely to

be found in Florida.[17]  In contrast, the plaintiffs have identified only one likely witness,

the president of Dolphinite, who is located in Massachusetts.  See Pls.' Transfer Mem. at

3.[18]  It appears, therefore, that a substantial portion of the relevant documents are located

in Florida, and that Florida would be a more convenient forum for witnesses.

While recognizing that "there is a strong presumption in favor of the plaintiff's

choice of forum," Coady, 223 F.3d at 11, this court's inability to exercise personal

jurisdiction over one of the two defendants against whom this case is currently

proceeding also favors a transfer of venue.  Florida is both a more convenient forum than

Massachusetts for Clean Seas and Suntec, and a forum in which the federal court is able

to exercise personal jurisdiction over both Florida defendants.  Accordingly, the transfer

of venue to Florida would enable the plaintiffs to pursue both of the solvent defendants in

a single action.  The court concludes, therefore, that Florida is a more convenient forum

in which to litigate this action.

---

[16]  "CS Mem." refers to "Defendant Clean Seas Company's Memorandum in Support of its Motion to Dismiss or Transfer" (Docket No. 10).

[17]  At oral argument, counsel for the plaintiffs agreed that there are likely to be depositions of Florida witnesses.

[18]  "Pls.' Transfer Mem." refers to the "Plaintiffs' Memorandum in Opposition to Defendant Clean Seas Company's Motion to Dismiss or for Transfer" (Docket No. 27).

The plaintiffs argue that it would be most efficient for the court to maintain the action here and try it together with the related case of <u>Dolphinite, Inc. v. Clean Seas Co., et al.</u>, C.A. No. 03-11659-PBS, which was removed to this court in September 2003. Ordinarily, the possibility of consolidation would weigh in favor of keeping the matter in Massachusetts. However, the <u>Dolphinite</u> case has been stayed, and the case administratively closed, in light of Dolphinite's suggestion of bankruptcy. It is therefore uncertain when the case will proceed and whether consolidation would be practical. Consequently, this court cannot conclude that consolidation is likely. Thus, this court recommends that Clean Seas' motion to transfer venue to the United States District Court for the Middle District of Florida be granted.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, this court finds that the exercise of personal jurisdiction over the defendant Suntec in this case would offend due process. This court further concludes that for the convenience of the parties and witnesses, and in the interest of justice, this matter should be transferred to Florida. Accordingly, this court recommends to the District Judge to whom this case is assigned that Suntec's motion to dismiss for lack of personal jurisdiction (Docket No. 4) be ALLOWED and that Clean Seas' motion to dismiss or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404 (Docket No. 9) be ALLOWED IN PART and DENIED IN PART so as to allow

transfer of venue to the United States District Court for the Middle District of Florida.[19]

Plaintiffs' motion to strike portions of the Anderson affidavit (Docket No. 20) is

DENIED.


               / s / Judith Gail Dein
               Judith Gail Dein
               United States Magistrate Judge

---

[19]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).