UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WEST MARINE PRODUCTS, INC. )<br>and UNITED STATES FIRE INSURANCE )<br>COMPANY, )<br>)<br>            **Plaintiffs**, )<br>)<br>v. )<br>)<br>GARY W. CRUICKSHANK, CHAPTER 7 )<br>TRUSTEE OF DOLPHINITE, INC., CLEAN )<br>SEAS COMPANY, and SUNTEC PAINT, INC.,)<br>)<br>            **Defendants.** )<br>) | Civil Action<br>No. CV 04-10251-PBS |

### OPPOSITION OF GARY W. CRUICKSHANK, CHAPTER 7 TRUSTEE OF DOLPHINITE, INC. TO MOTION OF CLEAN SEAS COMPANY TO DISMISS OR TRANSFER

The Defendant, Gary W. Cruickshank, Chapter 7 Trustee of Dolphinite, Inc. ("Dolphinite"), respectfully opposes the motion of defendant Clean Seas Company to dismiss[1] or transfer this litigation to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). As grounds therefor, the Trustee states that the Court should retain jurisdiction of this matter in order to consolidate the case with the pending action entitled, *Gary Cruickshank, Chapter 7 Trustee For The Estate Of Dolphinite, Inc. v. Clean Seas, Inc. and Suntec*, U.S.D.C. District of Mass., Civil Action No. 03-11659-PBS ("the Dolphinite Action"). Transfer of this case to Florida is not compatible with the

---

[1] The Trustee does not object to the Court's previous ruling that §1404(a) does not permit dismissal of an action. Report and Recommendation on Motions to Dismiss and to Transfer Venue and Order on Motion to Strike, p. 22. Clean Seas' request for such relief will therefore not be addressed here.

interests of justice because more witnesses and documents are here and because a Massachusetts court and jury should resolve claims involving substantial harm to the property of Massachusetts residents. Moreover, transfer of this case would compromise the administration of the bankruptcy estate of Dolphinite and impose unnecessary administrative cost on the bankruptcy estate to the prejudice of its creditors. Because Clean Seas has not articulated sufficient reasons to overcome the strong presumption in favor of the plaintiff's choice of forum, its motion should be denied.

## BACKGROUND

Prior to its bankruptcy, Dolphinite was a wholesale distributor of marine products, including boat paints located in Ipswich, Massachusetts. In January 2003, Dolphinite contracted with Clean Seas (a Florida company) for the manufacture of boat paints that Dolphinite was to sell under its own name. Clean Seas engaged Suntec to produce or manufacture the specialized paint. Clean Seas and/or Suntec manufactured the paints, sealed them in cans, placed Dolphinite labels on the cans and then shipped thousands of containers of the paint to Massachusetts.

In Massachusetts, Dolphinite promoted, marketed, sold, and distributed the paints to individual boat owners in Massachusetts and elsewhere, and to retailers, including West Marine Products, Inc. ("West Marine"). West Marine sold many gallons of the specialized paint to Massachusetts residents, who applied the paint to their boats and inflatables in Massachusetts. The paints allegedly failed to perform properly and caused damage, some of it irreparable, to the boats and inflatables of the retailers' customers.

In July 2003, Dolphinite filed the Dolphinite Action as a result of numerous complaints from retailers and individual customers who had purchased the paint. The

liability that Dolphinite sought to impose upon Clean Seas and Suntec also derived from its potential liability to West Marine. The Dolphinite Action was the first litigation filed nationwide pertaining to the defective paint.

Dolphinite filed its bankruptcy petition on April 1, 2004. The Trustee in bankruptcy was appointed on September 22, 2004, and stands in the shoes of Dolphinite in both the Dolphinite and West Marine Actions.[2]

West Marine filed this action in February 2004 to recover funds that it and its insurer had paid or would pay in the future as a result of the defective paint, including at least 44 claims by Massachusetts residents. The claims in the West Marine Action against Dolphinite, Clean Seas, and Suntec are identical to the claims in the Dolphinite Action against Clean Seas and Suntec. Because of the close identity of interests, West Marine's insurer has advanced funds to the Dolphinite Estate for the purposes of paying costs and expenses incurred by the Estate in litigating the products liability claims against Suntec and Clean Seas.

## **PROCEDURAL BACKGROUND**

This case was previously stayed as to Dolphinite due to its bankruptcy filing. During the stay, this Court (Dein, M.J.) recommended that the case against Suntec be dismissed for lack of personal jurisdiction, and that the action be transferred to the Middle District of Florida. See Report and Recommendation of the Magistrate Judge dated March 23, 2005.

---

[2] A motion to substitute the Trustee in the place of Dolphinite in this action is currently pending, and is expected to be allowed in light of statements in open court that the other parties would not object.

On April 6, 2005, the Court (Saris, J.) adopted the Report and Recommendation, but deferred the transfer of the matter for thirty days to await decision of the Bankruptcy court on the Trustee's motion for authority to have U.S. Fire Insurance advance funds for the Trustee's defense of the West Marine action. West Marine had timely objected to the ruling that the Court lacked personal jurisdiction over Suntec, and moved to reconsider the Report and Recommendation, but its request was denied as moot when the District Court judge adopted the Magistrate Judge's recommendations.

## ARGUMENT

### A. Massachusetts is an Appropriate Forum for this Matter Because the Court Has Jurisdiction Over All Parties.

In deciding whether to transfer this action to Florida, the Court's basic task is to analyze whether transfer will promote the interests of justice. As a preliminary matter, the interests of justice in this case cannot be served if the Court's prior ruling on Suntec's motion to dismiss is allowed to stand. See Magistrate Judge's Report and Recommendation. That ruling, which held that the Court did not have jurisdiction over Suntec, serves as a basis for Clean Seas to argue that Florida is a more appropriate forum.

However, neither Dolphinite nor the Trustee were a party to that motion. The action was stayed as to Dolphinite at that time, and Dolphinite did not have an opportunity to respond to the positions asserted by Clean Seas. As set forth in the Trustee's Opposition to the Motion of Suntec to Dismiss for alleged lack of personal jurisdiction filed in the Dolphinite Action on July 8, 2005, there are ample grounds for this Court to exercise jurisdiction over Suntec. For example, Suntec actually shipped more than 2600 containers of paint to Dolphinite in Massachusetts, where it was marketed, sold, and caused damage. Suntec had direct and purposeful contacts with this

forum.  Moreover, Suntec has filed pleadings in New Jersey asserting that Massachusetts is an appropriate forum for resolution of the parties' claims and defenses.

Because jurisdiction, and therefore venue, is proper in Massachusetts as to both Clean Seas and Suntec, this action should not be transferred but consolidated with the Dolphinite Action against Clean Seas pending in this Court.  Therefore, under the circumstances, the Trustee asks this Court to reconsider its Order allowing Suntec's motion to dismiss.

B. **The Court Should Retain Jurisdiction in Order to Consolidate the Case with a Pending Massachusetts Action**.

Another important factor for the Court to consider is the pendency of the related Dolphinite Action, which presents identical factual and legal issues, in this forum. Transfer is disfavored if a related action is pending in the same jurisdiction because of the likelihood of duplication of efforts, waste of resources, and inconsistent results.  *See Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).  Rather than transferring this action out of Massachusetts, the Court should consolidate this action with the Dolphinite Action.  See Dolphinite's Motion to Substitute Trustee and to Consolidate, filed April 27, 2005, Civil Action No. 03-11659-PBS.

The Dolphinite Action was the first-filed litigation in the nation involving the defective paint.  The fundamental issues respecting liability are precisely the same in the two proceedings, including whether the paint was defective, whether problems or mishandling of the paint occurred during shipping that resulted in failure of the paint, whether Dolphinite provided improper instructions to customers about paint application, and whether the paints damaged the purchasers' marine vessels.  The same witnesses will testify in both actions and the testimony and evidence will overlap because the damages

sustained by West Marine will likely be subsumed within the damages sustained by Dolphinite.

Retaining jurisdiction over both actions in Massachusetts and consolidating them will ensure the most efficient and economical resolution of the issues in these cases, and will avoid inconsistent verdicts based on identical evidence. *See Bank of Montreal v. Eagle Associates*, 117 F.R.D. 530 (S.D.N.Y., 1987)(the threat of inconsistent outcomes is a "danger [that] can *only* be avoided by consolidation."), *citing Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir.1975), *cert. denied,* 426 U.S. 936 (1976). Consolidation will conserve the resources of the parties, counsel and the judiciary. *In re Rio Hair Naturalizer Products Liability Litigation*, 904 F. Supp. 1407 (Jud. Pan. Mult. Lit. 1995).

The Court should therefore deny the request to transfer, and should consolidate the West Marine Action with the Dolphinite Action so that the issues respecting liability and damages can be resolved in one forum.

### C. The Court Should Consider the Locus of Dolphinite's Bankruptcy Proceeding When Deciding to Transfer this Case Out of Massachusetts.

The pendency of Dolphinite's bankruptcy proceedings in this forum deserves special attention. The Trustee is located here. The administration of Dolphinite's

bankruptcy estate will occur here.[3] *In re DeMert & Dougherty, Inc.*, 271 B.R. 821, 845 (Bkrtcy.N.D.Ill., 2001)(where a request is made to transfer venue of an adversary proceeding, bankruptcy courts may also consider whether the transfer would promote the economic and efficient administration of the estate); *In re Bruno's, Inc.*, 227 B.R. 311, 324 (1998), *citing Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1391 (2d Cir.1990)(the most important factor to be considered in determining whether to transfer venue of a bankruptcy proceeding under the interest of justice prong is whether transfer would promote the economic and efficient administration of the bankruptcy estate.)

     Massachusetts has a considerable public interest in having a bankrupt resident's estate administered efficiently and economically, which interest will be better served if the case remains here. *Goldberg Holding Corp. v. NEP Productions, Inc.*, 93 B.R. 33 (S.D.N.Y.,1988)(under § 1404, the interest of justice was advanced by transferring action to the district where the title 11 case to which action was related was pending);

---

[3] Although the Trustee prefers to proceed in this Court and to consolidate this case with the Dolphinite Action in order to obtain a full and final adjudication of all claims, the Trustee could dismiss this case and file an adversary proceeding in the United States Bankruptcy Court. In that forum, all questions of jurisdiction and venue would be resolved squarely in favor of the Trustee. *See In re TandyCrafts, Inc.*, 317 B.R. 287, 289 (Bankr. D. Del. 2004)(In a bankruptcy matter, "where service is made under Rule 7004(d), the defendant 'need only have minimum contacts with the United States to satisfy Fifth Amendment due process.'"); *Franklin Ridgewood Associates v. Catwil Corp.,* 1990 WL 153572, *4 (Bankr. E.D. Pa. 1990)("We agree with the conclusion of this legion of cases that Congress has specifically authorized nationwide service of process in bankruptcy matters due to the unique proclivity of bankruptcy cases to involve a large number of parties residing in a wide variety of American jurisdictions. We further recognize that the "purpose of giving bankruptcy courts broad *in personam* jurisdiction in bankruptcy matters is to avoid the fragmentation of litigation that is often a factor in administering a bankruptcy case."), *citing In re GEX Kentucky, Inc.,* 85 B.R. 431, 434 (Bankr. N.D. Ohio 1987) and *In re Bell & Beckwith*, 41 B.R. 697, 699 (Bankr. N.D. Ohio 1984).

*Kalamazoo Realty Venture Ltd. Partnership v. Blockbuster*, 249 B.R. 879, 889 (N.D.Ill.,2000)(the locus of Discovery Zone's past and pending bankruptcy cases gives the Delaware community a strong interest in resolving the instant litigation.)

Moreover, the Trustee's ability to administer the estate will be improved if the Court consolidates the two proceedings, reducing the likelihood of inconsistent results. *See In re Bennett Funding Group, Inc.*, 259 B.R. 243 (N.D.N.Y. 2001)(court declined to transfer case because litigation in proposed forum would impose additional expense on trustee in bankruptcy that would be inconsistent with his obligation to maintain and conserve limited resources of bankruptcy estate).

In its motion, Clean Seas asserted that it was "highly unlikely" that West Marine's claims against Dolphinite could be resolved in this forum because of Dolphinite's bankruptcy. However, circumstances have changed since Clean Seas filed its motion. The West Marine Action is no longer stayed against Dolphinite and the Trustee is committed to litigating the claims and defenses in this forum. Accordingly, Clean Seas' motion should be denied.

### D. The Private and Public Interest Factors Weigh in Favor of Keeping This Action in This Forum.

The convenience of the parties and witnesses, as well as the traditional public and private interest factors often considered by the courts, also favor this forum. *Trans National Travel, Inc. v. Sun Pacific Int'l, Inc.*, 10 F. Supp. 2d 79, 81 (D. Mass. 1988); *see Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 24 (D. Mass. 2000); *F.A.I. Electronics Corp. v. Chambers*, 944 F. Supp. 77, 81 (D. Mass. 1996). The "private interest" factors include: the location of witnesses, availability of compulsory process for the attendance of unwilling witnesses, and cost of obtaining unwilling witnesses; access

to evidence and view of the premises; the plaintiff's ability to litigate in a foreign forum; and the expectations of the parties. The "public interest" factors include: the applicable substantive law; the interest of the forum in the dispute; the interest in having the trial of a diversity case in a forum familiar with the law that governs the case; administrative difficulties flowing from court congestion; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 424 (1st Cir. 1991); 17 *Moore's Federal Practice* § 111.13[1][b] (3d ed.2001); *see Piper Aircraft*, 454 U.S. at 241 n.6; *Gulf Oil*, 330 U.S. at 508.

    **1.**     **The Convenience of the Parties and Witnesses and Ease of Access to Proof All Favor Proceeding with Litigation in Massachusetts.**

In its motion, Clean Seas asserts, erroneously, that "Massachusetts has little interest in resolving a claim filed by California and New Jersey corporations based upon allegations of a defectively designed paint manufactured in Florida by a Florida corporation. The fact that Defendant Dolphinite, a corporation that recently filed for bankruptcy, is headquartered in Massachusetts is a *mere fortuity*." (Emphasis added). To the contrary, there are numerous reasons that this forum's interests are superior to Florida's.

It is not a "mere fortuity" that Clean Seas knowingly entered into a contract with a Massachusetts resident (Dolphinite), and then participated in shipping thousands of containers of paint to that Massachusetts resident, deriving substantial revenues from those sales. In Massachusetts, Dolphinite was not a passive entity—rather, it actively promoted, marketed, and sold the specialized paint to Massachusetts boat owners, unaware that the paint was defective.

The Massachusetts boat owners who purchased and applied the paint discovered, in this Commonwealth, that the paint was defective. At least 44 Massachusetts residents purchased the paint from West Marine and filed claims for damages. These residents will be key non-party witnesses, who could not be compelled to appear in Florida. Because the purchasers of the paint are located in or near this forum, the proof of damages is overwhelmingly in Massachusetts, rather than Florida.

Other key witnesses would include Dolphinite's former president, Adam Boulay, as well as former employees or salespersons for Dolphinite, all of whom would be more accessible and subject to subpoena in Massachusetts. If the trier of fact wishes to view the damaged boats, Massachusetts is unquestionably the appropriate forum. Documents located in Massachusetts can be expected to include purchase orders and documentation about customer complaints.

Thus, the number of witnesses and access to proof in Massachusetts far outweighs the witnesses and documents available in Florida. *See Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) ("[C]onvenience of the expected witnesses is 'probably the most important factor [under § 1404(a)]"), *citing Brant Point v. Doctech*, 671 F. Supp. 2, 5 (D. Mass. 1987). In light of the quantity and quality of contacts with Massachusetts, conducting this litigation in Massachusetts would not be unduly oppressive or vexatious to Clean Seas, out of all proportion to the plaintiff's convenience. *See Piper* Aircraft, 454 U.S. at 241.

Clean Seas is not entitled to a transfer merely because it prefers Florida. It has not articulated sufficient facts to support a basis for transfer. Rather, the proposed transfer would do no more than shift the perceived inconvenience from Clean Seas to the other

parties. Clean Seas has not overcome the strong presumption in favor of the plaintiff's choice of forum, particularly because this case should be consolidated with another case brought by a Massachusetts resident. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Thus, the motion to transfer should be denied.

### 2.   **The Expectations of the Parties Warrants Keeping the Case Here.**

Requiring Clean Seas to litigate in Massachusetts is not beyond its reasonable expectations. Clean Seas entered into the contract with the Massachusetts company, shipped substantial amounts of a defective product here, and derived significant revenues from the transactions. It should have been no surprise for Clean Seas to be named as a defendant in this forum as a result of the use of the paint in Massachusetts.

### 3.   **The Various "Public Factors" Favor Keeping the Case in Massachusetts.**

Arguably, Massachusetts law is to be applied in the Dolphinite Action, while California law would apply to the West Marine Action. Transferring the case to Florida from Massachusetts would not aid in the application of the substantive law, and to the extent that Massachusetts law applies, this is the better forum because it is the "forum familiar with the law that governs the case." *Piper Aircraft Co.*, 454 U.S. at 241, n.6.

Massachusetts has a significant interest in the adjudication of this case, which involves a Massachusetts distributor who unknowingly placed a defective product into the stream of commerce, affecting multiple Massachusetts residents. "When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale, where it may be a matter of local attention, rather than in a remote location where it will be learned of only by report." *In re Eastern Dist.*

*Repetitive Stress Injury Lit.*, 850 F. Supp. 188, 195 (E.D.N.Y. 1994). Under these circumstances, the citizens of this Commonwealth would not be burdened by serving as jurors in order to compensate other residents of this forum for the damages they have suffered.

Clean Seas has not come close to meeting its burden of showing that transfer to Florida is appropriate. See *Buckley v. McGraw-Hill, Inc.*, 762 F. Supp. 430, 439 (D.N.H. 1991)(movant must demonstrate "that [the public and private] factors *predominate* in favor of transfer."). Its motion must be denied.

## CONCLUSION

For the reasons stated above, the Trustee requests that the Court vacate its Order of April 6, 2005, adopting the Report and Recommendation of the Magistrate Judge dated March 22, 2005; reinstate the claims against Suntec; deny the motion of Clean Seas to transfer this action; and consolidate this action with the pending Dolphinite Action, C.A. No. 03-10251-PBS.

        GARY W. CRUICKSHANK

        As Chapter 7 Trustee

        By his counsel,

        /s/ Charles R. Bennett, Jr.
        Charles R. Bennett, Jr. (BBO 037380)
        Karen A. Whitley (BBO 564742)
        HANIFY & KING,
        Professional Corporation
        One Beacon Street
        Boston, MA  02108
        (617) 423-0400
        Fax: (617) 423-0498

Dated: July 8, 2005

## CERTIFICATE OF SERVICE

  I, Charles R. Bennett, Jr., hereby certify that on July 8, 2005, I electronically filed the foregoing Opposition Of Gary W. Cruickshank, Chapter 7 Trustee Of Dolphinite, Inc. To Motion Of Clean Seas Company To Dismiss Or Transfer with the Clerk of the District Court using the CM/ECF system, which is expected to send notification of such filing to the following:

| | | |
|---|---|---|
| Joanne L. Goulka | Kevin P. McCann | Marie Cheung-Truslow |
| Griffin & Goulka | Chance & McCann | Smith & Brink, P.C. |
| Suite 2700 | 201 West Commerce Street | 122 Quincy Shore Drive |
| 92 Montvale Avenue | Bridgeton, NJ 08302-1807 | Quincy, MA 02171 |
| Stoneham, MA 02180 | | |

                /s/ Charles R. Bennett, Jr.
                Charles R. Bennett, Jr.

433625