UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
:
GARY W. CRUICKSHANK,                    :
*As Chapter 7 Trustee of Dolphinite, Inc.,*  :
:
Plaintiff,                :
:
v.                                      :        Civil Action
:        No. 03-11659-PBS
CLEAN SEAS COMPANY                      :
   and                                  :
SUNTEC PAINT, INC.,                     :
:
Defendants.              :
_____:

## SUPPLEMENT TO CLEAN SEAS COMPANY'S OPPOSITION
## TO PLAINTIFF'S MOTION TO CONSOLIDATE

During a June 9, 2005 hearing, Magistrate Judge Dein granted permission for parties to file a brief addressing the impact that United States Fire Insurance Company's (hereinafter "U.S. Fire") agreement to fund Dolphinite, Inc.'s litigation costs should have on the court's consideration of the motion to consolidate. This document is hereby submitted to serve this permitted purpose. In order to prevent the submission of duplicative pleadings to the Court, when appropriate, citations will refer to Exhibits A, B, and C attached to the Supplement to the Plaintiff's Motion to Consolidate filed on June 9, 2005.

## RELEVANT PROCEDURAL HISTORY

The instant matter, originally titled *Dolphinite, Inc. v. Clean Seas Company and Suntec Paint, Inc.*, came to this Court through removal on September 10, 2003. An Amended Complaint was filed on November 17, 2003. Shortly after this filing, both Suntec and Clean Seas filed Motions to Dismiss which are still pending before the Court. After its fourth extension of time to respond to these motions was denied, on April 1, 2004, Dolphinite, Inc. filed an emergency motion to stay the proceedings in light of its suggestion of bankruptcy. The case was administratively closed pending the stay of proceedings on July

14, 2004. Relief from the stay was recently obtained due to a stipulation entered into between U.S. Fire and Dolphinite, whereby U.S. Fire would advance litigation costs and attorney's fees to Dolphinite to pursue its claims against Clean Seas in exchange for a security interest in any awarded damages. After relief from the stay was obtained, Charles R. Bennett, Jr. entered an appearance on behalf of Dolphinite, Inc. and moved to consolidate this matter with *West Marine Products, Inc. and United States Fire Insurance Co v. Dolphinite, Inc., Clean Seas Company and Suntec Paint, Inc.*, Civil Action No. 04-10251, (hereinafter "*West Marine*").

*West Marine* commenced via complaint on February 11, 2004. In response to the complaint, Suntec filed a Motion to Dismiss based upon a lack of personal jurisdiction and Clean Seas filed a Motion to Transfer, Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and a Motion for Summary Judgment. A motion hearing was held before Magistrate Judge Dein on January 4, 2005. In ruling on these motions, Magistrate Judge Dein, in a written report dated March 31, 2005, recommended that Suntec be dismissed from the case for lack of personal jurisdiction and that the litigation be transferred to the Middle District of Florida for the convenience of parties and witnesses. The portion of the recommendation dismissing Suntec for lack of personal jurisdiction was adopted by Judge Saris in an Electronic Order and Suntec was dismissed from *West Marine* on April 20, 2005. In this same Order, Judge Saris deferred ruling on the Motion to Transfer to await the bankruptcy court's ruling on the proceedings briefly referenced above.

## **LEGAL ARGUMENT**

Given the existence of the stipulation agreement whereby one litigant would be funding the costs of its adversary in a consolidated proceeding, consolidation of these two causes of action is not an ethically feasible alternative. In raising this issue before the court, Clean Seas is not insinuating that this agreement was reached in a clandestine manner or that the parties involved have engaged in an insidious

practice. Put simply, the presence of a conflict of interest created by consolidation should prevent the court from granting plaintiff's motion.

I. **THE CONFLICT OF INTEREST CREATED BY PERMITTING ONE PARTY TO FUND THE LITIGATION COSTS OF ITS ADVERSARY IN A CONSOLIDATED PROCEEDING SHOULD PREVENT SUCH CONSOLIDATION FROM OCCURRING.**

If the request to consolidate *West Marine* with the *Dolphinite* case is granted, pursuant to the stipulation entered into between the two parties, U.S. Fire, a named plaintiff in *West Marine*, will funding the litigation costs and attorney's fees of its adversary (Dolphinite) in the consolidated proceeding. *See Exhibit B, Supplement to Pl.'s Motion to Cons.* While this arrangement does not amount to one lawyer representing a client with interests "directly adverse" to another, it does amount to a prohibited transaction creating a conflict of interest that should not be permitted to exist. Mass. R. Prof. C. 1.8(f).

A lawyer owes a duty of undivided loyalty to his or her client. *See Commonwealth v. Patterson*, 432 Mass. 767, 775-776, 739 N.E.2d 682 (2000). In conformity with the spirit of this notion, the Massachusetts Rules of Professional Conduct place restrictions on certain types of transactions relating to the acceptance of compensation for representation of a client from a source other than the party represented. Specifically, Mass. R. Prof. C. 1.8(f) states,

> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client consents after consultation;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> (3) information relating to representation of a client is protected as required by Rule 1.6.

*See* S.J.C. Rule 3:07, Rules of Prof. Conduct and Comments, Rule 1.8(f). This section requires disclosure of the fact that the lawyer's services are being paid for by a third party. *Id.* Additionally, such an arrangement must also conform to the requirements of Rule 1.6 concerning confidentiality and Rule 1.7 concerning conflict of interest. *Id. See also* Mass. R. Prof. C. 5.4(c) (lawyer shall not permit non-client who pays bill to direct or regulate lawyer's exercise of professional judgment on the client's behalf).

> **A. Permitting U.S. Fire to fund the litigation costs of its adversary would compromise the duty of loyalty owed by Mr. Cruickshank's counsel to his client.**

While it is not contested that Gary Cruickshank, in his capacity as the Chapter 7 trustee for Dolphinite, Inc., may have consented to the fee arrangement with U.S. Fire after consultation, it is clear that permitting such an arrangement would compromise the duty of loyalty owed by Mr. Cruickshank's counsel to his client. There is no doubt that a conflict of interest does arise when an adversary pays litigation costs to its opposition in a trial proceeding in exchange for a security interest in any awarded damages. *See Exhibit B, Supplement to Pl.'s Motion to Cons.* In determining whether this arrangement should be permitted, the critical question is whether the fee agreement will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. *See Pub. Note S.Ct. Rule 3:07, Rule 1.7.* In the instant matter, this issue should be resolved in the affirmative and the two cases should remain separate to prevent such a conflict from arising.

In previewing the procedural stance that a consolidated proceeding would take, it becomes clear that it would be almost impossible for counsel for Dolphinite to exercise independent judgment in defending his claim against West Marine/U.S. Fire while pressing his claim against Clean Seas using funds provided by his adversary. In *West Marine,* U.S. Fire has raised direct causes of action against Clean Seas and Dolphinite. While Mr. Bennett has recently entered an appearance on Dolphinite's behalf in *West Marine*, these proceedings remain stayed as to his client. Further, Suntec has already been dismissed from *West Marine* for lack of personal jurisdiction. Hence, the only defendant that is solvent and to which the *West Marine* proceedings are not currently stayed is Clean Seas. In the instant matter, relief has been obtained from the automatic stay imposed on the proceedings as to Dolphinite (with the trustee substituted as plaintiff) based upon the Stipulation whereby U.S. Fire advances litigation costs and attorneys fees for Dolphinite to pursue its claims against Clean Seas and Suntec.

In light of this history, it is clear that the *West Marine* case represents only a minor portion of the instant matter. Assuming that the stay is lifted as to Dolphinite in the *West Marine* case, it is clear that counsel for Dolphinite in that matter will not be able to render independent professional judgment in defending claims raised against his client given the fact that he is being funded by his adversary. Indeed, as insinuated by counsel at the June 8, 2005 hearing held before this Court, it appears as if Dolphinite is willing to concede contractual liability to U.S. Fire and attempt to recover these damages in the instant matter. Further, the stipulation entered into between U.S. Fire and Dolphinite indicates that funds are being advanced by U.S. Fire for the purpose of Dolphinite pursuing its own claims against Clean Seas, and not to defend its claims against U.S. Fire. Under the terms of this agreement, Dolphinite has not been provided any advanced costs to defend itself in *West Marine*, creating a practically infeasible accounting situation. It appears that the bankruptcy court is the correct forum whereby U.S. Fire can pursue its claims against Dolphinite.

If U.S. Fire and Dolphinite wish to settle and enter into a stipulation whereby the *West Marine* matter is dismissed as to Dolphinite, they certainly can choose to do so. If this were the case, U.S. Fire would still be able to litigate its direct claims against Clean Seas, the only solvent defendant over which this Court has jurisdiction, permitting the efficiency promoted by consolidation to be served. Under the current situation, there are ethical and practical obstacles preventing these cases to be tried in a single proceeding. If the parties wish these cases to be consolidated for discovery purposes only, provided that discovery can be conducted with duties of confidentiality of information remaining intact, Clean Seas would not have any objection to this potential solution. However, as previously argued and raised by Clean Seas, and as recommended by Magistrate Judge Dein in *West Marine*, since a majority of the discovery materials and witnesses in these two matters does not exist in this jurisdiction, for the convenience of the parties and witnesses involved in these proceedings, these cases should be transferred to the Middle District of Florida.

## **CONCLUSION**

Based on the foregoing, Clean Seas Company respectfully requests that Plaintiffs' Motion to Consolidate the trial proceedings of *West Marine, et al. v. Dolphinite, et al.* with the instant matter be denied. Further, Clean Seas Company requests that if these two cases are to be consolidated for discovery purposes only, that each case be transferred to the Middle District of Florida for reasons consistent with those previously raised and argued by Clean Seas and recommended by Magistrate Judge Dein.

                Respectfully submitted,

                Defendant, Clean Seas Company
                By its Attorneys,
                CHANCE & McCANN, LLC

By:   *s/ Michael J. Fioretti*_____
       MICHAEL J. FIORETTI (Pro Hac Vice)
       CHANCE & McCANN, LLC
       201 West Commerce Street
       Bridgeton, NJ  08302
       (856) 451-9100
       (856) 455-5227 fax
       { HYPERLINK "mailto:mfiorettiesq@comcast.net" }

Dated:  June 20, 2005