UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GARY W. CRUICKSHANK, Chapter 7 | ) | |
| Trustee for Dolphinite, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 03-11659-PBS |
| | ) | |
| CLEAN SEAS COMPANY and | ) | |
| SUNTEC PAINT, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |
| | ) | |
| WEST MARINE PRODUCTS, INC. | ) | |
| and UNITED STATES FIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 04-10251-PBS |
| | ) | |
| GARY W. CRUICKSHANK, Chapter 7 | ) | |
| Trustee for Dolphinite, Inc., and | ) | |
| CLEAN SEAS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON MOTIONS
TO DISMISS, TO TRANSFER AND TO CONSOLIDATE**

October 19, 2005

DEIN, U.S.M.J.

## I.  INTRODUCTION

The above-captioned actions involve a dispute over liability for defective marine

paint.  Defendant Clean Seas Company ("Clean Seas"), which is based in Florida,

formulated and patented the paint, and contracted with defendant Suntec Paint, Inc.

("Suntec"), another Florida company, to mix the paint. Clean Seas sold the mixed paint

to Dolphinite, Inc. ("Dolphinite"), a Massachusetts company, which in turn resold the

paint under its brand name to numerous wholesale customers, including plaintiff West

Marine Products, Inc. ("West Marine"). West Marine, a California corporation with

businesses and customers located throughout the United States, ultimately sold the paint

to end users. Allegedly, the paint not only failed to perform properly, but also caused

damage, some of which was irreparable, to boats and inflatables to which it was applied.

Dolphinite filed suit against Clean Seas and Suntec in state court, and the matter

was removed to this court in September 2003 and designated Civil Action No. 03-11659-

PBS (the "Dolphinite Action"). In that action, Dolphinite, the originally named plaintiff,

sought recovery of costs, damages and attorneys' fees that it incurred and expected to

incur in the future as a result of the allegedly defective paints. Dolphinite also sought

injunctive relief compelling Clean Seas to accept returned paints and to indemnify and

defend Dolphinite for all pending and future claims relating to the paint. Additionally,

Dolphinite sought declaratory relief establishing that Clean Seas and Suntec must

indemnify Dolphinite for all costs, liabilities, fees and expenses incurred in connection

with the defense and administration of numerous consumer claims against Dolphinite.

Subsequently, in February 2004, West Marine and its insurer, United States Fire

Insurance Co. ("U.S. Fire"), filed Civil Action No. 04-10251-PBS (the "West Marine

Action") against Dolphinite, Clean Seas and Suntec in this court seeking recovery of

amounts that they have incurred and expect to incur as a result of the allegedly defective

paints, including but not limited to costs required to settle the warranty claims of West Marine's customers and costs incurred in connection with the storage, handling and disposal of unsold and returned paints.

In April 2004, Dolphinite filed a Suggestion of Bankruptcy and a motion to stay the Dolphinite Action, which the court granted. While proceedings involving Dolphinite remained subject to the automatic bankruptcy stay, the West Marine Action proceeded against Clean Seas and Suntec. On March 23, 2005, in response to motions pending in the West Marine Action, this court issued a Report and Recommendation recommending to the District Judge to whom the case is assigned that both Suntec's motion to dismiss for lack of personal jurisdiction and Clean Seas' motion to transfer venue to the United States District Court for the Middle District of Florida be allowed. This court's recommendation regarding transfer was based in part on the fact that Dolphinite's bankruptcy and the resulting stay of the Dolphinite Action had made the possibility of consolidation with the Dolphinite Action uncertain. West Marine objected to the Report and Recommendation in so far as it recommended the transfer of venue to Florida, and notified the court of the possibility that the Bankruptcy Court might lift the automatic stay and allow the litigation involving Dolphinite to proceed. Thereafter, the District Judge (Saris, J.) dismissed Suntec from the West Marine Action for lack of personal jurisdiction, but deferred a final ruling on Clean Seas' motion to transfer venue pending a ruling from the Bankruptcy Court. Since then, the Bankruptcy Court has lifted the automatic stay and this court has allowed the motions of Gary W. Cruickshank, the Chapter 7

Trustee for Dolphinite, Inc. ("Trustee"), to be substituted for Dolphinite as the appropriately named party in both cases.

Currently pending before the court in the Dolphinite Action is Suntec's motion to dismiss for lack of personal jurisdiction (Docket No. 19),[1] and the Trustee's motion to consolidate the two related matters (Docket No. 38).  Additionally, when the Bankruptcy Court lifted the automatic stay, Dolphinite opposed Clean Seas' motion to dismiss or transfer venue pursuant to 28 U.S.C. § 1404 in the West Marine Action, which this court had previously addressed without Dolphinite.  (Docket No. 9 in the West Marine Action).  Consequently, this court will reconsider Clean Seas' motion.  For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Suntec's motion to dismiss for lack of personal jurisdiction be ALLOWED, that Clean Seas' motion to dismiss or transfer be DENIED, and that the Trustee's motion to consolidate be ALLOWED.

---

[1] Suntec has moved, in the alternative, for summary judgment on Counts III, V, VII, IX, XI and XIX of the First Amended Complaint.  The parties have agreed that the court will defer ruling on summary judgment pending a final decision on the jurisdictional issues.  Accordingly, this court will not address Suntec's alternative request for relief.

-4-

## II.  STATEMENT OF FACTS

### Standard of Review of Record

"On a motion to dismiss for want of *in personam* jurisdiction, Fed. R. Civ. P.

12(b)(2), the plaintiff ultimately bears the burden of persuading the court that jurisdiction

exists." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.

1998), and cases cited.  Where, as here, the court elects to dispose of a motion to dismiss

for lack of personal jurisdiction without holding an evidentiary hearing, the court applies

a "prima facie" standard of review pursuant to which the plaintiff must "demonstrate the

existence of every fact required to satisfy both the forum's long-arm statute and the Due

Process Clause of the Constitution."  United Elec. Radio & Mach. Workers of Am. v. 163

Pleasant St. Corp., 987 F.2d 39, 43-44 (1st Cir. 1993) (quotations and citation omitted).

Under this standard, the court will look to the facts alleged in the pleadings and the

parties' supplemental filings, including affidavits.  Sawtelle v. Farrell, 70 F.3d 1381,

1385 (1st Cir. 1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.

1994).  The court will "take specific facts affirmatively alleged by the plaintiff as true

(whether or not disputed) and construe them in the light most congenial to the plaintiff's

jurisdictional claim."  Mass Sch. of Law, 142 F.3d at 34.  It will then "add to the mix

facts put forward by the defendants, to the extent that they are uncontradicted."  Id.

Notwithstanding the liberality of this approach, the court will not "credit conclusory

allegations or draw farfetched inferences."  Ticketmaster-New York, 26 F.3d at 203.

**Background**

The relevant facts, set forth in the light most favorable to the plaintiff's claim of jurisdiction in the Dolphinite Action, are as follows. Dolphinite is a Massachusetts corporation that at all relevant times had a principal place of business in Ipswich, Massachusetts. (First Amended Complaint ("AC") in the Dolphinite Action ¶ 2). On about January 10, 2003, Dolphinite entered into a Distribution Agreement with Clean Seas, a Florida corporation having a principal place of business in Jacksonville, Florida. (Id. ¶¶ 3, 11). Pursuant to the Agreement, Clean Seas agreed to manufacture boat paints using its patented process and to sell the paints to Dolphinite. (Id. ¶¶ 9-11). Dolphinite agreed to purchase and distribute the paint products based on Clean Seas' representations and warranties that the products had "anti-fouling, speed and ease of application properties, and properly adhered to boat hulls" and on Clean Seas' agreement that the products would consist of formulations like those contained in samples that Clean Seas had provided to Dolphinite. (Id. ¶¶ 9, 11). Dolphinite received the paints beginning in about January 2003, and it marketed and resold them to third-party customers such as marinas, boatyards, and marine hardware and supplies dealers. (Id. ¶ 13).

Clean Seas, without Dolphinite's knowledge or consent, subcontracted with Suntec, a Florida corporation with a principal place of business in Gainesville, Florida, to manufacture the marine paints. (Id. ¶¶ 4, 12). Suntec agreed to mix the marine paint pursuant to a contract with Clean Seas that was reached in Florida and that preceded and was independent of Clean Seas' contract with Dolphinite. (Affidavit of Joseph H.

Anderson ("Anderson Aff.") ¶¶ 6-9).[2]  Suntec was not a party to any agreement with

Dolphinite, provided no samples to Dolphinite, and directed no sales efforts toward

Dolphinite.  (Id. ¶ 10).

Generally, Suntec is in the business of making paint, primarily for use in marking

athletic fields, by mixing ingredients purchased from other companies.  (Id. ¶¶ 2, 3).

Suntec also provides "toll manufacturing services" to other companies, which consists of

mixing paint products in accordance with formulas provided by the customer.  (Id. ¶ 4).

Suntec's primary market for both its products and its services is in the Southeastern

United States.  (Id. ¶¶ 3, 4).  The company has no sales office in Massachusetts and no

sales representatives assigned to market Suntec's products in Massachusetts.  (Id. ¶ 5).  It

uses telemarketers, but their target markets do not include Massachusetts.  (Id. ¶ 11).

Moreover, Suntec is not authorized to do business in the Commonwealth, has no

employees, agents or officers here, is not listed in any Massachusetts telephone book, and

has not appointed an agent for receiving service of process here.  (Id. ¶ 12).  In addition,

Suntec neither leases nor owns property in Massachusetts and has no bank accounts or

other assets in the Commonwealth.  (Id.).  According to Suntec's president, Joseph H.

Anderson, Suntec has not attempted to negotiate any contracts with Massachusetts

customers or otherwise solicit or conduct business in the Commonwealth for at least the

last three years.  (Id. ¶ 11).  In fact, according to Mr. Anderson, the circumstances of this

---

[2]  The Affidavit of Joseph H. Anderson, Suntec's president, can be found at Docket No. 22 in the Dolphinite Action.

case represent the only time in the past three or four years that one of Suntec's customers sold paint mixed by Suntec to customers in Massachusetts.  (Id. ¶ 5).

Pursuant to its contract with Clean Seas, Suntec mixed marine paint using ingredients and according to formula specifications provided by Clean Seas.  (Id. ¶¶ 6, 7). Suntec placed the mixed paint into cans and affixed labels to the cans that were designed, printed and supplied to Suntec by others.  (Id. ¶ 7).  Suntec then placed the paint on skids or pallets and shrink-wrapped them to prepare the product for shipment.  (Additional Affidavit of Joseph Anderson ("2d Anderson Aff.") ¶ 4).[3]  With respect to the paint at issue in this litigation, either Dolphinite or Clean Seas arranged for a trucking firm to pick up the paint products from Suntec's Florida facility and for the payment of freight charges.  (Anderson Aff. ¶ 9).  All of the payments that Suntec received for its services were made in Florida by Clean Seas.  (Id.).

Once Suntec had prepared an order or part of an order for shipping, it created an "Order Form/Packing List" showing the number, size and paint color of the products contained in the shipment.  (2d Anderson Aff. ¶ 6).  Clean Seas told Suntec where the paint would be shipped, and Suntec entered that information on the form.  (Id. ¶ 7). Order Form/Packing Lists that Suntec prepared for Dolphinite's orders dated January 21, 2003 and February 4, 2003 designate Clean Seas as the customer and indicate that the

---

[3]  The "Additional Affidavit of Joseph Anderson in Support of Motion to Dismiss for Lack of Personal Jurisdiction" is attached to Suntec's Reply Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 51 in the Dolphinite Action).

products were to be shipped to Dolphinite in Ipswich, Massachusetts.  (Affidavit of Karen

A. Whitley ("Whitley Aff."), Ex. 1).[4]  In addition, Suntec prepared bills of lading for the

shipments that reflected the dates, shipping terms and destination information that had

been provided to Suntec.  (2d Anderson Aff. ¶ 12).  Two bills of lading for shipments to

Dolphinite dated February 4, 2003 and February 18, 2003 list Suntec as the shipper,

Dolphinite as the consignee, and Dolphinite's address in Massachusetts as the destination

of the products.  (Whitley Aff., Ex. 1).  After Suntec prepared the necessary paperwork,

at Clean Seas' request, the paint was shipped directly from Suntec's facility in Florida to

Clean Seas' customer.  (2d Anderson Aff. ¶ 9).  Although Suntec was aware that paints

that it had mixed for Clean Seas were destined for Dolphinite in Massachusetts, Suntec's

only contact with Dolphinite occurred in early 2003, when Dolphinite called Suntec to

ask when it could expect shipments of paint that it had ordered from Clean Seas.

(Anderson Aff. ¶ 10).

Beginning in March 2003, Dolphinite began to receive an increasing number of

complaints from end users concerning the failure of the paints to adhere to boat hulls and

that the paint did not have anti-fouling, speed or ease of application properties.  (AC

¶¶ 17, 22, 28, 29).  On July 1, 2003, Dolphinite received a claim notice from its largest

paint customer, West Marine, in which West Marine stated that the products were failing

---

[4] The Affidavit of Karen A. Whitley, counsel for the Trustee, can be found at Docket
No. 50 in the Dolphinite Action.

routinely.  (<u>Id.</u> ¶ 34).  A number of lawsuits have been filed arising out of the failure of

the paints to perform properly.  (<u>See</u>, <u>e.g.</u>, <u>id.</u> ¶ 35).

### III.  ANALYSIS

### A.  Personal Jurisdiction – Generally

The court will first address Suntec's motion to dismiss for lack of personal

jurisdiction in the Dolphinite Action.  In order to exercise personal jurisdiction over a

defendant, the court must find sufficient contacts between the defendant and the forum to

satisfy both the state's long-arm statute and the due process clause of the Fourteenth

Amendment.  <u>Sawtelle</u>, 70 F.3d at 1387; <u>Ticketmaster-New York</u>, 26 F.3d at 204.

Massachusetts' long-arm statute, Mass. Gen. Laws. ch. 223A, § 3 (2000), authorizes

jurisdiction over the person to the limits allowed by the federal Constitution.[5]  <u>See</u>

<u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 52 (1ˢᵗ Cir.

2002) ("the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm

statute 'as an assertion of jurisdiction over the person to the limits allowed by the

Constitution of the United States.'") (quoting <u>'Automatic' Sprinkler Corp. of Am. v.</u>

<u>Seneca Foods Corp.</u>, 361 Mass. 441, 443, 280 N.E.2d 423, 424 (1972)).  "[W]hen a

state's long-arm statute is coextensive with the outer limits of due process, the court's

attention properly turns to the issue of whether the exercise of personal jurisdiction

comports with federal constitutional standards."  <u>Sawtelle</u>, 70 F.3d at 1388.  It is

---

[5]  The Massachusetts long-arm statute defines "person" to include corporations.  Mass.
Gen. Laws ch. 223A, § 1.

appropriate, therefore, for the court to "sidestep the statutory inquiry and proceed directly to the constitutional analysis . . ."  Daynard, 290 F.3d at 52.[6]

Due process requires the court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."  Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (quotations and citation omitted).

The court may exercise two types of personal jurisdiction – general or specific. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and

---

[6]  Because the court proceeds directly to the constitutional analysis, the court will not address the parties' arguments as to whether Suntec's contacts with Massachusetts meet the requirements of the state's long-arm statute.

systematic activity, unrelated to the suit, in the forum state.'" Mass. Sch. of Law, 142

F.3d at 34 (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960

F.2d 1080, 1088 (1st Cir. 1992) ("Pleasant St. I")).  "Specific jurisdiction exists when

there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based

activities, such as when the litigation itself is founded directly on those activities."  Id.

The Trustee does not argue, and the court finds no facts to suggest, that this court may

exercise general jurisdiction over Suntec.  Therefore, the court must determine whether it

may exercise specific jurisdiction over the defendant.

### B.    Specific Jurisdiction Analysis

Under the law of this circuit, the court must employ a three-part analysis to

determine whether there are sufficient contacts to exercise specific personal jurisdiction

over a defendant.  See Sawtelle, 70 F.3d at 1388-89.  "An affirmative finding on each of

the three elements of the test is required to support a finding of specific jurisdiction."

Phillips Exeter Acad., 196 F.3d at 288.  First, the court must decide whether the claim

underlying the litigation directly "relates to or arises out of the defendant's contacts with

the forum."  Id.  This "relatedness requirement" "focuses on the nexus between the

defendant's contacts and the plaintiff's cause of action."  Ticketmaster-New York, 26

F.3d at 206.  It ensures that the defendant will not be subject to personal jurisdiction

unless its contacts with the forum state caused the alleged harm.  See id. at 207.

Second, the court must determine whether the defendant's contacts with the forum

"'represent a purposeful availment of the privilege of conducting activities in the forum

-12-

state, thereby invoking the benefits and protections of that state's laws and making the

defendant's involuntary presence before the state's courts foreseeable.'" Sawtelle, 70

F.3d at 1389 (quoting Pleasant St. I, 960 F.2d at 1089). "[T]he cornerstones upon which

the concept of purposeful availment rest are voluntariness and foreseeability." Id. at

1391. Voluntariness exists when a defendant deliberately has engaged in significant

activities within the forum, but not when the defendant's contacts with the forum are

"random, fortuitous, or attenuated" or result solely from "the unilateral activity of another

party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76, 105 S.

Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985) (internal quotations and citations omitted).

Foreseeability exists when the defendant's conduct and connection with the forum state is

such that the defendant "should reasonably anticipate being haled into court there." Id. at

474, 105 S. Ct. at 2183 (internal quotation and citation omitted). See also Sawtelle, 70

F.3d at 1393.

Finally, if the first two parts of the test for specific jurisdiction are fulfilled, the

court must determine whether the exercise of personal jurisdiction is reasonable in light

of the so-called "Gestalt factors." Sawtelle, 70 F.3d at 1394. This requires the court to

consider "(1) the defendant's burden of appearing; (2) the forum state's interest in

adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective

relief; (4) the judicial system's interest in obtaining the most effective resolution of the

controversy; and (5) the common interests of all sovereigns in promoting substantive

social policies." Id. Even when the lawsuit arises out of the defendant's purposefully

generated contacts with the forum, therefore, the court may decline to exercise personal jurisdiction if doing so would be unreasonable and fundamentally unfair. See Burger King, 471 U.S. at 476-78, 105 S. Ct. at 2184-85; Ticketmaster-New York, 26 F.3d at 209-10. However, where, as here, the defendant's contacts with the forum are insufficient to satisfy either the "relatedness" or "purposeful availment" prongs of the jurisdictional test, it is unnecessary for the court to conduct a jurisdictional analysis using the Gestalt factors.

## 1. **Relatedness**

In evaluating relatedness, the court is mindful that "[q]uestions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Acad., 196 F.3d at 289. Thus, in contract cases, the court must determine "whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Id. In tort cases, the court "must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." Id. The Trustee is asserting a variety of claims against Suntec, including: breach of express warranty, breach of implied warranties of merchantability and fitness for a particular purpose, breach of covenant of good faith and fair dealing, negligent misrepresentation, intentional misrepresentation, business fraud, deceit and fraudulent concealment, negligence, violation of the Massachusetts Consumer Protection Act, and common law indemnity. Additionally, the Trustee is seeking a declaratory judgment ruling that Suntec must indemnify Dolphinite for all of Dolphinite's costs, losses, liabilities, expenses and attorneys' fees incurred in

-14-

connection with the defense and administration of consumer claims against Dolphinite arising as a result of the defective marine paint. Thus, the Trustee's claims must be viewed as both contract and tort claims. Nevertheless, Suntec's actions cannot satisfy the relatedness requirement.

All of the claims against Suntec arise out of Suntec's paint mixing activities, which occurred exclusively in Florida. Moreover, to the extent that Suntec's conduct created any express or implied warranties, those warranties were created as a result of Suntec's paint mixing operations in Florida. Furthermore, the contract between Suntec and Clean Seas was created and performed in Florida. If any of Suntec's actions constituted a breach of that contract, the breach also would have occurred in Florida where Suntec mixed the paints. Because none of the activities giving rise to the Trustee's claims against Suntec were related to any actions by Suntec in Massachusetts, the plaintiff is unable to satisfy the relatedness prong of the jurisdictional analysis in connection with both its contract and tort claims.

The Trustee contends that "[t]he harm to Massachusetts residents and businesses, including Dolphinite, resulted from Suntec's shipments of defective paint and the use or application in this jurisdiction of the paint. Suntec's involvement was integral to the harm suffered by Massachusetts residents." Trustee's Mem. at 8.[7] However, the fact that

---

[7] "Trustee's Mem." refers to the "Opposition of Gary W. Cruickshank, Chapter 7 Trustee for Dolphinite, Inc. to Suntec, Inc.'s Motion to Dismiss" (Docket No. 49 in the Dolphinite Action).

harm was suffered in Massachusetts as a result of the defendant's actions in Florida is insufficient to support specific personal jurisdiction. See Mass Sch. of Law, 142 F.3d at 36 ("We have wrestled before with this issue of whether the in-forum effects of extra-forum activities suffice to constitute minimum contacts and have found in the negative"), and cases cited. In order to satisfy the relatedness requirement, "the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389. The Trustee has not demonstrated that Suntec had the type of specific contacts with Massachusetts that are necessary to meet the relatedness requirement.

## 2. Purposeful Availment

The plaintiff's failure to demonstrate relatedness alone warrants dismissal of the Dolphinite Action against Suntec for lack of personal jurisdiction. Nevertheless, this court finds that the Trustee's inability to satisfy the purposeful availment prong of the jurisdictional test reinforces the conclusion that jurisdiction over Suntec is improper. The evidence demonstrates that Suntec's only contact with Massachusetts consisted of mixing paint under its contract with Clean Seas, Clean Seas' sale of paint to Dolphinite, and Dolphinite's sale of paint to Massachusetts customers. Suntec's act of placing the paint into the stream of commerce is not enough to demonstrate that Suntec deliberately engaged in significant activities in Massachusetts such that it should have reasonably anticipated having to defend a lawsuit there.

The Supreme Court, in its plurality opinion in Asahi, ruled:

-16-

> [t]he placement of a product into the stream of commerce, without
> more, is not an act of the defendant purposefully directed toward the
> forum State.  Additional conduct of the defendant may indicate an
> intent or purpose to serve the market in the forum State, for example,
> designing the product for the market in the forum State, advertising
> in the forum State, establishing channels for providing regular advice
> to customers in the forum State, or marketing the product through a
> distributor who has agreed to serve as the sales agent in the forum
> State.  But a defendant's awareness that the stream of commerce
> may or will sweep the product into the forum State does not convert
> the mere act of placing the product into the stream into an act
> purposefully directed toward the forum State.

480 U.S. at 112, 107 S. Ct at 1032.  Therefore, even though Suntec knew that some of its

paints were destined for Massachusetts, that fact is not sufficient to demonstrate

purposeful availment.  See id. (defendant's knowledge that some of its product would end

up in California does not demonstrate any action by the defendant "to purposely avail

itself of the California market"); Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 85 (1st

Cir. 1997) (third-party defendant's "specific knowledge" that the stream of commerce

would move its product into the forum "alone would not be enough to constitute the

purposeful availment which is necessary for a showing of minimum contacts"); Boit v.

Gar-Tech Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992) ("'mere awareness' that a

product may end up in the forum state does not constitute 'purposeful availment'").

The Trustee has not shown that Suntec purposefully directed any of its actions

toward Massachusetts.[8]  As described above, Suntec has no employees, agents, operations

_____

[8]  The case of Merced v. JLG Indus., Inc., 170 F. Supp. 2d 65 (D. Mass. 2001), on which
the Trustee relies in his brief, is distinguishable.  In that case, the court found that there was
evidence that the third-party defendant engaged in a persistent course of business in Massa-

-17-

or property in the Commonwealth. Moreover, there is no evidence that the company

intended to serve the Massachusetts market, designed any products in anticipation of

sales in Massachusetts or took any affirmative steps to market or sell its paints to Massa-

chusetts customers. Indeed, the evidence shows that Suntec has no sales personnel in

Massachusetts and its telemarketers do not target Massachusetts consumers. Instead,

Suntec mixed marine paints pursuant to its contract with Clean Seas, prepared the product

for shipment to a destination selected by Clean Seas, and filled out the paperwork neces-

sary to facilitate shipping that was arranged for and paid by Clean Seas or Dolphinite.

Suntec cannot be forced to defend the Dolphinite Action in Massachusetts solely as a

result of Clean Seas' contractual arrangement with Dolphinite. See Burger King Corp.,

471 U.S. at 475, 105 S. Ct. at 2183 (purposeful availment requirement ensures that a

defendant will not be haled into a jurisdiction solely as a result "of the unilateral activity

of another party or a third person" (internal quotations omitted)). Based on the facts

presented by the parties, the exertion of personal jurisdiction over Suntec by this court

would exceed the limits of due process. See Asahi, 480 U.S. at 112-13, 107 S. CT. at

---

chusetts. Id. at 72. Notably, the court determined that the third-party defendant "avails itself of the benefits of doing business in the forum state by maintaining ongoing direct sales relationships with customers in Massachusetts," and that it had "without the aid of independent agents or distributors, sold its products to several Massachusetts companies each year." Id. at 75. There are no comparable facts in this case that would justify this court's exercise of personal jurisdiction over Suntec in the Dolphinite Action.

1032; Boit, 967 F.2d at 683.[9]  Therefore, this court recommends that Suntec's motion to

dismiss it from the Dolphinite Action for lack of personal jurisdiction be allowed.[10]

### C.    Clean Seas' Motion to Dismiss or Transfer Venue

Next, the court will reconsider the "Defendant Clean Seas Company's Motion to

Dismiss or Transfer Pursuant to 28 U.S.C. § 1404, " which Clean Seas filed in the West

Marine Action.  By its motion, Clean Seas requests that this court dismiss the plaintiffs'

claims against it or, alternatively, transfer the West Marine Action to the United States

District Court for the Middle District of Florida.  In light of the bankruptcy court's

decision to lift the automatic stay to allow the Dolphinite and West Marine Actions to be

litigated with the Trustee standing in the shoes of Dolphinite, this court recommends that

Clean Seas' motion be denied.

"Under § 1404(a), a district court may transfer any civil action to any other district

where it may have been brought '[f]or the convenience of parties and witnesses, in the

---

[9]  The Trustee argues that Suntec should be estopped from asserting that this court has no
personal jurisdiction over it.  Specifically, the Trustee contends that Suntec has made a number of
representations to a federal court in New Jersey that the New Jersey action should be transferred
to Massachusetts and that it would agree to submit to jurisdiction in Massachusetts if its motion
to transfer was granted.  See Trustee's Mem. at 15-17.  However, nothing in the materials that
the Trustee submitted in support of its estoppel argument indicates that Suntec intended to waive
its jurisdictional challenge.  Rather, Suntec indicated that it "would be willing to submit to
jurisdiction in Massachusetts if that submission would further the goal of consolidating all of the
litigation into one courtroom." See, e.g., Whitley Aff. Ex. 5 at 4.  Such a consolidation, however,
has not occurred and Suntec has not waived its right to challenge personal jurisdiction.

[10]  Suntec also argues that its motion to dismiss should be granted on the basis of improper
venue.  In view of the conclusion that Suntec's motion to dismiss should be granted due to this
court's lack of personal jurisdiction over Suntec, the venue arguments do not need to be
addressed.

interest of justice.'" Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (quoting

28 U.S.C. § 1404(a)). Because the statute does not authorize dismissal of an action

against a party, there is no basis for this court to grant Clean Seas' motion to dismiss

pursuant to 28 U.S.C. § 1404.[11]

"Section 1404(a) is intended to place discretion in the district court to adjudicate

motions for transfer according to an 'individualized, case-by-case consideration of

convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct.

2239, 2244, 101 L. Ed. 2d 22 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622,

84 S. Ct. 805, 812, 11 L. Ed. 2d 945 (1964)). "Factors to be considered by the district

court in making its determination include the convenience of the parties and witnesses . . .

the availability of documents, and the possibilities of consolidation." Cianbro Corp. v.

Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987). Nevertheless, "[t]he burden of proof

rests with the party seeking transfer[.]" Coady, 223 F.3d at 11.

Consideration of the relevant factors supports the denial of Clean Seas' motion.

Admittedly, Clean Seas argues persuasively that because the allegedly defective paints

were manufactured in Florida, documents, witnesses and other physical evidence relating

---

[11] Dismissal of an action for damages may be appropriate under the doctrine of *forum non conveniens*, see Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349 (1st Cir. 1992), cert. denied, 508 U.S. 912, 113 S. Ct. 2346, 124 L. Ed. 2d 255 (1993), but only "where the alternative forum is abroad." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 722, 116 S. Ct. 1712, 1724, 135 L. Ed. 2d 1 (1996) (internal quotations omitted). Because the alternative forum in this case is Florida, that doctrine does not apply.

to the paint production is located in Florida.  See CS Mem. at 6.[12]  However, the Trustee

counters that Dolphinite witnesses, including the company's former president and its

former employees or salespersons, are present in Massachusetts.  See Trustee's Opp. at

10.[13] Additionally, numerous Massachusetts residents whose boats were damaged and

who filed claims against West Marine for money damages may be "key non-party

witnesses," but they may not be compelled to appear in Florida.  Id.  Furthermore,

according to the Trustee, relevant documents such as purchase orders and documentation

regarding customer complaints are likely to be located in Massachusetts, as will damaged

boats.  Id.  Consequently, Clean Seas has not demonstrated that transfer of the case to

Florida would enhance the availability of documents or the convenience of witnesses.

Ordinarily, there is "a strong presumption in favor of the plaintiff's choice of

forum."  Coady, 223 F.3d at 11.  However, that presumption may be diminished where,

as here, the plaintiffs West Marine and U.S. Fire brought suit outside their home fora.[14]

See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56, 102 S. Ct. 252, 266, 70 L. Ed. 2d

---

[12]  "CS Mem." refers to "Defendant Clean Seas Company's Memorandum in Support of its Motion to Dismiss or Transfer" (Docket No. 10 in the West Marine Action).

[13]  "Trustee's Opp." refers to the "Opposition of Gary W. Cruickshank, Chapter 7 Trustee of Dolphinite, Inc. to Motion of Clean Seas Company to Dismiss or Transfer" (Docket No. 56 in the West Marine Action).

[14]  West Marine's home forum is in California.  See Complaint ¶ 1 (Docket No. 1 in the West Marine Action).  According to Clean Seas and uncontradicted by the other parties, plaintiff U.S. Fire's home forum is in New Jersey.  See Clean Seas' Reply to Gary W. Cruickshank's Opposition to Clean Seas Company's Motion to Dismiss or to Transfer (Docket No. 59 in the West Marine Action) at 2.

419 (1981).  Nevertheless, in the instant case, there is in effect another plaintiff —

Dolphinite — which did choose Massachusetts as the appropriate forum.  As detailed

below, this court recommends that the West Marine Action be consolidated with the

Dolphinite Action.  In addition, the Trustee, either as plaintiff in the Dolphinite Action, or

as a defendant in the West Marine Action, has a strong interest in litigating these cases in

Massachusetts where Dolphinite, and the bankruptcy proceedings, are based.  See In re

Bennett Funding Group, Inc., 259 B.R. 243, 251 (N.D.N.Y. 2001) (Trustee has an

obligation to maintain and conserve limited resources of bankruptcy estate and therefore

is in a better financial position to litigate in the estate's home forum).

     This court recognizes that if the litigation was transferred to Florida, the court

there could exercise personal jurisdiction over both Clean Seas and Suntec.  However, in

view of the number of witnesses and documents in Massachusetts as well as the hardship

such a transfer would cause the Trustee, this court concludes that Clean Seas has not met

its burden of demonstrating that the West Marine Action should be transferred to Florida,

and recommends that the motion to dismiss or transfer be denied.

D.     **The Trustee's Motion to Consolidate**

The Trustee has moved, pursuant to Fed. R. Civ. P. 42, to consolidate the Dolphinite Action and the West Marine Action for all purposes.[15]  Both Clean Seas and Suntec agree that consolidation for discovery purposes is appropriate, but Clean Seas argues that consolidation for trial purposes would create confusion and a conflict of interest due to the fact that U.S. Fire, West Marine's insurer and a plaintiff in the West Marine Action, is advancing funds to the Dolphinite Estate pursuant to the bankruptcy proceeding so that the Trustee can pursue his claims against Clean Seas and Suntec in the Dolphinite Action.  After weighing the interests of the parties' convenience, judicial economy and savings in time, effort and expense against any confusion or prejudice that consolidation would create, this court concludes that the Trustee's motion to consolidate should be allowed.

When considering a motion to consolidate pursuant to Fed. R. Civ. P. 42, "[t]he threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law."  Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Group, Inc., 878 F.2d 5, 8 (1ˢᵗ Cir. 1989).  "Once this determination is made, the trial

---

[15]  In his motion (Docket No. 38 in the Dolphinite Action) , the Trustee also requested that he be substituted as the named plaintiff in the lawsuit.  On June 9, 2005, this court allowed the motion to substitute and took the matter of consolidation under advisement.  The Trustee further requested that the court reconsider its ruling on Suntec's motion to dismiss in the West Marine Action and its ruling on Clean Seas' motion to transfer in the West Marine Action.  As described herein, this court has reconsidered the motion to transfer.  However, in view of this court's conclusion herein that the court lacks jurisdiction over Suntec in the Dolphinite Action, there is no reason to reconsider that issue in connection with the West Marine Action.

court has broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." Id. Ordinarily, a motion for consolidation will be granted "unless the party opposing it can show 'demonstrable prejudice.'" Id. (quoting Lavino Shipping Co. v. Santa Cecilia Co., 1972 A.M.C. 2454, 2456 (S.D.N.Y.)).

The Trustee and Clean Seas are common parties to the West Marine and Dolphinite Actions. In addition, the actions involve nearly identical facts. Both cases arise as a result of the allegedly defective marine paint that Clean Seas sold to Dolphinite and that Suntec mixed in Florida. Additionally, the actions contain some overlapping legal claims. For instance, both lawsuits contain claims against Clean Seas for breach of express warranties, breach of implied warranties of merchantability, breach of implied warranties of fitness for a particular purpose and negligence. Both lawsuits also contain declaratory judgment counts against Clean Seas in which the plaintiffs are seeking to establish Clean Seas' responsibility to indemnify them for costs incurred in connection with third-party claims against them. Thus, the court finds that there is enough commonality between the two actions to support consolidation. See Tingley Sys., Inc. v. CSC Consulting, Inc., 152 F. Supp. 2d 95, 102 (D. Mass. 2001) (requisite commonality for consolidation purposes was present where two actions involved some common, but not identical, facts and issues of law).

It is appropriate to consider, when weighing the costs and benefits of consolidation, "the convenience or inconvenience to the parties, the judicial economy, the savings in time, effort or expense and 'any confusion, delay or prejudice that might result from

consolidation.'"  Id. (quoting Data Gen. Corp. v. Grumman Sys. Support Corp., 834 F.

Supp. 477, 487 (D. Mass. 1992), aff'd, 36 F.3d 1147 (1ˢᵗ Cir. 1994)).  Consolidation of

the Dolphinite and West Marine Actions will substantially reduce the judicial time and

resources required to manage and try the two cases.  The court will be able to coordinate

the pretrial schedule, address any disputes that may arise in both cases in a single hearing,

and hold one jury trial.  Likewise, as illustrated by the parties' agreement to consolidate

the cases for discovery purposes,  consolidation will be more cost effective and less time

consuming for the parties.

     Clean Seas argues that consolidation of the cases for trial will create a conflict of

interest and prejudice the defendants.[16]  Specifically, Clean Seas contends that if the cases

are consolidated, U.S. Fire will be funding the litigation costs of one of its adversaries,

the Trustee, so that the Trustee can pursue the defendants in the Dolphinite Action.

According to Clean Seas, this arrangement is prohibited by Rule 1.8(f) of the

---

    [16]  In its Reply to the Trustee's opposition to Clean Seas' motion to dismiss or transfer in the West Marine Action (Docket No. 59), Clean Seas argued that consolidation would inject "a completely different party with separate rights and liabilities apart from those present in [the Dolphinite] case," would "involve the interpretation of two separate distribution contracts (West Marine and Dolphinite/Dolphinite and Clean Seas) with the laws of two different fora applied to each (California law/Massachusetts or Florida)," and would combine allegations against Clean Seas that are "grounded in tort-based warranty theories" with allegations against Clean Seas that are based on contract.  (Id. at 3).  As set forth above, however, the legal and factual issues need not be identical to support consolidation.  Furthermore, this court cannot conclude that Clean Seas will suffer any prejudice if West Marine's and U.S. Fire's claims are tried at the same time as the Trustee's claims, especially where both actions involve numerous claims based on both contract and tort theories.  Moreover, some contract interpretation issues may be left to the court, not the jury, and it is not at all certain at this juncture that the controlling law differs from state to state.

Massachusetts Rules of Professional Conduct because it will compromise the duty of loyalty that the Trustee's counsel owes to his client. This court finds, however, that Mass. R. Prof. C. 1.8(f) does not prohibit the parties' funding arrangement, that there is no basis for finding that the arrangement will compromise counsel's duty to his client, and that consolidation of the actions will not result in prejudice to the defendants.

Mass. R. Prof. C. 1.8(f) provides in relevant part that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation; [and] (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship[.]" The funding agreement at issue is not between U.S. Fire and the Trustee's counsel. Rather, it provides that U.S. Fire will advance funds to Dolphinite's Estate in order "to pay costs and expenses incurred by the Dolphinite Estate in connection with the [Dolphinite Action], including but not limited to expert witness fees, stenographer fees, costs associated with the copying and scanning of documents, and travel and lodging expenses of counsel[.]" Supplement to the Plaintiff's Motion to Consolidate (Docket No. 44 in the Dolphinite Action), Ex. B at ¶ 1.[17] It further provides that in order to secure repayment of the funds, U.S. Fire "is granted a security interest in the proceeds of any recovery of the [Dolphinite Action]." Id. at ¶ 3. Therefore, nothing in the agreement provides that the

---

[17] It appears that the funding agreement does not cover attorneys' fees because the Trustee's counsel is working on a contingency fee basis. See Supplement to the Plaintiff's Motion to Consolidate (Docket No. 44 in the Dolphinite Action), Ex. A at ¶ 8.

Trustee's counsel will receive any fees or other compensation from U.S. Fire. Moreover, even if U.S. Fire is viewed as paying the Trustee's counsel's litigation expenses (as opposed to the Trustee's expenses), the client is fully aware of the arrangement.

Counsel to the Trustee has only one loyalty under the Rules of Professional Conduct and that loyalty is to the Trustee. There is nothing in the record to suggest that this obligation will be breached by consolidation of the two related matters. Neither Clean Seas nor the documents describing the funding arrangement indicates that U.S. Fire has any authority to direct the Trustee's litigation or will otherwise interfere with the Trustee's relationship with his attorneys. Accordingly, this court concludes that consolidation of the actions will not result in a conflict of interest proscribed by Mass. R. Prof. C. 1.8(f).

Finally, this court cannot find that the funding arrangement between U.S. Fire and the Trustee will result in any prejudice to the defendants if the Dolphinite and West Marine Actions are consolidated. There is an adversarial relationship between Clean Seas and Dolphinite, even without consolidation. The Trustee has asserted claims against Clean Seas in the Dolphinite Action. The Trustee may assert cross-claims against Clean Seas in the West Marine Action. In either case, the parties will attempt to blame the other for the damage regardless of consolidation. Clean Seas has not cited and this court has been unable to find any authority that would prohibit consolidation on the basis of a funding arrangement like the one at issue here. Consequently, this court recommends that the Trustee's motion to consolidate be granted.

## IV.  CONCLUSION

For the reasons stated herein, this court finds that the exercise of personal jurisdiction over the defendant Suntec in the Dolphinite Action would offend due process. This court further concludes that the West Marine Action should remain in this court and be consolidated with the Dolphinite Action.  Accordingly, this court recommends to the District Judge to whom this case is assigned that Suntec's motion to dismiss for lack of personal jurisdiction (Docket No. 19 in the Dolphinite Action) be ALLOWED, that Clean Seas' motion to dismiss or, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404 (Docket No. 9 in the West Marine Action) be DENIED, and that the Trustee's motion to consolidate (Docket No. 38 in the Dolphinite Action) be ALLOWED.[18]


          / s / Judith Gail Dein
          Judith Gail Dein
          United States Magistrate Judge

---

[18]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).